IN THE UNITED STATES DISTRICT COURT
FOR THE NINTH DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JENNIFER BRICK, | |
| *Plaintiff,* | **CASE NO.  24-cv-174** |
| v. | |
| BREUNER, et al, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSES IN OPPOSITION TO <u>ALL</u> DEFENDANTS' MOTIONS TO DISMISS** |
| *Defendants.* | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION to ALL DEFENDANTS' MOTION TO DISMISS**</u>

Plaintiff, appearing pro se, submits this Memorandum in Support of Plaintiff's Responses in Opposition to the five Motions to Dismiss submitted by Defendants pursuant to Federal Rule of Civil Procedure 7(b)(1).

For the reasons set forth below, Plaintiff respectfully requests that this Court deny all five Defendants' Motions to Dismiss in their entirety.

1

# INTRODUCTION

Plaintiff has sufficiently pled facts to establish the plausibility of her constitutional claims, meeting the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Plaintiff alleges she, and other mothers, initiated HB 322 and engaged in protected advocacy at the Montana legislature, reporting misconduct by officials in Gallatin County, and advocating for due process reform. Within weeks of her protected speech, and the success of HB 322, officials in Gallatin County, including those directly implicated in protected testimony, took escalated adverse actions including a criminal charge, arrest, termination of parental rights, and prosecutions.

Plaintiff alleges Judge Breuner conspired with Attorneys Dodd and Post, and Father, by executing a scheme to retaliate by using a criminal mechanism meant for adults to instead sever parental rights, coordinating with officers and prosecutors to achieve civil gains, bypassing constitutional safeguards required to terminate parental rights in civil family proceedings.

2

**Plaintiff's primary claims are as follows**:

- First Amendment Retaliation for Protected Legislative Testimony

- Due Process – Unlawful Termination of Parental Rights

- Malicious Prosecutions & Fabricated Charges **Ending in Plaintiff's Favor**

- Unlawful Search & Seizure

- Excessive Bail & Harmful GPS Monitoring

- Conspiracy to Violate Rights

- Equal Protection Claim – Gender Discrimination

- Monell & Supervisory Liability

This Memorandum will argue:

1. Her facts show **clear violations** of constitutional protections, that were not, nor could not be adjudicated in state court.

2. Defendants **lacked jurisdiction** over her civil family case overall, and also took individual actions lacking jurisdiction, took actions outside their roles, engaged in administrative obstruction, and acted with deliberate indifference to settled law. This causes **loss of immunity** for all Defendants.

3. Plaintiff meets plausibility for **Retaliation & Conspiracy**.

4. Plaintiff's facts support **Invidious Gender Animus**.

**<u>Two Additional Claims</u>**:

Plaintiff argues her case meets **well-established exceptions to preclusions**
regarding the two claims involving state proceedings: COUNT 2 –
Unconstitutional Termination - Order of Protection which enabled a City
conviction concerning parental fitness, and COUNT 15 – County conviction of
False Report.

Defendants are grouped by employer as follows:

1. **County/State Judicial Officials:** Gallatin County Judicial Officials,
   Montana Supreme Court Officials, Montana/County/City Offices
   (Montana/Gallatin/City Court Administrators' Office,
   Montana/Bozeman/Gallatin Office of the State Public Defender), and related
   legal officials. (Attorney: Omens)

2. **City of Bozeman & Officials**: City of Bozeman, City Prosecutors, City
   Police Officers, Municipal Judge. (Attorney Lund**)**

3. **Gallatin County & Officials**: Gallatin County, County Prosecutor, County
   Law Enforcement Officers, County Justices of Peace. **(**Attorney Stacey)

4. **Private Attorney Actors**: Private attorneys and law firm. (Attorney
   Hayhurst)

5. **Private Actor:** Private individual including the father (Attorney Kauffman)

6. <u>EXTENTION:</u> **Private Entity Actor**: SCRAM Systems, Inc. (Attorney
   Hammond)

Defendants have filed **five responsive pleadings**, with SCRAM Systems, Inc. granted an extension past Plaintiff's responsive filing deadline. This Memorandum supports Plaintiff's Responses in Opposition to the responsive pleadings of the first 5 Defendant "groups."

Given the multiple defendants, the complexity of the coordinated constitutional violations, the necessity of detailing each actor's role under color of law and respective immunity claims, and Defendants being grouped by employer causing cross-over claims between her Responses in Opposition, this Memorandum frames the legal argument for the entire case, and the length of the Memorandum is both reasonable and required to meet federal pleading standards.

## Recommended Order of Review of Plaintiff's Responses in Opposition

It is advisable to review Plaintiff's Responses in Opposition in the following sequence for clarity and coherence:

**County/State Judicial Officials**

**City of Bozeman & Officials**

**Gallatin County & Officials**

**Private Attorney Actors**

**Private Actor - DuCharme**

# I.    <u>Factual Background</u>

1. Protected Speech & Initial Retaliation

- February 7 & **March 23, 2023** – Plaintiff testified before the Montana legislature on judicial misconduct and due process violations in Gallatin County. Testimony by parents directly implicated Judge Breuner, Attorney Dodd, Judge McElyea, and Justice McGrath.

- **April 18, 2023** – Prosecutor Schultz filed a meritless criminal complaint for custodial interference related to a family holiday dispute from seven months prior, regarding an ex parte Order never civilly adjudicated. Plaintiff was not Noticed of Complaint thus missed the Hearing scheduled May 18, 2023, and a Bench Warrant was Issued without Plaintiff's knowledge, leading to her eventual pretextual arrest. The charge is prosecuted and is dismissed approximately 6 months later.

2. Escalation: Fabricated Charges & Criminalizing Parental Rights

- **May 18, 2023: HB 322 signed into Law**
- **June 20, 2023**

o Father did not return minor children after Monday afternoon parenting time alleging he elected a "vacation-week" that was not confirmed. Mother was blocked from contacting her minor children on the phones she owns for their use.

o City Officers Shepard & Lutzka – Bring a charge of "assault-creating fear" against Mother after minor Daughter is informed of bench warrant and reports seeing her. Officers issue a non-judicial no-contact order, barring Plaintiff from her minor children.

o Prosecutor Schultz – Initiates a second prosecution for the "assault-creating fear" charge for Plaintiff confiscating her child's phone, to determine the phone ownership and assess parental fitness in a criminal trial rather than an investigation and civil proceeding.

o Officer Zieglar – After a brief questioning of Plaintiff regarding minor child's statements, and determining no need to arrest, Officer Zieglar is directed by office to arrest Plaintiff, using the bench warrant as pretext.

o Deputy Kiewatt – Files a retaliatory "false report" charge after Plaintiff requests a welfare check on her children the night prior when she could not reach her children. He initially refuses to conduct the

check, demands she exit her home on body cam, creating false exigency before revealing the existence of bench warrant.

- o Prosecutor Westesen prosecutes the charge despite no probable cause for "intent to implicate," despite exculpatory evidence of the confusion and inability to contact her children on the phones, using the deceptive and misleading body cam, and prior to civil adjudication of the parenting plan "vacation dispute."

- June 21, 2023

- o Judge Breuner creates a new criminal case, cancels Plaintiff's civil family hearing scheduled in one week, and assigns himself to the criminal case.

- o Judge Breuner issues a Temporary Order of Protection (TOP) using the arrest and charges as pretext.

## 3. Ongoing Retaliation: Termination of Parental Rights

- July 14, 2023

- o Judge Breuner issues a 2-year zero-contact under threat of arrest Order of Protection (OP) solely on the 17 year old Daughter 1, terminating parental rights without notice, or clear and convincing

evidence, and past the age of majority which occurs October 2023, lacking jurisdiction.

o The OP for Daughter 2 is to expire in 60-Days, September 12, 2023, due to no justification.

o The OP is required for Prosecutor Schultz to use removed minor child as state witness for the "parental fitness" criminal trial.

- August 15, 2023

  o Sgt. Metcalf fabricates two more charges:

    ▪ Violation of OP #1 – Father alleges Plaintiff attempted contact with Daughter 1. No probable cause; pretext for second arrest.

    ▪ Obstruction charge – Plaintiff charged for not exiting her home, despite no warrant.

    ▪ Plaintiff is arrested and detained for 2 nights.

    ▪ Excessive bail and gps monitor issued lacking statutory authority.

    ▪ Distinct, second county prosecution initiated. Charges dismissed by prosecutor, and gps monitor removed 5 months later.

    ▪ Father secured gains in civil case prior to criminal charges being dismissed

- August 21, 2023

  - Officer Taylor threatens arrest, and Father and Officer enter Plaintiff's home without a warrant, removing her property.

  - Officer Taylor & Father fabricate one additional city charge.

  - Violation of OP #2, claiming Plaintiff "removed children's skis" from her garage after OP put in place, without evidence.

  - Prosecutor Schultz initiates distinct third city prosecution of Plaintiff.

  - Plaintiff obtains dismissal from Judge for Brady violation 6 months later, for failing to enter body cam of unlawful search and seizure into Discovery.

- September 11, 2023

  - August 28, 2023, Judge Breuner refuses to recuse and obtains Justice McGrath's swift approval.

  - September 11, 2023, Judge Breuner extends the 60-Day OP for Daughter 2 "indefinitely" in the closed case on appeal, without notice or a hearing, becoming a de facto termination of parental rights.

  - The recent charges alleging "violation of OP" are used as pretext, despite not having to do with "parental fitness."

4. Ongoing Retaliation: Criminal Convictions & Appeals Obstructed

- October 2023 – Daughter 1 ages out of minor status, proving Judge Breuner lacked jurisdiction over OP remaining in place until July 2025.

- November 1, 2023 – Plaintiff arrested for third time, at work, for GPS monitor malfunction despite no after-hours service and pre-arranged plan to replace it.

- January 18, 2024 – Plaintiff forced to go pro se after violation of speedy trial. She is convicted of "false report" (for calling police when unable to reach her children). County conviction obstructs her defense in city trial "assessing parental fitness" scheduled two weeks later.

- February 2, 2024 – Judge Tierney, in criminal court, conducts the criminal trial assessing parental fitness using the removed minor child as state witness, after parental rights had already been terminated.

- Plaintiff is forced to go pro se due to egregious speedy trial violation impacting her parental rights – she is denied standby counsel. Upon learning of County conviction, City Judge Tierney denies Plaintiff's Motion to Dismiss.

- February 2, 2024 – Prosecutor Schultz suborns perjury of the minor child, having her falsely claim she and her father pay for the phone, to obtain a wrongful conviction.

- March 12, 2024 -Judge Tierny denied pro se mother her Motion for New Trial at the hearing– alleging Plaintiff did not properly place evidence of phone ownership into discovery to counter the sandbagged perjury.

5. Appellate Obstruction & Ongoing Retaliation

- Judge McGrath & Judge McElyea (implicated in Plaintiff's legislative testimony) assign themselves to her OP and criminal appeals, and issue extraordinary opposed extensions and delays.

- Justice McGrath, aware of the retaliatory, unconstitutional termination by Breuner, and MT law requiring appellate counsel for termination appeals, fails to appoint appellate counsel for Plaintiff's pro se appeal of the termination of parental rights (

- Montana Supreme Court refuses to address constitutional issues in OP appeal; denies appeal on statutory grounds the day this lawsuit is served.

- All appeals delayed over 12-17 months, ensuring Plaintiff's parental rights remain permanently severed until appeal become moot due to children aging out, and to run statute of limitations for due process claims against Bowen, which they are aware of as Bowen's supervisors.

- McElyea recuses after being served this lawsuit.

6.Drastic Post-Divorce Custody Modification – Giving Rise to Protected Speech

- Plaintiff achieved a Final Divorce settlement May 2017 with 80% custody.

- County conducted multiple post-divorce proceedings eroding Plaintiff's custody without justification or due process.

- Standing Master Bowen issued a Warrant, Citation, Final Order to Amend (all unlawful acts), and failed to filed "Findings" therefore obstructing judicial review. Bowen threatened jail and punished Plaintiff by removing holiday time.

- Judge Ohman enforced the void Orders and threatened jail if Plaintiff did not sign IRS waiver waiving right to claim a child as custodial parent.

- Judge Breuner enforced the void Orders by issuing ex parte Orders of "Clarification" (unlawful Orders), without notice of hearings to restrict Plaintiff from holiday parenting time.

- Attorneys misrepresented facts regarding holiday time in Motions, and brought the ex parte Orders to law enforcement to attempt to charge and arrest Plaintiff.

- Prosecutor brought charge based on an ex parte Order prior to a civil hearing.

- Judge Breuner issued an OP stating the word "abuse" with no supporting evidence and placed the Order in Discovery for criminal trial assessing parental fitness to fix the case.

- County and City, approaching July 2023, removed ALL custody from Plaintiff and made it a crime to contact her minor children until they are adutls.

- After Plaintiff's protected speech, County and City removed all custody from Plaintiff – making it an arrestable crime to contact her minor children - into their adulthood.

## Key Legal Takeaways

- First Amendment Retaliation – Criminal charges, OP, and fabricated prosecutions occurred immediately after Plaintiff's legislative testimony.

- Conspiracy & Pre-Existing Plan – Breuner, Dodd, and Father coordinated a criminal mechanism to bypass civil due process protections for terminating parental rights. Defendants used a well-established criminal mechanism for prosecuting DV offenders to terminate parental rights alleging an offense against a minor to obtain an OP into adulthood and a minor state witness.

- Lack of Jurisdiction –

  1. Breuner issued an OP on Daughter 1 beyond age 18.

  2. Issued a substantive order in a closed case on appeal for Daughter 2.

  3. Converted an OP hearing into a de facto termination proceeding without due process.

4. Prosecutor brought criminal charges regarding family parenting plan disputes, prior to civil adjudication.

- Retaliation & Investigative Acts –

    1. Prosecutors brought retaliatory prosecutions without probable cause.

    2. Prosecutor Schultz suborned perjury

    3. Prosecutor Schultz investigated her civil family case after her protected speech, prior to a charge by police, regarding a police report regarding an ex parte Order from seven months prior, when no civil hearing had been held.

- Deliberate Indifference –

    1. Officers issued a non-judicial no-contact order barring Plaintiff from her minor children.

    2. Officers brought a charge of child endangerment without evidence or threat of serious bodily harm.

    3. Officers engaged in retaliatory selective arrests.

    4. Officers engaged in selective enforcement in charging, and deceptive practices to create exigency using bench warrant.

## **Direct Harm by Actors Under Color of Law**

Due to the actions by actors under color of law, Plaintiff has suffered the permanent loss of her children, and is now diagnosed as disabled from the emotional loss and from the severe, malicious prosecutions, excessive bond conditions, arrests, unlawful search and seizures. Because of these actions she has also lost her employment, property, housing, and suffered other financial harm.

## II.  <u>Waiver</u>

Defendants failed to respond to the primary constitutional claims. The court must assume all unchallenged allegations are true for the purposes of the motion to dismiss. Likewise, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. (*Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)*)*

**Rule 8(b)(6) – Failure to Deny Allegations Constitutes Waiver**

- **Federal Rule of Civil Procedure 8(b)(6):**

    *"An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."*

In all five Motions to Dismiss (by County/State Judicial Officials, City of Bozeman & Officials, Gallatin County & Officials, Private Attorney Actors ("Dodd Defendants"), Private Actor – DuCharme ("Father"), have primarily argued immunity, procedural defenses, and state action, but have failed to refute

the substantive constitutional violations alleged. Under Rule 8(b)(6), their failure to respond constitutes waiver, and the allegations must be deemed admitted for the purpose of this motion.

Immunity defenses are not absolute, and if Defendants' arguments were sufficient, they would have engaged with the claims directly. The Court should deny dismissal and allow this case to proceed to discovery.

Private Attorney Actors have failed to substantively address the primary constitutional violations—retaliation, unconstitutional termination of parental rights, conspiracy, malicious prosecutions, unlawful search, excessive bail, and due process violations. Under Rule 8(b)(6), their failure to deny these allegations constitutes waiver, and the Court must assume those claims as true. Even if Defendants argue state action or procedural bars, those defenses do not excuse their failure to engage with these substantive claims. Therefore, these claims must proceed to discovery.

Private Actor – Father Defendant has only raised a procedural argument that they were private actors, but they failed to deny the substantive allegations of conspiracy, joint action, coordinated retaliation and deprivation of rights with state actors. Under Rule 8(b)(6), their failure to deny these claims constitutes waiver, and the Court must assume those allegations as true at this stage. Even if the Court considers procedural bars, immunity or state action argument, Defendants cannot

escape liability for claims they failed to refute, and those claims must proceed to discovery.

Plaintiff has alleged the following claims:

- First Amendment Retaliation for Protected Legislative Testimony

- Due Process – Unlawful Termination of Parental Rights

- Malicious Prosecutions & Fabricated Charges Ending in Plaintiff's Favor

- Unlawful Search & Seizures

- Excessive Bail & Harmful GPS Monitoring

- Conspiracy to Violate Rights

- Equal Protection – Gender Discrimination

- Monell & Supervisory Liability

All Defendants selectively argued procedural defenses (immunity, preclusions, statute of limitations, length of Complaint) but failed to engage with her primary substantive constitutional claims, with the exception of the Dodd Defendants engaging only with some secondary claims. Because the primary constitutional claims were not refuted by Defendants, the court must assume these allegations as true at this stage. Precedent: *Sampson v. County of Los Angeles*, 974 F.3d 1012

(9th Cir. 2020) – Issues not raised in briefing are deemed waived. *Curtis v.*

*Trevino*, 631 F.3d 880 (9th Cir. 2011) – *Unchallenged claims must proceed to*

*discovery.*

Therefore, Plaintiff's claims must proceed to discovery, and their Motions to

Dismiss be denied.

## III.   Plaintiff's Complaint Satisfies the Plausibility Standard and States a Valid Cause of Action

Plaintiff's Complaint satisfies the plausibility standard set forth in *Ashcroft v.*

*Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007). Plaintiff has set forth sufficient facts demonstrating that Defendants, acting

under color of state law, violated clearly established constitutional rights.

Defendants' arguments that Plaintiff failed to state a claim or must provide a more

definite statement are meritless, as the Complaint alleges specific facts, identifies

each Defendant's unlawful conduct, and provides the necessary legal elements

required under Ninth Circuit jury instructions. Accordingly, Defendants' Motions

to Dismiss must be denied.

Each claim meets the plausibility standard because:

1. It clearly identifies the violated federal right.
2. It contains specific factual allegations supporting the claim.
3. It establishes that Defendants acted under color of state law.

19

4.  It presents a plausible claim for relief, supported by case law.

While Defendants have failed to substantively engage with or refute Plaintiff's Primary Claims, Plaintiff will nonetheless establish the plausibility of each claim—not as a defense, but to demonstrate that the claims meet the applicable legal standards and must proceed. Plaintiff will later in this Memorandum provide an analysis showing that each claim, when viewed in the light most favorable to Plaintiff, is sufficiently pleaded to withstand dismissal and warrants full adjudication. Defendants have failed to substantively refute Plaintiff's Primary Claims. As a result, Plaintiff need only demonstrate that these claims meet the plausibility standard and must proceed.

**<u>Summary - Plausibility</u>**

Plaintiff has sufficiently pled facts to establish the plausibility of her primary constitutional claims, meeting the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiff has further sufficiently pled facts meeting plausibility for her secondary claims. At this stage, Plaintiff is only required to plead sufficient facts to state a claim for relief that is plausible on its face, not provide exhaustive details or list every sub-count, as factual development occurs in discovery. See *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (Federal pleading rules do not countenance dismissal of a

complaint for imperfect statement of the legal theory supporting the claim

asserted.).

> "Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint. - see _Next Century v Ellis, 318 F. 3d 1023 (11th Cir. 2003)_

Accordingly, Defendants' motions to dismiss should be denied, and this case

should proceed to discovery.

Plausibility for each claim will be detailed later in this document.

## IV.  Plaintiff's Complaint Complies with Federal Rules and Should Not Be Dismissed on Procedural Grounds

Defendants attempt to dismiss Plaintiff's complaint based on procedural

grounds rather than the merits of her claims. However, their arguments fail under

established federal rules and case law. Plaintiff's complaint meets the pleading

standards of Federal Rules of Civil Procedure 8(a), 12(b)(6), and 12(e), and as a

pro se litigant, her filing must be liberally construed in accordance with Supreme

Court precedent.

A. Plaintiff's Complaint States a Legally Sufficient Claim Under Rule 12(b)(6)

Defendants argue that Plaintiff's complaint fails to state a claim, but this

assertion is meritless. Under Rule 12(b)(6), a complaint must be construed in the

light most favorable to the plaintiff, and dismissal is improper unless it appears

beyond doubt that the plaintiff can prove no set of facts entitling her to relief (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

- Plausibility Standard: Plaintiff is not required to prove her case at this stage, only to allege sufficient facts that, when accepted as true, state a plausible claim for relief (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

- Complaint Provides Detailed Allegations: Plaintiff's complaint clearly identifies the legal claims, the violated rights, and specific factual allegations, meeting the requirements under Rule 8(a) (*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Accordingly, Plaintiff's complaint states a valid cause of action, and Defendants' Rule 12(b)(6) motion must be denied.

B. <u>A More Definite Statement Under Rule 12(e) is Not Required</u>

Defendants have also failed to demonstrate why a more definite statement is necessary under Rule 12(e). A motion under Rule 12(e) is only appropriate when a complaint is so vague or ambiguous that a party cannot reasonably prepare a response. However, Plaintiff's complaint is clear, detailed, and provides more than sufficient notice of the claims.

- Legal Standard: Courts only grant Rule 12(e) motions in extreme cases where a complaint is truly unintelligible (*Beanal v. Freeport-McMoRan, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999)).

- Defendants Have Not Shown Ambiguity: Here, Defendants do not argue that they cannot understand the claims—rather, it appears they seek to force Plaintiff to re-plead.

Because Plaintiff has met the notice pleading requirements, and Defendants have not demonstrated any actual confusion or inability to respond, their Rule 12(e) motion must be denied.

## C. Plaintiff's Complaint Complies with Rule 8 and Is Not Impermissibly Long

Defendants argue that Plaintiff's complaint should be dismissed either for failure to comply with Rule 8(a) or for excessive length. However, these arguments fail because (1) the complaint meets the notice pleading standard under Rule 8, and (2) the length of a complaint is not a valid basis for dismissal if it provides sufficient notice of the claims.

1. Plaintiff's Complaint Fully Complies with Rule 8(a):
   - Rule 8(a) requires only:
     1. A short and plain statement of the claim showing entitlement to relief.

2.  A demand for the relief sought.

o   Plaintiff's complaint clearly identifies the legal claims, factual allegations, and defendants involved, satisfying Rule 8.

o   Even if the legal theory is not perfectly stated, the Supreme Court has held that "imperfect statements of legal theory" do not justify dismissal. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

2.  **Complaint Length Alone Is Not Grounds for Dismissal:**

o   There is no rule limiting the length of complaints.

o   Courts have routinely rejected dismissal based solely on length, as long as the complaint provides adequate notice:

   ▪   *Koch v. Schapiro*, 699 F.3d 141, 145 (2d Cir. 2012) (The length of a complaint alone does not justify dismissal if it provides adequate notice of the claims.)

   ▪   *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (Dismissal for excessive length is only warranted where the complaint is truly incomprehensible, not where it merely contains detailed allegations.)

o   Here, Plaintiff's complaint is structured, organized, and necessary to fully present her claims, particularly in a complex constitutional case.

24

Accordingly, Plaintiff's complaint satisfies all Rule 8 requirements, and Defendants' procedural arguments should be rejected.

D. As a Pro Se Litigant, Plaintiff's Complaint Must Be Liberally Construed

Defendants' procedural attacks fail to account for the well-established principle that pro se pleadings must be liberally construed. The Supreme Court has repeatedly held that courts must afford pro se plaintiffs more latitude in their filings:

- Erickson v. Pardus, 551 U.S. 89, 94 (2007) (A pro se complaint must be held to "less stringent standards than formal pleadings drafted by lawyers.")

- Haines v. Kerner, 404 U.S. 519, 520 (1972) (Dismissal of a pro se complaint is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim.)

- Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013) (The court has an obligation to construe pro se pleadings liberally and afford them the benefit of any doubt.)

Plaintiff's complaint meets and exceeds pro se pleading standards by clearly stating claims, listing supporting facts, and citing relevant constitutional

provisions. Defendants' attempt to impose stricter standards on Plaintiff than those required by law must be rejected.

## F. Complex Cases Require Detailed Pleadings

Defendants' suggestion that Plaintiff's complaint is too detailed or "confusing" contradicts well-established case law, which recognizes that complex constitutional and civil rights claims necessitate more detailed pleadings to provide adequate notice and meet federal standards.

- Legal Standard: While Rule 8(a) generally requires a "short and plain statement of the claim," courts recognize that more detailed pleadings are necessary in cases involving multiple defendants, constitutional claims, and complex factual patterns.
- Case Law Support:
  - *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008) → A lengthy complaint is not improper if it is necessary to clearly present the allegations and claims in a complex case.
  - *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) → More detail is permissible when required to provide adequate notice, particularly in cases involving multiple defendants and constitutional violations.

    o   *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) → In civil

        rights litigation, a complaint must contain sufficient detail to give fair

        notice to each defendant of the claims against them.

Because this case involves multiple defendants, state actors, private parties acting

under color of law, constitutional violations, conspiracy and a complex sequence of

retaliatory acts, a more detailed complaint is necessary and appropriate. The level

of detail in Plaintiff's complaint is required to adequately allege conspiracy,

retaliation, and governmental misconduct.

## G. Conclusion: Defendants' Procedural Challenges Must Be Rejected

     Defendants' arguments for dismissal based on procedural grounds are

unsupported by law. Plaintiff's complaint properly states a claim under Rule

12(b)(6), does not require a more definite statement under Rule 12(e), and fully

complies with Rule 8. Additionally, as a pro se litigant, Plaintiff's filings must be

liberally construed, and her complaint's length alone does not justify dismissal.

Courts have long recognized that complex cases, particularly those involving

constitutional violations and multiple defendants, require more detailed pleadings

to provide fair notice. See *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124,

1132 (9th Cir. 2008) (detailed pleadings appropriate in complex cases) and

*Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (civil rights claims

require sufficient detail to put defendants on notice). Defendants' motions appear to be an attempt to force Plaintiff to unnecessarily re-plead her claims, or dismiss them altogether. As such, their procedural challenges must be denied, and this case should proceed to discovery.

## V.  Defendants' Preclusion Arguments Fail: This Case Warrants Federal Review

PLAINTIFF'S CLAIMS ARE NOT BARRED BY PRECLUSION DOCTRINES

Defendants attempt to invoke Rooker-Feldman, res judicata, collateral estoppel, and perhaps Heck v. Humphrey and Younger abstention to dismiss Plaintiff's claims. However, these doctrines are inapplicable because Plaintiff's claims arise from independent constitutional violations, not from a mere disagreement with a state court ruling. **Moreover, even the two counts (COUNT 2 and COUNT 15) related to state orders meet recognized exceptions, including extrinsic fraud, jurisdictional defects, and the inadequacy of the state forum**.

A. Plaintiff's Primary Constitutional Claims Are Independent of State Court Proceedings

Each of Plaintiff's claims asserts a separate constitutional violation actionable under 42 U.S.C. § 1983, unrelated to any state court ruling:

- First Amendment Retaliation for Protected Legislative Testimony

- Due Process – Unlawful Termination of Parental Rights

- Malicious Prosecutions & Fabricated Charges Ending in Plaintiff's Favor

- Unlawful Search & Seizure

- Excessive Bail & Harmful GPS Monitoring

- Conspiracy to Violate Rights

- Equal Protection – Gender Discrimination

- Monell & Supervisory Liability

Only two claims (COUNT 2 – OP Retaliatory Termination to enable removed minor witness, COUNT 15 – False Report Conviction) involve state orders or proceedings, but both meet recognized exceptions to preclusion doctrines, making them fully reviewable in federal court.

B. Exceptions to Preclusion Doctrines Apply for the TWO COUNTS

1. Rooker-Feldman Does Not Apply: Plaintiff Challenges Extrinsic Fraud & Unconstitutional Conduct, Not a State Court Decision

The Rooker-Feldman doctrine applies only when a plaintiff seeks de facto appellate review of a state court ruling. However, Rooker-Feldman does not apply where:

- The plaintiff challenges extrinsic fraud, bias, or unconstitutional misconduct rather than a state court decision. (*Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004)).

- The state court never ruled on the constitutional issue. (*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)).

Application to Plaintiff:

- COUNT 2 (OP Retaliatory Termination) challenges extrinsic fraud, not the ruling itself.

- The Montana Supreme Court was silent on the constitutional violations, ruling only that OPs are lawful by statute.

- The OP functioned as a de facto termination without the clear and convincing evidence standard required by *Santosky v. Kramer*, 455 U.S. 745 (1982).

- Plaintiff was not appointed state counsel for an appeal of the termination of her parental rights, required by Montana law, making the appeal defective.

- The OP was denied on the day Justice McGrath was served this lawsuit, showing ongoing retaliation.

Plaintiff is challenging the unconstitutional process of the termination of her parental rights, in which the state provided an inadequate forum of appeal, therefore, Rooker-Feldman does not apply.

2. Heck v. Humphrey Does Not Apply: Criminal Convictions Were Obtained Without Jurisdiction or Due Process

Under Heck v. Humphrey, 512 U.S. 477 (1994), a § 1983 claim is barred only if success would necessarily imply the invalidity of an outstanding conviction. However, Heck does not apply when:

- The conviction was obtained through procedural defects, jurisdictional errors, or due process violations. (*Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002)).
- The criminal court exceeded its jurisdiction over a civil matter. (*Dominguez v. City of Scottsdale*, 2010 WL 2595272 (D. Ariz.)).

Application to Plaintiff:

- Count 15 (False Report Conviction) was outside criminal jurisdiction because it was a family law dispute that had not been adjudicated in civil court.

- Count 16 (Assault-Creating Fear) was an unconstitutional prosecution used to subvert parental fitness and termination proceedings into criminal court, using a vague and selective charge, and using a minor child terminated without requiring clear and convincing evidence.

- Both convictions were obtained through misconduct, suppression of exculpatory evidence, perjury, and harassment making Heck inapplicable.

Because Plaintiff is not challenging her convictions per se, but rather the unconstitutional processes used to secure them, Heck does not bar her claims.

3. Res Judicata & Collateral Estoppel Do Not Apply: Plaintiff Did Not Have a Fair Opportunity to Litigate

The doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) bar relitigating of claims or issues that have already been adjudicated only when the prior case was fairly and fully litigated.

Exceptions Apply Where:

- The prior proceeding was tainted by bias or procedural unfairness. (*Allen v. McCurry*, 449 U.S. 90 (1980)).

- The plaintiff was denied a full and fair opportunity to litigate. (*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996)).

Application to Plaintiff:

- Montana courts obstructed Plaintiff's appeals, with excessive delays and bias, denying her an adequate forum for review.

- The OP and criminal proceedings functioned as an unconstitutional parental termination, without civil family court jurisdiction.

- Plaintiff was denied counsel for her termination appeal, preventing her from having a meaningful opportunity to litigate.

Because the prior proceedings were tainted by bias, misconduct, and obstruction, res judicata and collateral estoppel do not apply.

4. Younger Abstention Does Not Apply: The State Proceedings Were Retaliatory & Conducted in Bad Faith

Younger abstention prevents federal courts from interfering with ongoing state proceedings unless:

- The state proceeding is conducted in bad faith or for harassment. (*Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613 (9th Cir. 2003)).

- There is no adequate state forum for review. (*Gibson v. Berryhill*, 411 U.S. 564 (1973)).

Application to Plaintiff:

- The criminal prosecutions were initiated immediately after her legislative testimony, showing retaliatory intent.

- The OP functioned as a procedural shortcut to terminate parental rights and enable a minor state witness to assess parental fitness, without due process.

- Montana courts deliberately obstructed Plaintiff's appeals, denying her an adequate forum for relief.

Because Plaintiff's prosecutions were retaliatory and Montana courts failed to provide an adequate forum, Younger abstention does not apply.

5. Defendants' Argument That Plaintiff's Claims Are "Displeasure with a State Court Ruling" Is Misleading.

Defendants attempt to mischaracterize Plaintiff's claims to justify preclusion, but:

- Plaintiff's claims arise from separate constitutional violations, not state court rulings.

- Montana courts obstructed her ability to litigate these claims, making preclusion inapplicable.

- The OP and criminal convictions were secured through fraud, retaliation, and procedural manipulation.

- The Supreme Court was silent on the constitutional issues, meaning they remain unresolved and reviewable in federal court.

- Plaintiff was not appointed counsel in an appeal of the termination of her parental rights, making the appeal flawed.

- Defendants' reliance on preclusion doctrines is a bad-faith attempt to evade federal scrutiny for constitutional violations.

CONCLUSION

Plaintiff's claims are independent constitutional violations that are not subject to preclusion doctrines. Even the two claims that touch on state proceedings fall under recognized exceptions, making them reviewable in federal court. Because Defendants manipulated the legal process to obstruct Plaintiff's federal rights, preclusion doctrines do not apply, and this case must proceed to discovery.

# VI.   Immunity - Categories

Defendants broadly assert immunity as a defense, yet well-established legal precedent recognizes that absolute and qualified immunity do not apply when officials act outside the scope of their lawful authority, engage in retaliation, take actions absent jurisdiction, conspire with private actors, or violate clearly established constitutional rights. See *Forrester v. White*, 484 U.S. 219 (1988) (judges do not have immunity for non-judicial acts); *Kalina v. Fletcher*, 522 U.S. 118 (1997) (prosecutors lose immunity for investigative and administrative actions); *Hope v. Pelzer*, 536 U.S. 730 (2002) (qualified immunity does not protect egregious constitutional violations). Plaintiff's case falls squarely within the exceptions that defeat immunity, warranting denial of Defendants' motions to dismiss.

**Plaintiff addresses the specific immunity defenses asserted by individual Defendants in her respective responses in Opposition filings**.

In this section, Plaintiff presents overarching legal arguments refuting Defendants' claims to immunity as a matter of law.

A. Loss of Immunity – Overview

1. Plaintiff's facts meet the plausibility standard for **First Amendment retaliation,** for which Defendants are not immune: Lozman v. Riviera Beach 138 S. Ct. 1945 (2018), Hartman v. Moore 547 U.S. 250 (2006), Gonzales v. Trevino, 42 F.4th 487 (5th Cir. 2022), cert. denied, 143 S. Ct. 2571 (2023), and Frenchko v. Trumbull County, 85 F.4th 279 (6th Cir. 2023).

2. Defendants' actions violated clearly established law regarding **parental rights**, using a criminal mechanism to sever parental rights without due process, making their conduct outside the scope of immunity protections: **(**Rogers v. County of San Joaquin, 487 F.3d 1288 (9th Cir. 2007), Calabretta v. Floyd, 189 F.3d 808 (9th Cir. 1999), Santosky v. Kramer, 455 U.S. 745 (1982), and Troxel v. Granville, 530 U.S. 57 (2000). Family custody matters must be first adjudicated in civil court. *Demaree v. Pederson* is 887 F.3d 870 (9th Cir. 2018). *Doe v. Mann*, 415 F.3d 1038 (9th Cir. 2005) – Core holding: statutory procedures governing terminations must be followed and state courts cannot bypass these required civil proceedings.

3. **Judges & Masters** violated rights in administrative capacities or absent jurisdiction**,** rendering judicial immunity inapplicable (*Forrester v. White*, 484 U.S. 219 (1988)). *Rankin v. Howard* **633 F.2d 844 (9th Cir. 1980)**

4. **Prosecutors** engaged in investigative or retaliatory conduct outside their prosecutorial function**,** eliminating absolute immunity (*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993**)),** *Hartman v. Moore* 547 U.S. 250 (2006)

5. **Law enforcement** officers selectively enforced laws, and engaged in retaliatory arrest, defeating qualified immunity (*Gonzalez v. Trevino*, 2024).

   **Law enforcement** officers acted contrary to clearly established law for search and seizure, absent law requiring charging only with probable cause and not in retaliation, and absent law on removal of minor children from Plaintiff's custody without a warrant or evidence or credible threat of serious bodily injury (Kirkpatrick v. County of Washoe, 843 F.3d 784 (9th Cir. 2016), Demaree v. Pederson, 887 F.3d 870 (9th Cir. 2018), defeating immunity.

6. **Attorneys and Plaintiff's former spouse** initiated legal mechanisms depriving her of rights, as a means of retaliatory punishment, making them directly liable for First Amendment retaliation and conspiracy (*Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018)), and private actors conspired with state officials to deprive multiple constitutional rights making them liable under *Dennis v. Sparks*, 449 U.S. 24 (1980).

7. **Officials conspired** to deprive Plaintiff of her rights thereby losing immunity, United States v. Price, 383 U.S. 787 (1966), *Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980).

8. **Supervisors**: Judicial and prosecutorial supervisors may lose immunity when performing administrative tasks unrelated to their judicial or prosecutorial functions, such as hiring and firing employees, or for failing to intervene, or when the supervisor's subordinate state actors act or failure to act deprived the person of a particular federal right. *Ninth Cir. Civ. Jury Instr. No. 9.4.*

B. Judicial Immunity Does Not Apply

- Judges lose immunity when:
    - When making administrative and ministerial actions (*Forrester v. White*, 484 U.S. 219 (1988)).
    - Engaging in retaliation or conspiracy with private actors (*Dennis v. Sparks*, 449 U.S. 24 (1980)), Rankin v. Howard, 633 F.2d 844 (9th Cir. 1980)
    - Lacking jurisdiction to take the challenged action (*Pulliam v. Allen*, 466 U.S. 522 (1984)).
- Application to Plaintiff's Case:

- o Lacking Jurisdiction: Judges issued ex parte orders in a closed case on appeal, issued order for a minor with directives after she reached age of majority, oversaw civil termination proceeding as a criminal judge.

- o Retaliation: Engaged in direct retaliatory adverse actions after Plaintiff's legislative testimony.

- o Conspiracy: Conspired with private actors to interfere with constitutional rights.

- o Administrative/Non-judicial: issued warrants without items to search for, coerced signatures under threat of jail, failed to file findings, denied Objections prior to Review, obstructed appeals, failed to follow Disqualification law to retaliate.

## C. Prosecutorial Immunity Does Not Apply

- Prosecutors lose immunity when:

  - o Acting as investigators (*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)).

  - o Fabricating evidence or suborning perjury (Kalina v. Fletcher, 522 U.S. 118 (1997)).

  - o Engaging in retaliatory prosecutions (*Hartman v. Moore*, 547 U.S. 250 (2006)).

- Application to Plaintiff's Case:

  o Investigative: Prosecutor investigated Plaintiff's civil family law case bringing meritless charges lacking jurisdiction and in bad faith, collaborated with private attorneys, brought prosecution prior to civil family adjudication, brought prosecution to advance a civil outcome in retaliation.

  o Fabricated evidence: Used body cam to fabricate evidence, and engaged in malicious prosecution without probable cause, ignored exculpatory evidence.

  o Retaliation: Prosecutions lacked probable cause and jurisdiction over family matters prior to civil adjudication. Brought prosecutions within weeks of her protected speech.

  o Suborned Perjury of a Minor.

D. <u>Law Enforcement & Supervisor Immunity Does Not Apply</u>

- Police & supervisors lose immunity when:

  o Failing to intervene to prevent known constitutional violations (*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991)).

  o Engaging in retaliatory investigations/arrests (*Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008)).

- - Conspiring with private actors (*Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002)).

  - Removing minor children from custody (*Rogers v. County of San Joaquin*, 487 F.3d 1288 (9th Cir. 2007)).

- Application to Plaintiff's Case: Officers and Supervisors failed to intervene in constitutional violations, unlawfully arrested Plaintiff based on manipulated proceedings, removed minor children without a court order, and aided a judicial retaliation scheme to criminally sever parental rights bringing charges meant for adults without required evidence—none of which are protected by qualified immunity. Conducted unlawful search and seizures.

E. Private Actors Are Liable Under § 1983

- Private individuals are liable if they:

  - Conspire with state actors (*Dennis v. Sparks*, 449 U.S. 24 (1980)).

  - Exercise coercive influence over state officials (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)).

  - Use state power to violate rights (*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001)).

- Application to Plaintiff's Case: Private attorneys and the father acted under color of law by coordinating with judges, prosecutors, and officers to achieve a civil outcome through fraudulent criminal proceedings.

Because Plaintiff's claims fall within well-established exceptions to absolute and qualified immunity, Defendants cannot avoid liability under § 1983. Their motions to dismiss on immunity grounds should be denied, allowing Plaintiff's claims to proceed to discovery. Further detailed arguments specific to each Defendant's actions are set forth in Plaintiff's Opposition filings.

## VII.  Immunity Cannot Shield Defendants from Discovery Where Constitutional Violations Are Plausibly Alleged

1. <u>Qualified Immunity is Often Denied at the Pleading Stage</u>

- Courts must accept the plaintiff's allegations as true at the motion to dismiss stage (*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

- If the complaint plausibly alleges a constitutional violation of clearly established law, dismissal based on qualified immunity is improper (*Hope v. Pelzer*, 536 U.S. 730 (2002)).

- Example: If Plaintiff alleges that officials retaliated against her for protected speech, the court must assume this is true and cannot dismiss the case based on immunity before discovery. And if Plaintiff alleges officials unlawfully removed her minor children and terminated her parental rights using a criminal mechanism meant for adults, the claim must not be dismissed based on immunity.

**Case Law Support**:

- *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (Denying qualified immunity at the pleading stage because factual disputes needed to be resolved in discovery*).*
- *Ioane v. Hodges*, 903 F.3d 929, 941 (9th Cir. 2018) (Qualified immunity cannot be resolved at the motion to dismiss stage if there are factual disputes).

2. <u>Absolute Immunity for Judges & Prosecutors May Be Challenged Based on Factual Findings</u>

- Judicial and prosecutorial immunity applies only to acts within the scope of their official functions and jurisdiction.

- If discovery shows the officials acted outside their role (e.g., investigative actions, administrative misconduct, participation in conspiracy, and acting outside jurisdiction), they lose immunity.

- Example: A judge issuing orders outside jurisdiction or a prosecutor fabricating evidence may not receive absolute immunity.

**Case Law Support**:

- *Forrester v. White*, 484 U.S. 219, 229 (1988) (Judges do not have immunity for administrative or retaliatory actions).

- *Buckley v. Fitzsimmons*, 509 U.S. 259, 276-78 (1993) (Prosecutors do not have immunity for investigative misconduct).

3. <u>Immunity Can Be Revisited After Discovery</u>

- Even if the court initially denies immunity, defendants can raise the defense again after discovery via:

  o Motion for Summary Judgment under Rule 56.

  o Interlocutory Appeal (if available).

- If discovery fails to support Plaintiff's allegations, the court may grant immunity later.

**Case Law Support**:

- *Mitchell v. Forsyth*, 472 U.S. 511 (1985) (Qualified immunity is subject to interlocutory appeal).

- *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017) (Immunity can be re-raised at summary judgment if facts support it).

## Summary – Immunity Premature

At the motion to dismiss stage, immunity is not absolute. Courts routinely deny immunity when factual disputes exist regarding whether defendants acted outside the scope of their official duties or violated clearly established rights. See *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (When constitutional violations are plausibly alleged, immunity cannot be resolved before discovery). Here, Defendants' misuse of judicial, prosecutorial, and law enforcement authority cannot be shielded by immunity, and their motions must be denied.

## VIII. Gender Discrimination & Animus

Plaintiff satisfies the plausibility standard for both her Equal Protection (gender discrimination) claim under the Fourteenth Amendment and her § 1985(3) conspiracy claim based on invidious gender animus, and state Gender Discrimination claim (if allowed, or other). While Defendants argue that Plaintiff lacks direct evidence of discriminatory intent, binding precedent confirms that such

intent can be established through circumstantial evidence, procedural irregularities, disparate treatment, and retaliatory actions.

1. <u>Equal Protection (Gender Discrimination) Under the Fourteenth Amendment</u>

To establish an Equal Protection violation based on gender discrimination, a plaintiff must show:

1. She was treated differently from similarly situated individuals based on gender;

2. The disparate treatment was intentional and not justified by a legitimate government interest; and

3. The discrimination caused a constitutional deprivation.

**Plaintiff Provided Ample Facts Demonstrating Disparate Treatment of a Mother in Family Court & Criminal Prosecutions**

- Father in similar custody dispute was not subjected to criminal charges or extreme legal measures.

- Father did not lose parental rights through a restraining order banning all contact with minor children until the child's adulthood.

- Father in similar circumstances was not prosecuted under fabricated "custodial interference" or "assault-creating fear" charges.

47

- The Drastic Custody Modification from 80% to 0% Without Just Cause Demonstrates Gender Animus and Systemic Bias Against Mother

- *Meier, Joan S., "Denial of Family Violence in Court: An Empirical Analysis and Path Forward for Family Law," 110 Geo. L.J. 835 (2022)* – Finds a pattern of mothers being criminalized or losing custody through judicial bias, while fathers' claims are favored.

**Plaintiff Provided Ample Facts that Defendants Engaged in Procedural Irregularities That Disproportionately Harmed Plaintiff**

- Standing Master Bowen previously stated in post-divorce proceedings including in the hearing to Amend the Parenting Plan, that the non-custodial father with ~ 20% custody should "have more parenting time," and later, the father received sole custody, while the court later deemed Mother should have no custody. (Per Federal Rule of Civil Procedure 8(a)(2) and Schneider v. California Dep't of Corr., 151 F.3d 1194 (9th Cir. 1998) – contextual information is permissible without amending.)

- *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004) – Women enforcing gender stereotypes (e.g., bias against working mothers) does not disprove gender discrimination.

- In post-divorce proceedings, Plaintiff was denied any hearing, while 5 hearings were granted to the father, including financial and custody-related matters.

- Defendants escalated family law issues into criminal court against Mother, before they could be civilly adjudicated, a highly irregular and gendered tactic.

## Government Interest Argument Fails—Punitive Order of Protection Violated Due Process

- The Order of Protection (OP) was punitive, not protective, as it extended through Daughter 1's adulthood with no visitation despite no evidence of harm.

- *Troxel v. Granville*, 530 U.S. 57 (2000) – The state's interest should be in preserving the parent-child relationship, absent clear evidence of harm.

- *Santosky v. Kramer*, 455 U.S. 745 (1982) – Parental rights cannot be terminated without clear and convincing evidence of unfitness.

## Legal Precedents Supporting Equal Protection Claim:

- *Lindsey v. Shalmy*, 29 F.3d 1382 (9th Cir. 1994) – Circumstantial evidence, including procedural irregularities and disparate impact, can establish gender discrimination.

- *Ballou v. McElvain*, 29 F.4th 413 (9th Cir. 2022) – A plaintiff can survive dismissal based on a pattern of discriminatory treatment and gender-based procedural disadvantages.

- *Hayek v. Hayek*, 2019 WL 2992049 (S.D.N.Y. 2019) – Gender discrimination claims can be established through systemic disparate treatment, discriminatory statements, retaliation, and procedural irregularities, even without statistical evidence.

Plaintiff's allegations meet and exceed the gender bias criteria set in ***Hayek v. Hayek***, 2019 WL 2992049 (S.D.N.Y. 2019), including systemic disparate treatment, discriminatory statements, retaliation, and procedural irregularities (Examples all directly supported by facts in plaintiff's Complaint):

1) Excessive financial burdens imposed solely on Plaintiff as a mother:

    a) Amending plan without due process to shift expenses to mother

    b) Cancelling financial hearing for Mother

    c) Excessive bail and pretrial fees

    d) Malicious prosecutions for Custodial Interference

2) Unequal procedural treatment favoring the father

   a) Hearings granted to father, not mother

   b) Order of Protection granted to father, not mother

   c) Numerous ex parte Orders issued, without notice or hearing, favoring Father

   d) Law Enforcement assisting Father's case with unlawful searches, removal of children without court order, charges without probable cause, arrest at work, etc.

   e) Bringing charges for custodial interference against mother, yet failing to bring charges against father, despite police involvement and report.

3) Procedural Irregularities

   a) Standing Master issuing Final Orders – Not allowed by Montana Law

   b) Standing Master failing to file Written Findings – Obstructing Judicial Review

   c) Prosecuting Custodial Interference prior to a Civil hearing

   d) County & City Speedy Trial Violations

   e) County, City & State Denial of Counsel

   f) Terminating Parental Rights via an OP placed solely on Minor Children, without meeting clear and convincing evidence standard

   g) Assessing parental fitness at a Criminal Trial AFTER parental rights terminated using removed minor child as witness

4) Systemic removal of Plaintiff from civil judicial proceedings.

   a) Reliance on ex parte Orders without notice or hearings issued for Father's gains

   b) Cancelling or replacing hearings for Mother

   c) Not noticing mother of civil OR criminal hearings

   d) Not allowing Plaintiff to speak at hearings

   e) Failing to conduct interviews or investigations with Plaintiff prior to removing minor children and bringing criminal charges

   f) Escalation of family matters to criminal court prior to family civil adjudication

5) Use of Contempt and Ex Parte manipulation to criminalize Plaintiff while excusing the father's conduct completely and for similar actions.

6) Discriminatory statements (Judge declaring parent was "emotional," law enforcement stating "you don't own it," in regards to her property for minor children).

Plaintiff's allegations sufficiently meet the plausibility standard for gender discrimination under *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), which holds that detailed proof is not required at the pleading stage, and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which permits claims to proceed based on patterns of discrimination and procedural unfairness, allowing statistical

evidence to be obtained through discovery. Therefore, Plaintiff's claims for conspiracy, equal protection and first amendment must proceed.

**Conclusion**: Plaintiff meets the plausibility standard for gender-based Equal Protection violations based on systemic disparate treatment, procedural irregularities, and intentional discrimination favoring the father.

2. <u>Invidious Gender Animus Supporting Conspiracy Under 42 U.S.C. § 1985(3)</u>

To establish a § 1985(3) conspiracy claim based on gender animus, Plaintiff must show:

1. A conspiracy between Defendants;

2. To deprive her of Equal Protection of the laws;

3. An overt act taken in furtherance of the conspiracy; and

4. Injury resulting from the conspiracy.

**<u>Plausibility</u>**

1. **A conspiracy between Defendants**: Dodd, Breuner, Father, and perhaps others, coordinated to sever parental rights without due process. Dodd and Father coordinated with prosecutors and law enforcement to conduct warrantless search and seizures and in bringing malicious prosecutions – ending in her favor. Dodd, Father and Bowen coordinated to replace her final divorce parenting plan without

due process. Dodd, Breuner and Father used numerous ex parte Orders to "clarify" parenting plan without hearings and to fabricate criminal charges of custodial interference.

2. **To deprive her of Equal Protection of the laws**: Plaintiff was denied notice, hearings, and due process, denied protection inside her home of her person and property, false charges without probable cause or jurisdiction while father received none.

3. **An overt act taken in furtherance of the conspiracy**: Dodd, Breuner and Father conducted an unlawful termination of parental rights. Father and Officers Ziglar and Taylor conducted warrantless search and seizures. Dodd and Father made false reports to gain malicious prosecutions – ending in her favor.  Post, Father and Officials requested and issued excessive bail to hinder the defense of her parental rights by attempting to keep her detained. Dodd, Father and Bowen issued an Ultra Vire Order Amending Plan lacking notice and statutory authority.

4. **Injury resulting from the conspiracy**: Plaintiff's parental rights were terminated without abiding settled law requiring due process. Plaintiff's property and pets were removed from her inside her home without a warrant or consent. Plaintiff became disabled and financially harmed from the above acts and from the malicious prosecutions ending in her favor. Plaintiff's parenting plan was "amended" without notice in a hearing lacking statutory authority.

**Defendants Dodd & Breuner's Coordinated Scheme to Sever Plaintiff's Parental Rights Was Motivated by Gender Animus**

- Plaintiff and other mothers successfully advocated for legislative reform (HB 322) to correct due process violations and systemic bias in family court.

- Andrew Breuner's public disparagement of Plaintiff and other mothers at the legislative hearings as being "emotional" and "gratuitous" is direct evidence of gender bias.

- Attorney Matt Dodd, Judge Breuner, and Father, after her protected activity, acted jointly to misuse criminal mechanisms in a custody dispute—a well-documented gendered tactic.

- Officer Zieglar stating "you don't own it" referring to Mother's property in her minor child's possession (phone), is direct evidence of gender bias.

- *Gender Bias Task Force Reports (Various States)* – Multiple states have acknowledged systemic gender bias in family courts, often disadvantaging mothers through legal maneuvers

- The filing of a criminal complaint regarding a civil matter without notice, her arrest for an unknown bench warrant, followed by the termination of parental rights through an OP solely on minor children was an unprecedented action that disproportionately affected Plaintiff as a mother lacking adequate legal aid.

55

**Pattern of Escalation Against Plaintiff vs. Favoritism Toward the Father**

- Multiple ex parte orders issued solely against Plaintiff, despite comparable behavior from the father. Her one ex parte Motion filed was denied.

- Father being offered 5 hearings, while none held for Mother.

- Law enforcement, prosecutors, and judges all collaborated to bring fabricated charges, ensuring Plaintiff was removed from her children's lives permanently. Malicious prosecutions of custodial interference with no probable cause ending in her favor, while no action when mother required police to respond to actual custodial interference by Father at her residence.

- *Ballou v. McElvain*, 29 F.4th 413 (9th Cir. 2022) – Gender-based procedural disparities can serve as proof of invidious discrimination.

**Plaintiff Does Not Need Statistical Evidence at This Stage**

- *Hayek v. Hayek*, 2019 WL 2992049 (S.D.N.Y. 2019) – At the pleading stage, Plaintiff need only allege a systemic pattern of discrimination, not statistical proof.

**Conclusion**: Plaintiff's allegations demonstrate that Defendants conspired to deprive her of Equal Protection based on gender bias, meeting the plausibility standard under § 1985(3).

Plaintiff has sufficiently pled facts meeting § 1983 Equal Protection, § 1985 Conspiracy, and gender discrimination claims.

Plaintiff sufficiently meets the ***Hayek v. Hayek*** standard by alleging systemic gender bias, discriminatory statements, retaliatory legal actions, and procedural irregularities. Statistical data is not required when a plaintiff can establish discriminatory intent and disparate treatment through direct evidence and patterns of conduct.

Plaintiff's facts demonstrate she was treated differently than individuals of the opposite sex who are similarly situated, and that this differential treatment was intentional or purposeful, meeting the **Equal Protection** claim.

Plaintiff's facts demonstrate invidious discriminatory animus. In the context of gender discrimination, Plaintiff has shown the conspirators were driven by a specific animus against the plaintiff's gender, meeting the criteria for **Conspiracy**.

## IX.    Police Created Exigency – Due Process

The police-created exigency doctrine prevents law enforcement from manufacturing emergencies to justify otherwise unlawful actions, including arrests, searches, and fabricated charges. Courts have held that police cannot exploit situations they deliberately create to manufacture probable cause or justify coercive actions. (*Kentucky v. King*, 563 U.S. 452 (2011)).

**Application to Plaintiff's Case**:

- Custodial Interference Charge Initiated Without Civil Adjudication

    o City Prosecutor brought a charge of custodial interference before any civil hearing, without notice, leading to bench warrant for Mother.

    o This created a false urgency and duress in mother and minor children, circumventing proper civil court proceedings.

- Police Orchestrated Events to Justify Removal of Minor Children and Additional Charges

    o Minor children were informed of the mother's impending arrest, placing them under duress.

    o Daughter subsequently reported seeing mother, triggering law enforcement intervention without a court order.

    o City Police removed minor children and charged Plaintiff with "creating fear," exploiting the distress they caused.

- Fabricated Exigency to Justify Further Charges

    o Plaintiff, unable to reach her children, called police to inquire about their welfare.

    o County Deputy arrived at Plaintiff's door but concealed the existence of the bench warrant to provoke frustration.

o Body cam footage was then used to depict Plaintiff's reaction of frustration as "false reporting," leading to an additional charge.

**Additional Ninth Circuit precedent**: Calabretta v. Floyd, 189 F.3d 808 (9th Cir. 1999), United States v. Lundin, 817 F.3d 1151 (9th Cir. 2016).

These cases support Plaintiff's argument that law enforcement and prosecutors manufactured exigent circumstances to justify actions against the mother, interfering with her custody and her protected parental rights:

1. Premature Criminal Charges: Initiating a custodial interference charge before a civil hearing on the ex parte Order and without prior notice.

2. Inducing Fear in Minor Children: Informing the children of an impending arrest of their primary custodial parent, leading to distress and subsequent actions.

3. Warrantless Removal: Removing the children from Plaintiff's custody without a court order, based on the situation they orchestrated.

4. Fabricated Charges: Charging the mother with "creating fear" and "false reporting," stemming from reactions to the stress and confusion prosecutor and law enforcement induced, and prior to civil adjudication of the "vacation" dispute.

**Conclusion**:

Law enforcement and prosecutors cannot manufacture exigency to fabricate charges and justify the removal of minor children or coercive actions against a parent. Because each charge stemmed from a manipulated prosecutor and police-created emergency, they were brought in bad faith and lack probable cause. (*Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002) (holding that officers cannot exploit self-created circumstances to manufacture probable cause)).

### X.    Vagueness Doctrine - Charge of "Assault – Creating Fear" Unconstitutionally Vague

The "assault-creating fear" criminal charge against Plaintiff is unconstitutionally vague when applied to a parent against her minor child – and to a family with an open civil family law case without evidence of harm or any investigation, as it fails to provide clear standards distinguishing lawful parental discipline from criminal conduct, violating the **Vagueness Doctrine**. Under *City of Chicago v. Morales*, 527 U.S. 41 (1999), a law is void for vagueness if it fails to give ordinary persons fair notice of prohibited conduct or invites arbitrary enforcement. Similarly, in *Hall v. State*, 244 Ga. App. 203 (2000), a parent could not be held criminally liable for vague parenting standards, reinforcing that vague

laws cannot be weaponized against lawful parental authority. A charge of "assault-creating fear" is typically used when applied to adults, not to assess parental fitness, particularly when parents are not only allowed to create fear, but per Montana law are allowed to discipline with physical force.

Additionally, **City of Chicago v. Morales, 527 U.S. 41 (1999)** supports that laws (and judicial orders enforced as such) must be clear, constitutional, and within statutory authority**,** and vague or overly broad orders that create new crimes violate due process. The assault-creating fear charge, followed by a zero-contact under threat of arrest Order of Protection solely on Plaintiff's minor children, and barring Plaintiff from her community for 2 years, effectively creates a new crime of contacting her minor children, and is overly broad – restricting access to community association for two years despite no evidence of creditable threat, making it a violation of due process.

## XI.    Selective Enforcement

Plaintiff alleges prosecuting a parent for supervising their child's phone usage, especially after law enforcement has encouraged such supervision by giving a public workshop at Plaintiff's school, can be challenged as **selective enforcement**. In the Ninth Circuit, to establish a claim of selective enforcement, a Plaintiff must demonstrate that:

1. **Discriminatory Effect**: Others similarly situated have not been prosecuted for similar conduct.

2. **Discriminatory Intent**: The prosecution was based on an impermissible motive, such as discrimination or retaliation.

This standard was articulated in *United States v. Rundo*, where the court emphasized the necessity of showing both elements to substantiate a selective prosecution claim. *Gonzalez v. Trevino*, 42 F.4th 487 (5th Cir. 2022) – **Retaliatory prosecution and selective enforcement were intertwined in a § 1983 claim.**

**Plaintiff's case**: If law enforcement conducts public workshops advising parents to monitor their children's phone usage for safety, and then prosecutes a parent for doing exactly that, it raises concerns of **inconsistent application of the law**. Such actions could be perceived as hypocritical and may suggest an impermissible motive behind the prosecution – retaliation.

**Retaliation**:

- Plaintiff engaged in protected speech advocating for HB 322 a bill drafted by mothers in Gallatin County.

- Within weeks, officials in Gallatin County selectively enforced a vague law against Plaintiff that is not enforced against others (e.g., prosecuting them for confiscating a child's phone).

- Plaintiff is unaware of any other parent in Gallatin County being prosecuted for confiscating the phone they own for their minor child's supervised use.

- Montana law explicitly allows parents to not only create fear, but to discipline with physical force. Thereby police ignored established law for lawful parental behavior, to selectively enforce a vague law contradicting settled law for parental behavior.

- Father who manipulated Plaintiff's phone's while in minor children's use was not prosecuted for confiscating and manipulating the phones in minor children's possession, while Plaintiff was – even though she owned the phones.

**Key Case Law (Selective Enforcement & Prosecution Claims)**:

- *Wayte v. United States*, 470 U.S. 598 (1985) – Selective prosecution requires showing discriminatory effect and intent.

- *United States v. Armstrong*, 517 U.S. 456 (1996) – Defendant must show others similarly situated were not prosecuted.

- *United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972) – A selective

  enforcement claim can invalidate a conviction.

## False Report Charge – Selective Enforcement:

1. Discriminatory Effect

   o Plaintiff was charged with "False Report with Intent to Implicate" for

   calling police, allegedly because it was not her parenting time.

   o Other parents who call law enforcement for child welfare concerns,

   even outside parenting time, are not charged.

   o The father manipulated the children's phones, preventing Plaintiff

   from directly reaching them, yet he was not charged with interference.

   o Prosecutor alleged the disputed vacation week for Father was

   legitimate, prior to a civil hearing on the matter, forcing Plaintiff to

   litigate a parenting plan dispute at criminal trial.

2. Discriminatory Intent (Retaliation or Bias)

   o Charging a parent for making a welfare check contradicts standard

   law enforcement practice, which encourages concerned parents to

   report concerns.

   o Charging Plaintiff for calling police while ignoring the father's

   manipulation of the phone's the mother owns, pays for, and

supervises, suggests an intent to punish her while excusing the father's conduct.

- o This action aligns with the broader pattern of gender bias in custody disputes, where mothers face heightened scrutiny and punishment for routine parenting concerns.

**Selective Enforcement**: Charging Plaintiff for calling police about her children while allowing the father to obstruct communication is an arbitrary and discriminatory enforcement of the law (*Wayte v. United States*, 470 U.S. 598 (1985)).

**First Amendment Retaliation**: This enforcement appears designed to punish Plaintiff for protected advocacy and litigation (*Gonzalez v. Trevino*, 42 F.4th 487 (5th Cir. 2022)).

**Due Process Violation**: Law enforcement's contradictory application of the law, and criminally adjudicating a civil family matter, deprived Plaintiff of fair treatment under the Fourteenth Amendment. Dividing charges across county and city and District court jurisdiction over the 24 hour vacation family dispute, obstructed any adequate adjudication of the family matter, and the resulting three appeals over the one family matter.

**Conclusion**:

The selective enforcement argument is strengthened by the contradiction—the state punished Plaintiff for seeking help from law enforcement while allowing the father to engage in conduct that actually interfered with parental communication. This supports Plaintiff's claims of gender discrimination, retaliation, and abuse of process.

## XII.  State-Created Danger Claim under 42 U.S.C. § 1983

Plaintiff meets the plausibility for the following claim.

In the Ninth Circuit, the **state-created danger doctrine** holds state actors liable under the Due Process Clause when their affirmative actions place an individual in a position of danger they would not have otherwise faced. To establish a claim, a plaintiff must demonstrate:

1. **Affirmative Conduct**: State officials took deliberate actions that created or increased the risk of harm to the plaintiff.

2. **Deliberate Indifference**: Officials acted with deliberate indifference to a known or obvious danger.

3. **Foreseeable Harm**: The harm suffered was a foreseeable result of the officials' conduct.

In *Martinez v. City of Clovis*, 943 F.3d 1260 (9th Cir. 2019), the court held that a police officer violated the plaintiff's due process rights under the state-created danger doctrine by disclosing her confidential domestic violence report to her abuser, thereby increasing the risk of harm to the plaintiff.

**Application to Plaintiff's Case:**

- **Affirmative Conduct**:
  - Judges publicly opposed Plaintiff's protected legislative speech reporting due process violations by the same Judges, by publicly disparaging her and other mothers in opposition to reform efforts.
  - After Plaintiff's advocacy succeeded, these same officials initiated actions that led to the termination of her parental rights—something that would not have happened absent their retaliation.
  - State officials initiated a meritless criminal complaint of custodial interference without notice, regarding a civil family matter not yet adjudicated, leading to a bench warrant for the Plaintiff.
  - Police conducted an interview with minor children arising from bench warrant, issued a non-judicial order restricting Plaintiff's access to her minor children, brought a charge of "endangerment" without any

evidence of serious bodily harm or investigation or required report to DPHHS.

- **Deliberate Indifference**:

  o Judges and officials knew that retaliating against Plaintiff in a custody matter would expose her to severe emotional distress and permanent loss of her children.

  o They ignored due process safeguards, such as providing notice, hearings, or clear and convincing evidence before terminating parental rights.

  o By pursuing meritless criminal accusations for civil family matters without prior notice, and a criminal charge of "endangering" her minor child without evidence or investigation, officials demonstrated deliberate indifference to the potential consequences on the Plaintiff's parental rights and well-being.

- **Foreseeable Harm**:

  o Judges used an OP meant for protection as a de facto termination, circumventing Plaintiff's constitutional rights.

  o Given the ages of the children (16 and 17), it was foreseeable that prolonged criminal proceedings and appeals (bypassing civil proceedings which require constitutional safeguards) arising from

prosecutor and police charged against a parent would extend into the minor children's adulthood, effectively resulting in the termination of Plaintiff's parental rights, the permanent loss of her children and the onset of a disability due to the emotional distress.

o   Plaintiff's disability resulted from the harm inflicted, aligning with cases where state-created danger led to emotional trauma or permanent disability.

The Ninth Circuit has recognized that emotional and psychological harm can suffice to establish a state-created danger claim. In *Dillon v. Legg*, 68 Cal. 2d 728 (1968), the court acknowledged that a bystander who suffers emotional distress from witnessing the injury or death of a close relative due to a defendant's negligence may recover damages for that emotional harm.

The emotional distress stemming from the loss of one's children has been recognized as profound. The Supreme Court of Ohio referred to termination of parental rights as "the family law equivalent of the death penalty."

This underscores the severe and irrevocable nature of such state interventions.

Therefore, the Plaintiff's experience aligns with the criteria for a state-created danger claim in the Ninth Circuit, as the officials' actions foreseeably led to the permanent and devastating loss of her parental relationship.

### XIII.  Request for Judicial Notice

Plaintiff respectfully requests that this Court take judicial notice of the following undisputed facts pursuant to Federal Rule of Evidence 201:

1.  Judge Andrew Breuner's Background in Criminal Law

    o   Judge Breuner served as a judge in criminal proceedings for years in City of Belgrade before being appointed to Gallatin County the year before Plaintiff's protected speech.

2.  Attorney Matt Dodd's Criminal Trial Expertise and Legal Training

    o   Attorney Dodd is a criminal defense trial attorney with extensive experience in criminal law tactics.

    o   He has been widely involved in legal training across Montana, teaching trial strategies to attorneys, including through legal education programs conducted with his father, a well-known trial lawyer.

These facts are relevant to Plaintiff's claims because they establish that both Defendants had deep expertise in criminal procedure, yet deliberately applied those

tactics in a civil family law matter against a pro se mother litigant, circumventing her open civil family law case and instead using a criminal mechanism meant for adults to sever parental rights without due process, for gains in the civil family case as a means of retaliation.

This raises serious due process concerns regarding the misuse of criminal legal mechanisms to achieve a retaliatory and unjust outcome for a family with an open family law case, where Plaintiff was denied adequate procedural protections and representation. This background public knowledge supports they acted with intent and with deliberate indifference.

## XIV.  Monell Liability – County & City, Failure to Intervene under § 1986

Plaintiff demonstrated sufficient facts meeting municipal liability under Monell v. Dep't of Social Services, 436 U.S. 658 (1978) for both Gallatin County and the City of Bozeman requiring Plaintiff to show a:

- Policy, custom or pattern of constitutional violations.

- Single egregious act by a policymaker (judges, DA).

- Failure to train/supervise leading to harm.

Plaintiff showed not only a custom of violations of each Amendment, but systemic violations, by County and City, of repeat violations of each Amendment – 1st, 4th, 5th, 6th, 8th, 14th.

Plaintiff showed single egregious acts by policy makers, including unlawful interference with and termination of parental rights, unlawful search and seizures, malicious and retaliatory prosecutions, meeting Monell liability.

Plaintiff showed Defendants were aware of violations and failed to supervise or intervene, including Plaintiff officially reporting misconduct of Bowen, Breuner, Dodd, City police, County law enforcement, Prosecutor Schultz., meeting Monell and ~1986 liability.

## XV.   Legal Framework for the Case

Plaintiff alleges Defendants used a criminal mechanism to sever parental rights in retaliation for her protected testimony to the Montana legislature reporting misconduct and due process violations by Defendants. Because Defendants' actions were designed to bypass due process and chill Plaintiff's speech, her claims for First and Fourteenth Amendment violations, conspiracy, and retaliation must proceed.

Defendants coordinated actions are consistent with a pre-existing retaliatory plan, and acts outside jurisdiction, as seen in *Rankin v. Howard*, where the Ninth Circuit held that an attorney working with a judge to deprive constitutional rights acts under color of law.

Defendants' Retaliatory Motive and Coordinated Actions Support Plausibility Under Twombly/Iqbal" Meeting the ninth circuit requirement for motivating factor

ARGUMENT FOR MOTIVATING FACTOR:

SECTION 1: THE COORDINATED MISUSE OF CRIMINAL LEGAL MECHANISMS TO RETALIATE AGAINST PLAINTIFF FOR HER PROTECTED SPEECH

A. Introduction: The Pre-Existing Plan Between Judge Breuner and Attorney Dodd to Terminate Plaintiff's Parental Rights in Retaliation for Her Speech

Defendants misapplied a well-established criminal adult domestic violence legal mechanism to a civil custody matter with a minor, circumventing constitutional protections and weaponizing the legal system to retaliate against Plaintiff for her legislative testimony against judicial misconduct.

Standard adult domestic violence cases involve typically a woman making a police report, resulting in a restraining order and possible prosecution against the alleged offender. In this case, the city municipal court and city police created exigency in the minor daughter and mother by bringing a meritless charge without notice, which was exploited to create pretextual criminal charges, which were leveraged to justify child removal, and then issuing a permanent Order of Protection (OP) only on the minor children, severing Plaintiff's parental rights, enabling a minor witness for a state prosecution assessing parental fitness at a criminal trial after parental rights had already been severed.

This standard legal mechanism meant to protect adult women, was misapplied to a minor child and her parent, and was necessary for Judge Breuner and Attorney Dodd to achieve their shared goal: the termination of Plaintiff's parental rights under the guise of lawful proceedings. This criminal mechanism when applied to a child custody violates clearly settled law safeguarding constitutional due process rights when terminating parental rights. Dodd, Breuner's and Father's, and their co-conspirators actions fall solidly in a violation of Plaintiff's First and Fourteenth Amendment rights, while under color of law, causing the irreparable harm of a total permanent severance of parental relationship and rights, and complete total restriction of access to Plaintiff's community, making actionable claims under 1983, 1985 and others.

<u>Motive requirement for First Amendment violation</u>:

**Judge Breuner's Motive**: Plaintiff's and other parents' legislative testimony, for HB 322 – a bill drafted by mothers, directly implicated Breuner, exposing systemic judicial misconduct in his District while he was Head Judge in 2023, and the need for family court reform. Within weeks officials took adverse actions against Plaintiff, including direct actions by Breuner.

**Attorney Dodd's Motive**: Dodd, also implicated in Plaintiff's testimony, represented the father in an ongoing family civil case where the father had previously been denied full custody. With the children nearly aging out of the system, this was the last opportunity to achieve full custody.

<u>Pre-Existing Plan</u>:

Dodd, a criminal defense trial attorney, who teaches trial tactics throughout the region for his father, and Breuner who presided over criminal cases for years prior to being appointed in 2021 to a position in Gallatin County, demonstrated well-known methods of depriving due process rights in proceedings with the pro se Mother prior to her protected speech, and escalated severely afterwards. The severance of parental rights by using an adult criminal mechanism they were well-versed in, was successful because it deprived notice, state appointed counsel, pleadings, plenary hearing requiring clear and convincing evidence, one

jurisdiction, appellate counsel, and restrictions on appellate delays – all civil constitutional protections they deliberately bypassed to sever parental rights. The issuance of a 2-year zero contact under threat of arrest Order of Protection solely on children, until both children turn 18, despite no evidence of serious bodily harm, demonstrates a pre-existing plan to permanently sever parental rights, and was only possible by the joint action of Dodd, Breuner and Father.

This pre-existing plan between Breuner, Dodd and Father falls directly under the holding of *Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980), where the Ninth Circuit held that a private attorney who conspires with a judge to deprive constitutional rights acts under color of law and is liable under § 1983. Further the Judge acted in **clear absence of jurisdiction** when he issued the two orders severing parental rights for each child – one for Daughter 1 beyond age of majority, and the second for Daughter 2 in a closed case on appeal without a hearing, making Defendants liable under Rankin. The termination of Plaintiff's parental rights required coordination between these three Defendants—Judge Breuner to issue the judicial orders and Attorney Dodd to manipulate procedural mechanisms to benefit his client, the father, and the Father's intent to deprive all parental rights of Plaintiff.

The Father's actions to achieve full custody by coordinating with officials makes him liable as a conspirator under Dennis v. Sparks, 449 U.S. 24 (1980) – Private parties who conspire with state actors to deprive constitutional rights act under color of law and can be held liable under § 1983.

The timing of the first meritless criminal complaint by Prosecutor Schultz, within weeks of Plaintiff's protected testimony, further strengthens causation. The criminal process was only initiated to justify police intervention, which in turn allowed for the children's removal and subsequent OP by Judge Breuner, using the actions of the prosecutor and police as pretext. The criminal process was never legitimate—it was the procedural tool required for Defendants to achieve their civil goal: terminating Plaintiff's parental rights.

B. Law Enforcement's Active Role in the Retaliation: **Creating Exigency** to Fabricate Vague Charges and Facilitate Parental Termination

Defendants will argue that law enforcement merely acted on a bench warrant and conducted a routine interview of Plaintiff's minor child. This argument is false. Law enforcement played an active role in engineering the conditions

necessary to sever Plaintiff's parental rights and criminalize lawful parenting behavior.

**How Police Created and Exploited Exigency to Justify Retaliatory Action**:

- Law enforcement, and others, including Deputy Kiewatt, informed Plaintiff's minor daughter in advance that they intended to arrest her mother for Prosecutor Schultz's meritless charge that was later dismissed.

- This automatically placed Plaintiff and her minor child in duress, triggering a psychological crisis that law enforcement knowingly exploited to fabricate further charges against Plaintiff.

- Officers used the minor child's distress as pretext to charge Plaintiff with 'assault-creating fear'—a charge entirely dependent on the fear police themselves manufactured.

Under the **Exigency Doctrine**, law enforcement cannot create the very emergency they later claim required intervention. The Supreme Court has held that police-created exigency cannot justify warrantless or unconstitutional actions (*Kentucky v. King*, 563 U.S. 452 (2011)). Here, law enforcement:

1. Created the exigency—telling Plaintiff's minor child of her mother's impending arrest, which caused foreseeable distress.

2. Exploited the distress—framing the mother's attempt to maintain control over her child and her own property as "assault-creating fear."

3. Used the fabricated charge as a predicate for further legal action, ensuring that Plaintiff's child would be removed from Plaintiff and made available as a prosecution witness.

The "assault-creating fear" charge against Plaintiff is unconstitutionally vague when applied to a parent with an open civil family law case against her minor child, as it fails to provide clear standards distinguishing lawful parental discipline from criminal conduct, violating the **Vagueness Doctrine**. Under *City of Chicago v. Morales*, 527 U.S. 41 (1999), a law is void for vagueness if it fails to give ordinary persons fair notice of prohibited conduct or invites arbitrary enforcement. Similarly, in *Hall v. State*, 244 Ga. App. 203 (2000), a parent could not be held criminally liable for vague parenting standards, reinforcing that vague laws cannot be weaponized against lawful parental authority.

How This Meets the First Amendment Retaliation Standard:

(1) Plaintiff Engaged in Protected Speech – Testifying before the Montana legislature.

(2) Defendants Took Adverse Action That Would Chill an Ordinary Person –

Retaliatory arrest, fabricated charges, child removal, and permanent OP.

(3) Plaintiff's Speech Was a Motivating Factor – The legal process was manipulated using a criminal mechanism meant for adults, to deliberately bypass civil proceedings with constitutional safeguards, to punish Plaintiff, as confirmed by:

- The first criminal charge was meritless and dismissed, but was necessary to begin the sequence of events.

- The removal of Plaintiff's minor child was engineered through police intervention and non-judicial orders.

- Judge Breuner falsely distanced himself from the criminal process in his OP order, knowing full well it was the foundation for the case. Upon Plaintiff's arrest by police, Judge Breuner created a new case for Plaintiff and immediately canceled her civil family hearing scheduled to be held on Plaintiff's Petition in one-week's time. He then issued a TOP on June 21, 2023 –using the arrest as pretext, and issued the 2-year OP on July 14, 2023, terminating Plaintiff's parental rights, despite writing in the order that 'criminal charges were irrelevant'—even though the OP was only possible due to police action on a criminal charge later dismissed, and it was required for the city prosecution. The OP case was directly connected to the criminal proceedings.

- Breuner then stated the word "abuse" in the order with no supporting evidence, and placed the Order in Discovery for the upcoming prosecution assessing her "parental fitness," fixing the case – making Plaintiff "guilty" prior to the trial.

On June 20, 2023, on the same day as the city officers, county Deputy Kiewatt filed a retaliatory "False Report" charge against Plaintiff after she requested a welfare check on her minor children. When Kiewatt refused to conduct the welfare check and Plaintiff did not exit her home, he escalated the situation by demanding she come outside on his body camera, creating a false exigency. Unbeknownst to Plaintiff, a bench warrant had been in existence, but Kiewatt deliberately withheld this information. The charge was not based on a false report but was a pretextual retaliation for Plaintiff asserting her rights and refusing to comply with his baseless demands.

This charge was prosecuted, alleging it was not her parenting time, alleging it was therefore a crime to call police, yet there had not yet been a civil family hearing to vet the vacation dispute, and despite exculpatory evidence she could not reach her children on the phones she owned for them due to interference by the Father. Prosecutor removed the required "intent' and had no evidence of intent to gain a wrongful conviction of civil contempt of a parenting plan.

Within the hour of the county conviction, city Judge Tierney denied Plaintiff's motion to dismiss for speedy trial, and parental rights, knowing Plaintiff would be barred from testifying in her defense of her "parental fitness" after being convicted of a "false report" charge two weeks prior.

---

## C. The Misuse of the "Assault-Creating Fear" and "False Report" Charges to Justify Retaliatory Action

A critical component of this scheme was the misapplication of the vague and overbroad charge of "assault-creating fear." This charge:

- Did not involve any physical harm.

- Criminalized lawful parental discipline—the confiscation of a phone that Plaintiff owned.

- Contradicted Plaintiff's parental rights over her own property.

The charge was used as a pretext to justify Plaintiff's arrest and child removal, which in turn provided justification for the OP and criminal prosecution. The very fact that this charge was pursued against a mother for parenting behavior, while the county simultaneously allowed the behavior of father confiscating the minor children's phones – charging Mother with "false report" for not being able to reach

her minor children, further supports Plaintiff's Fourteenth Amendment Equal Protection claims.

By prosecuting a concurrent "false report" charge in the county, prior to the family matter having a civil proceeding on the vacation dispute, and the county trial being deliberately scheduled first, would intentionally obstruct her defense of the detrimental city "assault-creating fear" charge, which would deem her an "unfit parent."

**Key Case Law Supporting the Misuse of the Criminal System as Retaliation**:

- Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018) – The government cannot use legal mechanisms to punish protected speech.

- Santosky v. Kramer, 455 U.S. 745 (1982) – Parental rights require due process protections, which were circumvented here.

- Rankin v. Howard, 633 F.2d 844 (9th Cir. 1980) – Private attorneys acting in concert with judges to violate rights are liable under § 1983.

- Kentucky v. King, 563 U.S. 452 (2011) – Law enforcement cannot manufacture exigency to justify otherwise unlawful actions.

- *Kalina v. Fletcher*, 522 U.S. 118 (1997) - Fraudulent Judicial Orders as Actionable Misconduct. Judges are not immune if they knowingly issue fraudulent orders that deprive constitutional rights.

D. Conclusion: Defendants Deliberately Misused Legal Mechanisms to Punish Plaintiff and Sever Her Parental Rights

- Judge Breuner, Attorney Dodd, and Father conspired to retaliate against Plaintiff and ensure her parental rights were terminated before her children aged out of the system.

- Law enforcement played an essential role in the plan, creating exigency, fabricating criminal charges, and removing the minor children from Plaintiff ensuring that Plaintiff's child was made available as a prosecution witness.

- The misuse of the criminal domestic violence framework against a mother in a custody case underscores that this was a calculated effort to bypass civil due process protections.

- Using concurrent criminal charges in two jurisdictions, prior to civil family adjudication on the parenting plan dispute, to obstruct fair trials.

This was not a lawful legal process; it was a coordinated effort to retaliate against Plaintiff for exposing judicial misconduct. This fully meets the plausibility standard for Plaintiff's First and Fourteenth Amendment claims.

**Argument for Motion to Dismiss**:

Because Plaintiff has adequately alleged a pre-existing retaliatory plan between Judge Breuner, Attorney Dodd, Father, and Prosecutor Schultz's and law enforcement's active role in fabricating charges, and the misuse of the criminal legal process to circumvent civil protections, Defendants' motion to dismiss must be denied.

SECTION 2: LEGAL ARGUMENT: PRE-PLANNING OF THE RETALIATORY TERMINATION BY JUDGE BREUNER & ATTORNEY DODD

A. The Termination of Plaintiff's Parental Rights Was Pre-Planned as Retaliation for Her Speech

The retaliatory misuse of the legal system against Plaintiff did not begin with the later fabricated charges or excessive bail—it was premeditated from the outset. The termination of Plaintiff's parental rights required coordination between Judge Breuner and Attorney Dodd, who both had motive to retaliate and both took deliberate steps to ensure the termination would be irreversible.

**Key Factual Timeline Showing Pre-Planning**:

1. February & **March 2023**: Plaintiff testified before the Montana legislature about due process violations in Gallatin County, implicating Defendants Breuner, Dodd, Bowen, and McGrath.

2. **April 18, 2023**: Prosecutor Schultz filed a meritless criminal complaint without notice, resulting in Plaintiff's first retaliatory arrest. The charge was later dismissed.

3. **June 20, 2023**:

   - Officers Shepard and Lutzka issued a non-judicial no-contact order, effectively severing Plaintiff's rights without evidence of serious bodily harm.

   - Prosecutor Schultz pursued a prosecution of Plaintiff with "assault-creating fear" for lawfully confiscating her child's phone—using this as pretext for parental termination, but required the minor child as a state witness.

4. June 21, 2023: Judge Breuner created a new criminal case, canceled her civil family case scheduled in one weeks' time, assigned himself to the criminal case, and issued a 2-year zero-contact OP solely on Plaintiff's minor children, terminating Plaintiff's parental rights, requested by Dodd, Post, and DuCharme.

5. Prosecution by Schultz could move forward only with the OP having removed the minor child to coach for trial.

6. The OP Was Set for Two Years to Expire When the Youngest Child Turned 18.

   ○ This was not a coincidence—it was structured to ensure the parent-child relationship was permanently severed, as it would expire three weeks after Daughter 2 turned 18

   ○ Dodd, and Father took actions to gain pretext to extend the 60-day order for Daughter 2 prior to it expiring, and extending it "indefinitely" making the the default be the 2-year OP to expire after both children turned 18.

**Legal Standard: Retaliation & Due Process Violations**

- First Amendment Retaliation: *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018) – Government actors cannot use legal mechanisms to retaliate against protected speech.

- Due Process Violation: *Santosky v. Kramer*, 455 U.S. 745 (1982) – Parental termination requires strict due process protections, which were absent here.

**Breuner had motive**: He was publicly criticized by Plaintiff and sought to "chill" her speech through retaliatory judicial actions.

**Dodd had motive**: His client (the father) had previously been denied full custody, and time was running out before the children aged out of the system.

With no deadlines on OP appeals, McGrath (implicated in HB 322 testimony) allowed extraordinary opposed extensions, over **17 months** to address the pro se appeal terminating her parental rights, and only denied it on the day he was served this lawsuit, on statutory grounds.

McElyea (implicated in HB 322 testimony) failed to address the criminal appeals concerning her parental rights, for over **12 months**, only recusing when being served this lawsuit.

The retaliatory plan by officials ensured Plaintiff would be barred from challenging the termination before it became moot – children aging out, due to excessive, contested delays, by Judges implicated in her protected speech, in deliberate violation of Montana law. Montana law for termination of rights requires counsel and swift appeals.

B. The "Extension" of the OP Proves the Termination Was Pre-Planned

After securing the only justification for the initial Order of Protection (OP) for Daughter 1, Defendants strategically structured the OP's duration for exactly two years, ensuring it expired three weeks after Daughter 2 reached the age of majority. This timeline was not arbitrary but deliberately pre-planned to sever Plaintiff's parental rights permanently.

For Daughter 2, Defendants initially set the OP for only 60 days, creating an appearance of due process. However, on Day 59, Judge Breuner—despite clear conflicts of interest and refusing to recuse himself, and support for remaining on the case by McGrath—extended the OP indefinitely under fraudulent circumstances and lacking jurisdiction – issuing a substantive order in a closed case on appeal. This extension occurred after Defendants fabricated additional pretextual criminal charges (later dismissed), demonstrating that the initial two-year OP for Daughter 1 was designed as a foundation for a later indefinite extension against Daughter 2. Demonstrating a pre-existing plan by Dodd, Breuner, and Father.

**How the Later OP "Extension" Confirms Prior Conspiracy**:

- The OP for Daughter 2, being extended indefinitely without notice or a hearing in the closed case defaulted to the original two-year OP.

- Appellate Judges McGrath ans McElyea deliberately applied excessive delays to obstruct a swift appeal, to ensure no decision until after the 2-year order expired, and the children aged out, making the appeals moot.

- This proves the two-year structure was intentional from the outset—not an arbitrary ruling.

- Breuner lacked jurisdiction in both Orders. Jurisdiction was absent after Daughter 1 turned 18 (in October 2023), yet Judge Breuner issued the 2-year OP anyway (until July 2025), further proving pre-planning. Judge Breuner lacked jurisdiction to issue a substantive order in a closed case on appeal.

**Supporting Case Law – Conspiracy Liability Under § 1983**

- Rankin v. Howard, 633 F.2d 844 (9th Cir. 1980) – A private attorney who conspires with a judge to deprive rights is liable under § 1983. Judges conspiring, taking actions absent all jurisdiction, lose immunity.

- Dennis v. Sparks, 449 U.S. 24 (1980) – Private actors working with state officials act under color of law and are liable under § 1983.

**Legal Implications**:

- **Fraud on the Court**: Judge Breuner's and Dodd's manipulation of the OP duration, refusal to recuse, and fabricated justifications demonstrate judicial fraud. (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)).

- **Retaliation**: The strategic OP structuring and indefinite extension were direct retaliation for Plaintiff's testimony, violating the First Amendment (*Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018)).

- **Conspiracy & Due Process Violation**: The pre-planned OP timeline, fraudulent extension, and refusal to recuse demonstrate a § 1983 and § 1985 conspiracy to deprive Plaintiff of parental rights. (*Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980); *Santosky v. Kramer*, 455 U.S. 745 (1982)).

- **Injury**:

  o Plaintiff's parental rights were completely, permanently severed – irreparable harm.

  o Plaintiff's association with friends, community was completely, permanently severed.

  o Plaintiff suffered loss of employment, housing, property, and financial harm.

  o Plaintiff became disabled due to the malicious prosecutions, excessive conditions, and total loss of children.

**Legal Conclusion**: The structured timeline of the OP and its later extension confirm that Plaintiff's parental termination was premeditated and carried out as a TWO-PART retaliatory conspiracy between Judge Breuner, Attorney Dodd, and Father.

**PART 1**: Initiating a meritless charge on April 18, 2023 creating exigency, removing the minor children on June 20, 2023, and bringing the retaliatory prosecutions on family civil matters requiring an OP severing parental rights on July 14, 2023 by officials: Prosecutor's Schultz and Westesen, Officers Shepard, Lutzka, Zieglar, Kiewatt, was direct retaliation under color of law, depriving rights and causing injury. **The original charge would later be dismissed**, after securing the gains in Dodd's civil case.

**PART 2**: Dodd, Breuner and Father, then coordinated with officials, after the OP was in place on July 14, 2023 to directly bring additional meritless charges, secure Plaintiff's second arrest, request excessive bail and conditions, and two distinct malicious prosecutions to gain pretext to "extend" the OP for Daughter 2 by September 11, 2023. **The charges would later be dismissed,** after securing gains in Dodd's civil case.

The retaliatory termination would not have been possible without the misuse of the criminal system and coordination by officials of bringing repeat meritless charges to interfere with Plaintiff's custody.

C. The OP Was Later Used to Justify Further Retaliation, Proving an Expanding Conspiracy

Once the OP was issued, secondary actors—including the father, prosecutors, and law enforcement—exploited it to continue retaliatory acts.

**The OP was then used as pretext to**:

- Fabricate additional charges (Obstruction and 2 Violation of OP charges) to justify Plaintiff's second arrest.
- Impose excessive bail in an attempt to keep her detained, preventing her from regaining custody.
- Order a non-statutory gps to track her and leave her vulnerable for additional charges, and further impair the defense of her parental rights.
- Justify the fraudulent extension of the OP, even though the new charges had nothing to do with parenting fitness and were later dismissed.

Key Legal Precedents Showing a Pattern of Continuing Retaliation is Actionable Under § 1983:

- National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) – Retaliatory acts that continue over time keep claims timely under the continuing violation doctrine.

- Kentucky v. King, 563 U.S. 452 (2011) – Law enforcement cannot create an exigency and then exploit it as pretext for legal action.

**Final Legal Argument**:

This was not an isolated OP, but a premeditated legal attack designed to silence Plaintiff and permanently terminate her parental rights through a manufactured well-established criminal process meant for adults

- The OP was required to allow the city prosecution to proceed.

- The later use of the OP to justify fabricated charges, excessive bail, and further retaliation, to use as pretext to "extend" the OP for Daughter 2, proves that the original plan involved secondary actors beyond Breuner and Dodd.

- Despite Plaintiff being blocked from all contact with Daughter 2 for over 60 days, Dodd, Father and Breuner, required some justification to "extend" the OP prior to September 11, 2023. False reports of Violation of OP were used as justification.

- The plan required Breuner to remain on the case, with McGrath's endorsement, as issuing a substantive order (a de factor termination of parental rights without notice or a hearing) in a closed case on appeal required a judge willing to commit misconduct – Breuner.

- The deliberate structuring of the OP timeline, followed by its fraudulent extension on September 11, 2023, confirms that this was a planned, coordinated deprivation of constitutional rights.

Because these actions were clearly coordinated and premeditated, Defendants' motion to dismiss must be denied.

SECTION 3: PRE-PLANNED RETALIATION BY BREUNER & DODD AND EXPANDED CONSPIRACY TO FABRICATE ADDITIONAL PROSECUTIONS

A. The Two-Part Retaliation Scheme: A Coordinated Effort to Terminate Plaintiff's Parental Rights

Plaintiff was subjected to a two-part retaliatory scheme designed to (1) justify termination of Daughter 1 through a direct law enforcement interview and (2) fabricate two additional malicious prosecutions to justify termination of Daughter 2. This scheme was premeditated by Judge Breuner, Attorney Dodd, Father and later expanded to involve additional defendants, including law enforcement officers, prosecutors, and judicial officials. The coordinated efforts violated Plaintiff's First and Fourteenth Amendment rights and demonstrate

Monell liability for systemic retaliation and deprivation of rights while acting under color of law, causing injury.

B. <u>PART ONE: Pre-Planned Retaliatory Termination of Daughter 1</u>

**Key Facts**:

- February 7 and **March 23, 2023**, Plaintiff engaged in protected speech implicating Breuner and Dodd, and violation of rights by other judicial officials in Gallatin County.

- **April 18, 2023**, Prosecutor Schultz filed a criminal Complaint without notice, for a family matter not yet civilly adjudicated and later dismissed.

- **June 20, 2023**: Law enforcement officers Shepard and Lutzka ordered Plaintiff's arrest and issued a non-judicial no-contact order, severing all Plaintiff's contact to Daughter 1.

- **June 21, 2023**: Judge Breuner created a new criminal case, cancelled her civil family hearing scheduled in onw-week, assigned himself to the criminal case, and issued TOP based on the police interview with Daughter 1, extending the no-contact between mother and minor children for 21 days.

- **July 14, 2023**, Breuner issued the 2-year zero contact under threat of arrest OP on Daughter 1, despite lacking jurisdiction over Daughter 1, past **October 2023** when she reached age of majority.

- The OP was structured to expire when Daughter 2 turned 18, with a pre-existing plan to later "extend" Daughter 2's 60-day OP, ensuring permanent severance of the parent-child relationship before Plaintiff could challenge it.

- The OP's timeline and pretextual justification confirm it was planned in advance—no legitimate legal reasoning supported an OP extending beyond minor status.

- Extending the OP for Daughter 2 in a closed case on Appeal – lacking jurisdiction, the day prior to it's "expiry," and after refusal to Recuse, demonstrates taking extraordinary deliberate measures to complete the permanent severance of parental rights.

- City and County Prosecutions: Prosecutions were deliberately obstructed:

  o No probable cause, or prior to civil adjudication

  o Speedy trial violations

  o Counsel denied

  o Suborned Perjury

**Legal Violations**:

- **First Amendment Retaliation**: The termination was direct retaliation for Plaintiff's testimony, orchestrated by Judge Breuner and Attorney Dodd,

whom had motive. (*Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018))

- **Fourteenth Amendment Due Process Violation**: The OP functioned as an unlawful termination order, with a Father who had previously requested full custody, violating due process. (*Santosky v. Kramer*, 455 U.S. 745 (1982))

- **Conspiracy Under § 1983 & § 1985**: Breuner, Dodd, Father conspired to misuse judicial power for retaliation, implicating Dodd under *Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980).

- **Sixth Amendment**: Prosecutors Schultz and Westesen brought retaliatory prosecutions without probable cause or jurisdiction over civil family matters. **Hartman v. Moore, 547 U.S. 250 (2006),** Nieves v. Bartlett, 587 U.S. ___ (2019)

## C. PART TWO: Fabricated Prosecutions to Justify Termination of Daughter 2

**Key Facts**:

- After securing termination of Daughter 1, Defendants orchestrated two additional malicious prosecutions to justify terminating parental rights to Daughter 2, by bringing three meritless charges later dismissed.

- Sgt. Metcalf, Officer Taylor, Justices Adams & West, coordinated these charges and excessive pretrial conditions, demonstrating a broader conspiracy.

- McElyea issued an unconstitutional warrant securing Plaintiff's detention and excessive bail, in an attempt by Defendants to keep her detained.

- **County Prosecution #2** (Malicious Motive – Retaliation):

    o On or about **August 15, 2023.**

    o Charges: Violation of OP #1, and Obstruction (Sargeant Metcalff).

    o Basis: Alleged Plaintiff should have exited her home without a warrant – Retaliatory charge. No Probable Cause for Violation of OP charge.

    o Unlawful Warrant: McElyea issued an electronically signed "template" warrant not specifying what to search for, under deception for Metcalff to gain entry for arrest.

    o Excessive Bail & GPS Monitoring: Justices Adams & West imposed excessive bail and GPS monitoring, attempting to keep Plaintiff detained, limiting her ability to challenge the return home of Daughter 2 on **September 11, 2023**.

- o  Medical Negligence (GPS-Related Harm): Defendant Sharpe failed to provide necessary medical care for injuries caused by the GPS monitor.

- o  Third Arrest: Unreasonable arrest and detention on November 1, 2023, for malfunction GPS.

- o  Outcome: Charges dismissed 5 months later, showing the charge was pretextual, but causing a 5-month long prosecution and excessive gps monitoring and fees.

- **Third City Prosecution #3** (Malicious Motive – Civil Gains for Dodd's Client):

  - o  On or about **August 21, 2023**

  - o  Charge: Violation of OP #2 (Officer Taylor).

  - o  Basis: Brought allegation of "removed skis" – an allegation obtained during Unlawful Search & Seizure, when father and officer threatened arrest to gain entry without a warrant to remove her property.

  - o  Outcome: Charge dismissed 7 months later on Plaintiff's pro se motions for Brady violation, confirming the prosecution was fabricated. Plaintiff suffered 7 month prosecution running concurrently with separate city prosecution "assessing parental fitness."

**Legal Violations**:

- **First Amendment Retaliation**: The charges were manufactured to extend the OP and suppress Plaintiff's advocacy. (*Lozman*, 138 S. Ct. 1945 (2018))

- **Fourth Amendment**: Unlawful Search and Seizure. *Soldal v. Cook County*, 506 U.S. 56 (1992) – The Fourth Amendment applies to civil seizures of property.

- **Fourth Amendment**: Warrant issued by McElyea lacking particularity. United States v. Suggs

- **Fourteenth Amendment Equal Protection & Due Process Violation**: The criminal system was weaponized to achieve a civil termination without due process. (*Santosky*, 455 U.S. 745 (1982))

- **Eighth Amendment**: **Stack v. Boyle, 342 U.S. 1 (1951)**. In this case, the Supreme Court held that bail set at an amount higher than necessary to ensure a defendant's appearance in court violates the Eighth Amendment's prohibition against excessive bail. Bail was requested and ordered in an attempt to keep her detained.

- **Monell Liability**: The actions of law enforcement and judicial officers demonstrate a custom, policy, or practice of retaliatory prosecutions, and deprivation of rights, making the City and County liable. (*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978))

D. <u>Legal Conclusion: The Retaliatory Scheme Was Coordinated and Expanding</u>

- Judge Breuner and Attorney Dodd pre-planned the OP and termination, structuring it to permanently sever Plaintiff's rights.

- The termination relied on a criminal Complaint by Schultz and removal of minor children by law enforcement. The prosecution relied on securing the minor child as a witness.

- The later malicious prosecutions prove that the OP was not just retaliatory but part of a broader conspiracy to fabricate legal pretexts for parental termination.

- Defendants' coordinated actions meet the legal standards for retaliation, due process violations, conspiracy under § 1983, and Monell liability, and other violations listed below.

- Because this was a deliberately structured attack on Plaintiff's constitutional rights, Defendants' motion to dismiss must be denied.

---

SECTION 4: DEFENDANTS CANNOT RELY ON PRECLUSION OR STATUTE OF LIMITATIONS DEFENSES DUE TO UNCONSTITUTIONAL PROCEDURAL DEFECTS IN STATE FORUMS

A. Introduction: The State Proceedings Were Structurally Flawed and Designed to Deprive Plaintiff of an Adequate Forum

Defendants will likely argue that Plaintiff's claims are barred by res judicata, collateral estoppel, or the statute of limitations. However, these defenses fail because the mechanism used against Plaintiff was inherently unconstitutional, fragmented into separate legal proceedings, and deliberately obstructed to prevent timely, meaningful and impartial review.

The termination of Plaintiff's parental rights was not conducted through a lawful family court proceeding—it was accomplished through a pretextual Order of Protection (OP) and a separate criminal trial assessing parental fitness. The legal mechanisms were two distinct cases but required each other for success and:

1. Functioned outside the normal termination of parental rights process, which requires strict due process protections (*Santosky v. Kramer*, 455 U.S. 745 (1982)). Montana law required ONE civil jurisdiction (or one case).

2. Did not provide Plaintiff an adequate opportunity to appeal the termination due to the unconstitutional structural defects in the proceedings – termination divided between two cases and separate appellate judges.

3. Were overseen by judges Plaintiff criticized in her legislative testimony, creating an impermissible conflict of interest.

4. Despite officials terminating Plaintiff's parental rights, she was not afforded counsel for the appeal of Order terminating her parental rights. Montana law required counsel for appeals terminating parental rights, making the OP appeal fundamentally flawed.

Because there was no legitimate state forum to litigate these issues, preclusion doctrines and statute of limitations defenses cannot apply.

---

B. The Order of Protection Appeal Did Not Constitute a Meaningful or Adequate Review of the Parental Termination

Plaintiff's state appellate process was inherently flawed and did not constitute a meaningful opportunity to challenge the unlawful termination of parental rights.

1. The OP Appeal Concerned Only the Restraining Order, Not the Parental Termination

- Plaintiff was forced to challenge the OP in isolation, separate from the criminal trial that also assessed parental fitness.

- The appeal process did not address the broader unconstitutional termination of parental rights—only the issuance of the OP.

- This artificially narrowed appeal deprived Plaintiff of the ability to litigate the unconstitutional termination as a whole.

## 2. The Criminal Trial Was Used to Assess Parental Fitness, But No Appeal Was Meaningful

- Plaintiff was subjected to a criminal prosecution where parental fitness was assessed in violation of due process – speedy trial violation leading to no counsel, and suborned perjury of her minor child.
- The criminal conviction was used to justify continued deprivation of parental rights, yet was legally separate from the OP appeal.
- Because the OP appeal and criminal appeals were distinct proceedings, they did not offer a single, adequate forum to challenge the full constitutional violation of the termination of her parental rights.

## 3. Plaintiff Was Forced to Appeal Pro Se, Despite Law Requiring Counsel in Termination Cases

- Under state and federal law, parental termination cases require the appointment of counsel.
- Plaintiff was denied counsel for both the proceedings and the appeal of the order terminating her parental rights, violating her due process rights.

- Because the law mandates appointed counsel for termination proceedings and appeal, forcing Plaintiff to proceed pro se rendered the appeal structurally defective.

- A procedurally defective state forum cannot create preclusion.

---

## C. Judges Implicated in Plaintiff's Speech Assigned Themselves to Her Appeals, Creating Bias and Deliberate Obstruction

Plaintiff's and other parents' protected testimony before the Montana legislature criticized multiple judicial actors, including Breuner, McGrath, and McElyea. Those very same judges then created and assigned themselves to her cases, and deliberately interfered with her appeals, obstructing any resolution to run out the statute of limitations on her original claims against Standing Master Bowen.

## 1. Judge McGrath Assigned Himself to the OP Appeal

- Judge McGrath was one of the judicial officials implicated in Plaintiff's testimony about systemic misconduct.

- He then deliberately prolonged the pro se OP appeal, preventing any meaningful resolution while Plaintiff remained unable to have contact with

her children. He denied the appeal on the day he was served this lawsuit, after 17 months from the Order.

## 2. Judge McElyea Assigned Herself to the Criminal Appeals

- Judge McElyea, also implicated in HB 322 legislative testimony, and who directly opposed her in later interim committee protected testimony, oversaw the criminal appeal.

- McElyea engaged in extraordinary delays, ensuring that Plaintiff had no timely resolution.

- McElyea finally recused, only after being served this lawsuit.

- By intentionally obstructing Plaintiff's appeals, Defendants ensured the parent-child relationship was severed beyond repair while the statute of limitations expired on claims against Standing Master Bowen, her due process violations being the subject of Plaintiff's speech.

**This pattern of judicial obstruction confirms that**:

- There was no adequate state forum to resolve these issues.

- The delays were deliberate and meant to bar Plaintiff's constitutional claims from ever being reviewed.

- Because state proceedings were constitutionally inadequate, they cannot be used to justify preclusion or statute of limitations defenses.

---

D. Legal Principles Barring Preclusion and Statute of Limitations Defenses

1. The Unconstitutional Structure of the Proceedings Prevents Preclusion:

- Under *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996), a state judgment cannot have preclusive effect if the state proceeding was fundamentally unfair.

- Here, the lack of an adequate appellate forum, denial of counsel, and judicial bias make these proceedings inherently unconstitutional.

2. When There is No Adequate State Forum, Preclusion Does Not Apply

- Under *England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964), preclusion is improper if the state court did not provide a full and fair opportunity to litigate the issue.

- Because Plaintiff was denied notice or a full hearing on the unconstitutional termination, or counsel for appeal, or a neutral judge, the OP termination of rights appeal does not bar federal review.

3. The State's Deliberate Delay Bars Any Statute of Limitations Defense

- Courts recognize "equitable tolling" where state actors deliberately obstruct a party's ability to seek relief.

- Under *Harris v. Carter*, 515 F.3d 1051 (9th Cir. 2008), deliberate delays caused by the state extend the statute of limitations.

- Because Plaintiff's appeals were deliberately delayed to sever her parental rights and run the statute of limitations, Defendants cannot now claim that the deadline has expired.

4. The Retaliation Itself is Ongoing, Keeping Claims Timely

- First Amendment retaliation is a continuing violation if the harm is ongoing.

- Plaintiff remains under a no-contact order with her children, which is a continuing deprivation of her rights.

- Under *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), when retaliation continues over time, the statute of limitations does not begin to run until the last retaliatory act.

E. Conclusion: Defendants Cannot Claim Preclusion or Statute of Limitations Defenses

- The OP appeal did not constitute a meaningful review of Plaintiff's constitutional claims, barring preclusion.

- State law required counsel for termination appeals, yet Plaintiff was denied representation, making the appeal structurally defective.

- Judges implicated in Plaintiff's speech deliberately assigned themselves to her cases and obstructed resolution, extending delays to run out the statute of limitations.

- The retaliatory termination and no-contact order remain in effect today, making these claims ongoing violations of Plaintiff's constitutional rights.

Because Plaintiff was never provided a meaningful state forum to challenge the constitutional violations, Defendants' preclusion and statute of limitations defenses must be rejected.

## XVI.    Fraudulent Scheme – Due Process, RICO

Plaintiff has sufficiently pled facts supporting a deliberate fraudulent scheme by Officials of issuing void Orders (not following Montana law) and enforcing them

to fabricate criminal "custodial interference" charges, and other charges, for personal gains in a civil case.

1. Fraudulent Legal Process as a Due Process Violation

Courts have held that officials cannot manufacture false legal standards or knowingly enforce orders lacking legal basis as this violates procedural and substantive due process under the Fourteenth Amendment.

- Case Law:
  - Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367 (1996) – Fraudulent or fundamentally unfair legal proceedings cannot be relied upon to bar federal review.
  - Moore v. Urquhart, 899 F.3d 1094 (9th Cir. 2018) – A sheriff and judge who issued an order without legal basis and knowingly enforced it violated due process.
  - Torres v. Goddard, 793 F.3d 1046 (9th Cir. 2015) – A state's use of fraudulent legal processes to confiscate property violated due process and was actionable under § 1983.

Application to Plaintiff's Case:

- Standing Master Bowen, lacked authority to issue final orders, warrants, citations, and modifications of parental rights but deliberately issued them anyway to manipulate judicial outcomes. Proceedings occurred without notice to Plaintiff.

- Judges "enforced" or "clarified" these ultra vires/void Orders with threats of jail by Judge Ohman, and by ex parte Orders of "clarification" without notice or hearings by Judge Breuner, to deliberately obstruct judicial review.

- Judges knowingly enforced these fraudulent orders, denying due process by obstructing hearings, forcing waivers, and ignoring civil litigation requirements.

- Prosecutors and law enforcement were complicit in treating unauthorized orders as valid to fabricate criminal charges against Plaintiff of custodial interference, prior to any civil hearing on the matter.

- Judge Breuner then misused an OP and stated the word "abuse" with no supporting evidence, allowing a removed minor child to be a coached state witness, and placed the OP in Discovery to fix the criminal case.

- Appeals were fragmented, biased, experienced excessive delays.

- Appeals were overseen by officials implicated in testimony for HB 322 – a Bill arising out of due process violations by Bowen – now her direct supervisors, McElyea and Brown, assigned themselves to the appeals.
- The judicial process was weaponized—administrative failures obstructed review, ex parte orders modified parental rights with no due process, and fraudulent contempt findings were manufactured to justify false criminal charges.

---

2. Racketeering (RICO) – A Closed System of Fabricating Criminal Charges for Custody Gains and Financial Benefit

Under 18 U.S.C. § 1962 (RICO), a fraudulent scheme involving multiple actors conspiring for an unlawful goal through repeated predicate acts can establish liability.

- Case Law:
  - United States v. Freeman, 6 F.3d 586 (9th Cir. 1993) – RICO liability can apply where public officials coordinate in fraudulent legal processes.

- o Otremsky v. Maass, 903 F.2d 1170 (9th Cir. 1990) – State officials manipulating legal proceedings to fabricate charges constitutes a constitutional violation.

- o Hale v. State of Arizona, 993 F.2d 1387 (9th Cir. 1993) – Pattern of fraud and abuse in the legal system may form the basis for a civil RICO claim.

**Application to Plaintiff's Case:**

- Attorney Dodd, Standing Master Bowen, and Judge Breuner coordinated to fabricate criminal allegations against Plaintiff to gain financial and custodial advantages for Dodd's client, and to retaliate for reporting misconduct via protected legislative testimony.

- Judges knowingly issued unauthorized legal actions (warrants, contempt citations, and ex parte orders), falsely restricting Plaintiff's parental rights.

- Prosecutors pursued baseless criminal charges (custodial interference, contempt, assault-creating fear) based on these fraudulent orders to obstruct Plaintiff's legal standing and ability to challenge rulings.

- Law enforcement acted on fraudulent orders, leading to pretextual arrests, excessive bail, and fabricated exigency to justify ongoing prosecutions.

- Judicial misconduct boards and higher courts refused to address the systemic fraud, creating an impenetrable cycle of legal abuse to deprive Plaintiff of recourse.

---

3. Judicial and Prosecutorial Liability – Exceeding Jurisdiction and Fraud as an Exception to Immunity

Judicial and prosecutorial immunity does not protect actions absent all jurisdiction or fraudulent acts undertaken in conspiracy with private actors.

- Case Law:
  - Rankin v. Howard, 633 F.2d 844 (9th Cir. 1980) – A judge loses immunity when conspiring with a private attorney to deprive constitutional rights through prearranged rulings.
  - Dennis v. Sparks, 449 U.S. 24 (1980) – Private attorneys conspiring with state actors can be sued under § 1983, and judges lose immunity if actions were non-judicial or taken absent jurisdiction.
  - Kalina v. Fletcher, 522 U.S. 118 (1997) – Prosecutors lose immunity for fabricating evidence or knowingly filing false charges.

- Gonzalez v. Trevino, 42 F.4th 487 (5th Cir. 2022) – Prosecution based on fabricated or retaliatory evidence is actionable under § 1983.

**Application to Plaintiff's Case:**

- Judges acted in clear absence of jurisdiction by issuing parental termination orders disguised as Orders of Protection on minors into adulthood.

- Standing Master Bowen and Judge Breuner engaged in extrajudicial actions, modifying financial and custodial orders without legal authority – using Final and ex parte Orders.

- Prosecutors pursued criminal charges based on fraudulent judicial orders rather than independently verified evidence.

- Law enforcement acted as enforcers of fabricated orders, rather than conducting independent investigations.

- Private Attorney Dodd conspired with judges and officials to leverage fraudulent legal proceedings for personal gain.

- Judicial officials refused to review Standing Master Bowen's Orders, and ex parte Orders from Judges were not "final," therefore Plaintiff was blocked from state appellate review of the underlying due process violations prior to her protected testimony.

- After her protected testimony, officials jumped to criminal charges and prosecutions of "custodial interference" prior to any civil family adjudication.

- Plaintiff was effectively denied any civil hearing with a judge on her family matters.

## **Conclusion**:

Officials engaged in a fraudulent scheme that weaponized the legal system against Plaintiff to deprive her rights:

- Coordinated use of fraudulent orders and legal process between Attorney and Standing Master Bowen, and between Attonreys and Judge Breuner to fabricate contempt and custodial interference charges.

- Law enforcement acted on knowingly invalid orders to justify additional charges.

- Judges knowingly enforced unauthorized legal actions, depriving Plaintiff of due process and parental rights.

- Prosecutors pursued criminal cases based on fabricated legal standards, violating constitutional protections.

- Private attorneys conspired with officials to manipulate legal outcomes for financial and custodial advantage.

- Holiday/vacation parenting time lack of clarity was criminalized solely against Plaintiff, by deliberately denying Plaintiff a civil family hearing on the matter.

Courts have upheld that government actions can not interfere with due process requirements of civil family law. Courts have upheld that due process must take place in civil family court prior to interference by other courts such as criminal courts, or when severing parental rights. **Franz v. United States**, 707 F.2d 582 (D.C. Cir. 1983), **Doe v. Mann**, 415 F.3d 1038 (9th Cir. 2005).

Plaintiff's facts meets the plausibility standard for:

- § 1983 Due Process Violations
- § 1985 Conspiracy to Violate Civil Rights
- RICO (18 U.S.C. § 1962) Fraud & Extortion

# XVII.  Plausibility of Claims

This section shows Plaintiff's facts support the plausibility of each of her claims, and her claims should proceed. Defendant's Motions to Dismiss should be denied.

COUNT 1 – RETALIATION FOR EXERCISING FREE SPEECH (AND COUNT 6 – RETALIATORY OPPRESSION AND INTIMIDATION)

Plaintiff case meets the plausibility standard per the Ninth Circuit jury instructions:

> "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech."

Plaintiff's case:

- Violated Right: First Amendment Retaliation (42 U.S.C. § 1983)

- Protected Activity:

    o On February 7 and March 23, 2023 Plaintiff testified before the Montana legislature regarding judicial misconduct, failure in oversight, and due process violations implicating Gallatin County Defendants Bowen, Breuner, Dodd, McGrath, seeking due process remedy in HB 322.

    o Numerous parents reported due process violations by Defendant Bowen.

    o Defendant Breuner participated in opposing the select group of primarily mothers from Gallatin County with unresolved cases in the

County, by publicly disparaging them as "emotional" and with
"gratuitous" motives at the same two hearings. Breuner defended
actions by Bowen, while Breuner served as Head Judge in 2023.

- o HB 322 successfully passed.

- Adverse Actions:

  - o On April 18, 2023, Prosecutor Shultz filed a criminal Complaint
    against Plaintiff without notice, leading to her arrest. The Complaint
    was later dismissed.

  - o On June 20, 2023, Officers Shepard and Lutzka ordered Plaintiff's
    arrest, conducted by Officer Zieglar, after minor child was informed
    of law enforcement's intent to arrest her Mother.

  - o On June 20, 2023, Officer Shepard and Lutka issued a non-judicial
    no-contact order barring Plaintiff from her minor children, without
    evidence of serious threat or harm.

  - o City Officials initiated a criminal termination of parental rights.
    Prosecutor Schultz prosecuted a charge of "assault-creating fear" in a
    minor by parent, prior to any investigation or evidence of harm. Judge
    Tierney conducted a criminal trial on February 2, 2024, after denying
    speedy trial and counsel, assessing parental fitness after parental rights
    had been terminated.

- o On June 21, 2023, Judge Breuner created a new criminal case for Plaintiff, assigned himself to it, and issued a zero contact order of protection, requested by Dodd, Post and DuCharme, solely on minor children, into Daughter 1's adulthood, terminating her parental rights, allowing minor child could be used as state witness for prosecutor.

- o On June 20, 2023, Deputy Kiewatt and Prosecutor Westesen brought a charge of "False Report to Law Enforcement" with no probable cause and despite exculpatory evidence over a family matter prior to civil adjudication. Justice of Peace Adams conducted a trial on January 18, 2024, after denying speedy trial, causing Plaintiff to be pro se and removing intent from instructions to prosecute mother for civil contempt of a parenting plan.

- Under Color of Law: Judges, Prosecutors and Officers issuing charges, orders, prosecutions and arrests wield state power. Private actors coordinating with officials act under color of law.

- Argument:

  - o The Unprecedented Custody Modification Following Plaintiff's Protected Speech, from 80% to 0%, via a zero-contact OP, after no prior finding of unfitness in her children of 16 and 17 years old, Demonstrates Retaliatory Motive.

- o Plaintiff's free speech reporting due process violations in Gallatin County was the motivating force for retaliation which began within weeks.

- o Plaintiff experienced numerous adverse acts shortly after her protected speech.

- Case Law:

  - o *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018). Retaliatory government action violates the First Amendment.

  - o *Dennis v. Sparks*, 449 U.S. 24 (1980). Private actors acting jointly with officials are subject to 1983 liability.

  - o Retaliation – Individual & Monell Liability: **Bevill v. City of Quitman, Texas**, Civil Action No. 4:19-cv-00406. (5th Cir.,11/5/24). Rejected summary judgment motions and qualified immunity. Court found Defendants engaged in conspiracy to retaliate for free speech. City maintained a policy, custom, or practice that was the moving force leading to the decision to take adverse action in retaliation for exercising Plaintiff's First Amendment free-speech.

- In *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018), the Ninth Circuit reaffirmed that courts must consider the totality of actions rather than isolated incidents when assessing constitutional violations.

Federal courts, under the Supremacy Clause, have the authority to hold state and private actors accountable when their coordinated actions result in a deprivation of federally protected rights, even if no single act independently appears unlawful.

- Ongoing Retaliation:

  - Retaliation against Plaintiff is ongoing, it is not a single event.

  - Denial of due process, denial of appeals, excessive conditions, exclusion from community and minor children are continuing violations.

- Case Law: National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (ongoing violations keep claims timely).

COUNT 2 – UNCONSTITUTIONAL TERMINATION OF PARENTAL RIGHTS – DUE PROCESS

Plaintiff's asserts that facts from her Complaint meet the criteria for Fourteenth Amendment violation pertaining to the termination of her parental rights without due process as outlined in the **Ninth Circuit's Model Jury Instructions 9.32**, which discuss:

**A. Procedural Standard:**

1. **Fundamental Liberty Interest**: Parents possess a fundamental liberty interest in the care, custody, and management of their children.
2. **Due Process Requirements**: The state must not terminate parental rights without providing due process, which includes:
   i. **Notice**: Informing the parent of the proceedings.
   ii. **Hearing**: An opportunity for the parent to be heard in a meaningful manner.
3. **Burden of Proof**: The state is required to prove parental unfitness by at least clear and convincing evidence before terminating parental rights.

**B. Substantive Standard:**

1. **Fundamental Liberty Interest:**
   i. Parents have a fundamental liberty interest in the care, custody, and management of their children. This interest is protected under the Fourteenth Amendment's Due Process Clause.
2. **Governmental Interference:**
   i. To establish a substantive due process violation, there must be evidence of governmental action that interferes with this fundamental right.
3. **Arbitrary or Unjustifiable Action:**
   i. The governmental interference must be arbitrary, oppressive, or without reasonable justification. This means the action is not narrowly tailored to serve a compelling state interest.
4. **Shock the Conscience Standard:**
   i. The government's conduct must be so egregious or outrageous that it "shocks the conscience." This standard is met when the behavior is so brutal or offensive that it does not comport with traditional ideas of fair play and decency.

**C. Intent to Harm Standard:**

1. **State-created danger doctrine**, a plaintiff must establish that:
   i. The defendant committed an affirmative act that created or increased a risk of harm to the plaintiff.
   ii. The harm to the plaintiff was foreseeable.
   iii. The defendant acted with deliberate indifference to the known or obvious danger.

**D. Deliberate Indifference Standard:**

1. Officials' conduct was objectively unreasonable in light of clearly established law.

E. Plaintiff's facts support the Ninth District Plausibility of **9.32**:

1. City criminal court brought a charge of "custodial interference" without notice leading to bench warrant for pro se mother with an open family law case.

2. Prosecutor brought the charge premised on a non-emergency ex parte Order issued without notice and prior to the claim being vetted with a civil hearing.

3. Officials exploited the duress this would cause minor children and their primary custodial parent – the mother, by attempting to deceptively arrest Mother without her knowledge of bench warrant and then tell minor child their intent to arrest mother.

4. Officials then brought a vague charge of "assault – creating fear" when minor Daughter reported seeing mother, exploiting her duress.

5. Officers then issued a non-judicial Order restricting mother from her minor children, effectively transferring custody, without evidence or threat of serious bodily harm.

6. Plaintiff's parental rights, all contact, and ability to direct their care and management was then severed into their adulthood, under threat of arrest with an Order of Protection placed only on the minor children;

7. Plaintiff was not noticed that the proceeding on July 14, 2023 would be a termination proceeding for Daughter 1;

8. Plaintiff was not appointed state counsel, Plaintiff was not appointed state counsel for Appeal and could not afford counsel in the appeal of the termination of her parental rights;

9. When Plaintiff asked to speak at the hearing she was told she was not allowed. When she filed a Rule 60 Motion with new evidence and to

request visitation, she was denied.

10. Plaintiff was not adequately noticed of a Motion to "Extend the Order of Protection" for minor Daughter 2 effectively terminating her parental rights, This motion was granted on September 11, 2023 without a hearing, and the Order will continue indefinitely until her adulthood;

11. This ex parte substantive Order on September 11, 2023 was issued in a closed case Plaintiff had already filed Notice of Appeal;

12. Neither the hearing for a Temporary Order on July 14, 2023, nor the Order extending without notice or a hearing on September 11, 2023, met the clear and convincing standard required when terminating parental rights.

13. Defendants then granted extraordinary opposed delays in the pro se appeal of the termination of her parental rights;

14. The prosecution of the charge of "assault – creating fear" was only possible by the termination of parental rights without a plenary hearing requiring clear and convincing evidence.

15. Arbitrary & Oppressive – The two Orders listed no evidence of harm, offered no visitation, and no reasonable justification for the 100% total, permanent, severance of the parent-child relationship. Plaintiff and minor children will be arrested if any contact for 2 years – after both children reach age of majority, despite no credible threat of harm. Defendants ignored clearly settled law barring their actions.

16. Shock the Conscience – Judge Breuner and Attorneys permanently severing parental rights without notice, with any contact under threat of arrest, for 2 years into adulthood, and extending an order without a hearing in a closed case on appeal for Daughter 2, without father seeking protection, without goodbyes, without state appointed counsel, and the barring of Plaintiff from her community until after her children graduate and are moved out of state, in retaliation for free speech publicly opposing Judge Breuner, shocks the conscience, and is contrary to fair play.

17. Officials acted affirmatively to permanently sever all contact with her minor children, even arresting her afterwards for an allegation of

126

contacting her minor child, to ensure the mother – child relationship was permanently severed, making it a crime for a mother and her minor daughters to be in any contact again, meets the standard of state created danger.

18. Officials acted unreasonably in regards to state and settled law.

## **Controlling Authority:**

Plaintiff further alleges that her parental rights, a fundamental liberty interest, guaranteed by the constitution and supported by **Troxel v. Granville**, 530 U.S. 57 (2000), were terminated in violation of **Santosky v. Kramer**, 455 U.S. 745 (1982). Parental rights for Daughter 1 were terminated in proceedings without notice and without requiring the clear and convincing standard. Parental rights for Daughter 2 were terminated without notice or a hearing, regarding facts disputed by Plaintiff. Santosky emphasized due process protections, including notice and a hearing. Settled law required clear and convincing evidence of harm prior to removal – officials acted in deliberate indifference.

F. Additional Controlling Authority – Termination of Parental Rights:

1. Calabretta V. Floyd (1999) -> Police can not interfere in family matters without due process.

2. Demarree v. Pederson -> Police can only remove a minor child without a court order if believ child is likely to experience serious bodily harm in the time that would be required to obtain a warrant. "Significant harm" required.

3. Kirkpatrick v. County of Washoe, 843 F.3d 784 (9th Cir. 2016) (en banc) -> Government officials (including law enforcement and child protective services) must have either a warrant or exigent circumstances to remove a child from parental custody without violating the Fourth and Fourteenth Amendments. Exigent circumstances require an immediate risk of significant harm.The court emphasized that speculative or minor risks are not sufficient to justify warrantless removals, or prolonged removal.

4. Franz v. U.S. (D.C. Circuit 1983) -> State actors can not use criminal mechanisms to terminate parental rights unlawfully, particularly using Protective Orders.

5. Mathews v. Eldridge -> Failure to conduct an investigation before issuing no-contact orders or criminal charges is unconstitutional.

6. Ratte v. Corrigan -> Judge can not issue pre-signed removal orders for law enforcement or other officials to use.

7. Stanley v. Illinois (1972) -> Parental rights can not be interfered with unless a family court hearing determines unfitness.

8. Young v. U.S. (1987) -> Prosecutors can not act as private attorneys for individuals or special interests.

9. In RE Gault -> Minors have right to counsel, privilege against self-incrimination, in proceedings affecting family integrity.

City of Houston v. Hill, 482 U.S. 451 (1987), The Supreme Court struck down a city ordinance that criminalized "interrupting" a police officer, ruling it was unconstitutionally overbroad and violated the First Amendment. The Court held that law enforcement cannot use vague or overly broad statutes to suppress speech that is critical of government officials. Government officials—including law enforcement—may not use their authority to silence dissent, criticism, or protected

speech.

- Violated Right: Fourteenth Amendment Substantive & Procedural Due Process (42 U.S.C. § 1983)

- Fact: On July 14, 2023 and September 11, 2023, Judge Breuner signed an order barring Plaintiff from all contact with her children, without notice or hearing, until they become adults, without meeting clear and convincing standard.

- Under Color of Law: Judges cannot terminate parental rights without due process.

- Case Law: *Santosky v. Kramer*, 455 U.S. 745 (1982) (due process protections required before termination of parental rights).

- Argument: The Custody Modification of 80% to 0% Was Achieved Through Procedural Manipulation using criminal mechanisms, and Retaliatory Legal Actions That Violated Due Process.

COUNT 3 – MONELL LIABILITY FOR UNCONSTITUTIONAL TERMINATION OF PARENTAL RIGHTS

- Violated Right: Fourteenth Amendment Due Process (42 U.S.C. § 1983)

- Fact: On April 18, July 14 and September 11, 2023, City of Bozeman Prosecutor Schultz and Gallatin County Judge took the single egregious act to terminate parental rights using a criminal mechanism for adults. Schultze filed a Complaint on April 18 initiating the municipal criminal usurpation of her family law case, which required the permanent severance of parental rights by Breuner on July 14 to secure the minor as a state witness. On September 11, Breuner took the egregious act to permanently sever parental rights of daughter 2 in a closed case on appeal without notice or a hearing. Judge Tierney held a criminal trial to assess parental fitness, after parental rights had already been terminated – proceedings required to occur in civil family court. Judge Tierney lacked jurisdiction over the family matter.

- Under Color of Law: City and County policy makers implement policy on parental rights by taking single egregious acts. City and county officials showed a pattern of bringing repeat allegations of Contempt, and Custodial Interference charges resulting in custody modifications, prior to holding civil family judicial hearings.

- Case Law: *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (municipal liability exists when policy and single egregious acts by policy makers

causes constitutional violations). A pattern or custom of violations meets Monell liability.

---

COUNTS 3, 19, 20 – MONELL LIABILITY – DUE PROCESS

Plaintiff demonstrated that the city and county both had a custom of misusing criminal mechanisms to interfere with family matters.

Plaintiff argues that the repeated ultra vires orders by Standing Master Bowen and Judge Breuner, coupled with law enforcement enforcing the void orders and initiating charges of custodial interference before civil judicial hearings, establish a pattern of constitutional violations akin to Scanlon v. County of Los Angeles, 2024 WL 1238401 (9th Cir. 2024).

**Legal Argument for Establishing a Monell Claim**:

1. Pattern of Void or Ultra Vires Orders:

   o Bowen repeatedly issued final orders despite lacking judicial authority, and obstructed judicial review.

   o Ohman and Breuner enforced and expanded these unlawful orders first with ex parte orders without notice or hearing, and then without jurisdiction, including issuing a two-year OP on minor children into

adulthood and issuing substantive orders removing property and

custody, in a closed case on appeal—both bypassing proper due

process.

- o These orders were later relied on to justify criminal charges, fabricate

  contempt claims, and obstruct Plaintiff's custody rights – including

  termination of parental rights, showing systemic misconduct.

2. Law Enforcement's Pattern of Enforcing Invalid Orders and Initiating

   Criminal Charges Preemptively:

- o First Charge of Custodial Interference: Prosecutor brought a criminal

  charge of custodial interference prior to a civil hearing on the matter

  and relying on an ex parte Order. City and County Prosecutors and

  police then acted without civil adjudication on a parenting dispute,

  improperly treating it as a criminal matter, filing charges prior to

  investigating the facts and bypassing civil family due process.

- o Second Charge of Custodial Interference: Law enforcement and

  prosecutors again initiated charges based on ultra vires order rather

  than awaiting judicial determination.

- o Officers themselves issued a non-judicial no-contact Order restricting

  Plaintiff from her minor children.

○ Pattern of Preemptive Criminalization: This mirrors the misconduct in Scanlon, where county actors omitted exculpatory evidence to justify wrongful child removals. Here, law enforcement used void or legally dubious orders to justify wrongful prosecutions against Plaintiff, and restrict access to her minor children.

3. Pattern of Police and Prosecutorial Misconduct Shows a Municipal "Policy of Inaction" Under Monell:

○ Scanlon v. County of Los Angeles, 2024 WL 1238401 (9th Cir. 2024): The Ninth Circuit held that a jury could infer a county maintained an unconstitutional policy of failing to disclose exculpatory information in child removal cases.

○ Application to Plaintiff's Case:

▪ The repeated enforcement of ultra vires orders and premature criminalization of family matters suggests an official pattern of systemic inaction, where judicial officials denied a civil judicial hearing for Plaintiff, and police failed to verify the validity of orders or investigate before making arrests.

▪ Police and prosecutors omitted critical information (i.e., lack of civil adjudication, improper legal process, Plaintiff's ongoing

appeals, and the lack of actual custodial interference), mirroring the exculpatory omissions in Scanlon.

**Conclusion**:

Because a jury could conclude that officials relied on legally void orders to justify repeated police enforcement and fabricated criminal charges, Scanlon supports Plaintiff's Monell claim that the County and City had an unconstitutional practice of failing to ensure civil due process before taking severe legal action against a parent.

COUNTS 3, 19, 20 – MONELL LIABILITY – First Amendment Retaliation & Oppression

Plaintiff has demonstrated that city/county officials engaged in a coordinated custom or policy of retaliation against a parent who engaged in protected activities.

To establish a First Amendment retaliation claim, Plaintiff must show:

1. She engaged in protected activity.

2. Defendants took an adverse action.

3. A causal connection exists.

Plaintiff's facts meet the criteria of establishing a custom:

1. Widespread and persistent Practice

2. Duration and Frequency

3. Actual or Constructive Knowledge

4. Deliberate Indifference

Plaintiff engaged in clearly established protected conduct under the First Amendment (reporting judicial misconduct, requesting due process, filing appeals, and legislative testimony). Defendants took adverse actions that would chill a person of ordinary firmness, and causation is demonstrated by proximity and pattern of escalating government retaliation.

A. County Retaliation for Complaints Against Standing Master Bowen

1. October 2021: Plaintiff filed a due process challenge against Standing Master Bowen, requesting a hearing on procedural and substantive errors.

   o *Retaliation:* November 2021, Plaintiff was denied a hearing, while the opposing party was granted one.

2. January 2022: Plaintiff formally requested judicial review of Standing Master Bowen's unauthorized orders.

   o *Retaliation:* April 2022, Judge Breuner declared Plaintiff "vexatious", obstructing her legal filings.

○ Breuner's replaced her case status hearing with the hearing above, in violation of Plaintiff's due process rights.

## B. County & City Retaliation for Appealing Due Process Violations

3. May 2022: Plaintiff filed an appeal of Judge Breuner's Order

   ○ *Retaliation:* August 2022, Breuner issued an ex parte order stripping Plaintiff of Labor Day holiday parenting time.

## C. Retaliation for Filing a Judicial Misconduct Complaint Against Bowen

4. September 2022: Plaintiff filed a judicial complaint against Standing Master Bowen for issuing unauthorized orders and obstructing judicial review.

   ○ *Retaliation:* October 2022, Judge Breuner issued another punitive ex parte order restricting Thanksgiving holiday access.

## D. Retaliation for Testifying to the Legislature Regarding Judicial Misconduct

5. February/March 2023: Plaintiff testified before the Montana Legislature regarding judicial misconduct and due process violations in family court.

   ○ *Retaliation:* April 2023, City Prosecutor filed a meritless criminal complaint—later dismissed.

   ○ *Retaliation:* June 2023, City police arrested Plaintiff under pretext of a bench warrant.

- o *Retaliation:* June/July 2023, Parental rights terminated via a restraining order (OP), bypassing all due process requirements.

- o *Retaliation:* July 2023, OP used to secure a minor child as a witness for prosecution, weaponizing the criminal system to retaliate against Plaintiff's testimony.

## E. Retaliation for Exercising Constitutional Rights (Refusing Warrantless Entry)

6. June 2023: Plaintiff asserted her Fourth Amendment rights by refusing to open her door to County Deputy Kiewatt.

   - o *Retaliation:* Kiewatt failed to disclose an outstanding bench warrant, creating false exigency and brought charge for "False Report."

   - o *Retaliation:* County Prosecutor prosecuted Plaintiff with "False Report" alleging she could not report child welfare issues during a family dispute.

7. August 2023: Plaintiff asserted her Fourth Amendment rights by refusing to open her door to County Sergeant Metcalff, who lacked a warrant.

   - o *Retaliation:* Metcalff and officers harassed Plaintiff for three hours.

   - o *Retaliation:* Metcaff charged Plaintiff with Obstruction (despite lack of a warrant).

   o *Retaliation:* County Justice Court imposed excessive bail and GPS monitoring (beyond statutory authority).

## F. Retaliation for Filing a Judicial Complaint Against Judge Breuner

8. August 2023: Plaintiff filed a judicial complaint against Judge Breuner for issuing unlawful order terminating her parental rights of Daughter 1.

   o *Retaliation:* September 2023 Breuner issued an ex parte order terminating Plaintiff's parental rights for Daughter 2 in a closed case already on appeal—without notice or a hearing.

## G. Retaliation for Reporting Police Misconduct

9. November 2023: Plaintiff reported a GPS malfunction to the court and to law enforcement.

   o *Retaliation:* Plaintiff was arrested at work, despite prior notice to law enforcement.

   o *Retaliation:* Prosecutor attempted to upcharge to a felony.

   o *Retaliation:* Prosecutor attempted to revoke bond, further limiting Plaintiff's ability to defend herself.

10. December 2023: Plaintiff filed an official complaint against City and County Police for misconduct.

      o  *Retaliation:* January 2024, County Court denied motion to dismiss despite clear speedy trial violations.

11. February 2024: Plaintiff filed an to Disqualify the Prosecutor for suborning perjury and Brady violations.

      o  *Retaliation:* City Court denied Plaintiff's motion for a new hearing despite compelling evidence of misconduct.

**Meeting the Monell "Custom" Standard**

Plaintiff's retaliation claims establish a pattern of conduct by multiple officials, supporting a Monell claim for unconstitutional custom and practice.

Legal Standard (Thompson & Trevino)

1. Pattern of Retaliation Against Protected Speech (*Gonzalez v. Trevino*, 42 F.4th 487 (5th Cir. 2023))

      o  Judges, prosecutors, police, and court officials consistently targeted Plaintiff for filing complaints, requesting due process, appealing judicial rulings, testifying to the legislature, asserting her rights.

2. Consistent & Predictable Government Retaliation (*Thompson v. Clark*, 142 S. Ct. 1332 (2022))

      o  Plaintiff suffered retaliation for each protected act—a pattern that constitutes an official custom under *Monell*.

3.  Systemic Unconstitutional Custom & Pattern

      o  *Scanlon v. County of Los Angeles*, 2024 WL 1238401 (9th Cir. 2024) – A pattern of omissions and due process violations can demonstrate a Monell policy of inaction.

      o  Here, systemic failure to afford Plaintiff due process, weaponization of the legal system, selective enforcement, and adverse actions after engaging in protected activity establish a Monell claim.

**Supporting Case Law:**

- **Thompson v. City of Los Angeles, 885 F.2d 1439 (9th Cir. 1989):** The court held that a "custom" for Monell purposes must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy.

- **Trevino v. Gates, 99 F.3d 911 (9th Cir. 1996):** This case emphasized that liability for an improper custom cannot be predicated on isolated or sporadic incidents; it must be based on practices of sufficient duration, frequency, and consistency.

- *Scanlon v. County of Los Angeles*.

- Retaliation – Individual & Monell Liability: **Bevill v. City of Quitman, Texas**, Civil Action No. 4:19-cv-00406. (5th Cir.,11/5/24). Rejected summary judgment motions and qualified immunity. Court found Defendants engaged in conspiracy to retaliate for free speech. City maintained a policy, custom, or practice that was the moving force leading to the decision to take adverse action in retaliation for exercising Plaintiff's First Amendment free-speech.

COUNT 4 – CONSPIRACY TO RETALIATE AND DEPRIVE RIGHTS

**Plausibility**

Plaintiff's argues that facts from her Complaint meet the criteria for Conspiracy as outlined in the **Ninth Circuit's Model Jury Instructions**, which state:

A. **Conspiracy under 42 U.S.C. § 1985**:

1. There was an agreement or meeting of the minds to violate the plaintiff's constitutional rights.

2. The official committed an overt act in furtherance of the conspiracy.

3. The plaintiff suffered a constitutional injury as a result.

Plaintiff argues Defendant's Breuner, McElyea, McGrath, Schultz, Tierney, Attorneys, Father, and officers Shepard and Lutzka conspired to retaliate against Plaintiff for her protected speech criticizing their conduct, were aware of her free speech, and took actions to punish her by terminating her parental rights, and to discredit her as a mother with an unsubstantiated claim she "endangered her minor child."

Additionally Plaintiff argues there were "sub-conspiracies" fully detailed in her Complaint meeting the plausibility criteria.

B. <u>Actions taken by Defendants aware of her free speech</u>:

1. Making unfounded allegations she was not following court orders and endangered her minor child;

2. Terminating her parental rights without due process to remove minor child to be state witness against Mother;

3. Obstructing her fair defense of the allegation; and

4. Obstructing swift and unbiased appeals through the deprivation of her rights.

Once the city brought charges and the Order of Protection was placed solely on the minor children, Plaintiff asserts Defendants Kiewatt, Westesen, Metcalf, Adams, West, Sharpe, Talyor, and Zieglar, brought additional charges, excessive bail conditions, arrests, and unconstitutional search and seizures, to further obstruct her fair defense of her parental rights, to give unfair

advantage to the Dodd Law Firm's concurrent civil family law case with their goal to obtain justification to terminate parental rights of Daughter 2 before September 11, 2023, and support retaliation by Breuner, by the deprivation of her rights.

C. <u>Plaintiff's facts support the Ninth District Plausibility for Conspiracy</u>:

1. Breuner and Dodd would not have had been able to retaliate without the Defendant Father's previous desire for full custody;

2. Breuner and Dodd would not have had grounds for a Temporary and then 2-year Order of Protection terminating parental rights of Daughter 1 without the city criminal charge, arrest, and charges of endangerment, and non-judicial court order removing minor children, by Schultz, Shepard and Lutzka;

3. Breuner and Dodd would not have had grounds to extend the Order of Protection terminating parental rights of Daughter 2 without the criminal charges and arrest, and unconstitutional search and seizures by Metcalf and Taylor;

4. Breuner and Dodd would not have been able to achieve the total punitive severance of parent-child relationship without gaining access to Plaintiff's home by Zieglar and Taylor, without warrants, to remove property rom Plaintiff's home;

5. Breuner and Dodd would not have been able to achieve the total severance of parent-child relationship without being supported by McGrath acting in clear absence of law and jurisdiction in conspiracy to allow Breuner to remain on Plaintiff's case and issue an Order absent jurisdiction to terminate parental rights of Daughter 2;

6. Breuner and Dodd would not have been able to achieve the total severance of parent-child relationship, gain in their civil case, and discredit Plaintiff without excessive bail conditions;

7. Breuner and Dodd would not have been able to discredit Plaintiff without a gaining a wrongful conviction "assessing her parental fitness" after her parental rights had already been terminated, in

deprivation of rights by Schultz and Tierney;

8. Breuner and Dodd would not have been able to achieve the total
   severance of parent-child relationship, gain in their civil case, and to
   discredit Plaintiff without excessively delayed, biased appeals, and
   without counsel.

- Violated Right: Fourteenth Amendment Equal Protection (42 U.S.C. § 1985)

**Sub-Conspiracies**:

- On July 14, 2023, Attorney Dodd and Judge Breuner asked for a 2-year
  zero-contact under threat of arrest OP on Daughter 1 – expiring after the 18
  birthday of Daughter 2, which served as a default date for severing parental
  rights, if OP was extended indefinitely for Daughter 2.

- **Judge Bruner and Dodd issued a 2-year OP on a 17 year old on July 14,
  2023. Breuner and Dodd <u>lacked jurisdiction</u> for the Order after she
  turned 18 October 2023**.

- **Judge Breuner and Dodd issued an ex parte Order "extending" the 60-
  day OP on Daughter 2 "indefinitely," in a closed case on appeal, without
  notice or hearing, becoming a de facto termination of parental rights –
  <u>lacking jurisdiction</u>.**

- Law Enforcement Defendants: Brought false charges (ending in Plaintiff's favor) and conducted unlawful searches, directly aiding Dodd's civil case to retaliate against Plaintiff.

- Prosecutors: Brought prosecutions lacking probable cause, regarding civil family matters prior to civil adjudication, aiding the Dodd Law Firm's civil case and retaliation.

- McELyea issued a "template" search warrant with electronic signature, citing nothing specific to search for to facilitate Metcalff's access to Plaintiff's home and her arrest and detention.

- Judges McElyea, McGrath, Tierney: Obstructed appeals, and conducted a criminal termination of parental rights lacking jurisdiction.

- Defendants Adams and West ordered excessive bail and gps monitor with fees, not following Montana statute, giving gains for Dodd's civil case.

- On December 4, 2020, Dodd handed a "revised" proposed parenting plan into Bowen's chamber the morning of the hearing to Amend the parenting plan. Bowen allowed the violation of due process after the clerk pointed out Dodd misrepresented the truth to the court stating it had been lawfully filed. Bowen then issued an unauthorized "Final Order to Amend" and failed to file "Findings" obstructing judicial review.

- Officers conducted warrantless search and seizures with Father to aid in Dodd's civil case.

- Under Color of Law: Private attorneys become state actors when conspiring with judges.

- Case Law: *Dennis v. Sparks*, 449 U.S. 24 (1980) (private actors liable under § 1983 when conspiring with judges). *Hartman v. Moore*, 547 U.S. 250 (2006) (prosecutors cannot file retaliatory charges.

---

## COUNT 5 – DENIAL OF AN IMPARTIAL TRIBUNAL – DUE PROCESS

- Violated Right: Fourteenth Amendment Due Process (42 U.S.C. § 1983)

- Fact: After Plaintiff and other parents implicated in their protected speech due process violations by Breuner, McEleya and McGrath, all three Judges created and assigned themselves to Plaintiff's cases OP and criminal "parental fitness" cases and took adverse action. Breuner issued an Order terminating parental rights without notice or clear and convincing standard. McElyea and McGrath granted extraordinary opposed extensions on appeals impairing her parental rights.

- Under Color of Law: Judges must recuse when bias is evident.

- Case Law: *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (due process is violated where judicial bias exists).

---

## COUNT 7 – MALICIOUS PROSECUTION – CUSTODIAL INTERFERENCE #1

Plaintiff meets the following Plausibility criteria for a § 1983 malicious prosecution claim in the Ninth Circuit:

1. Initiation of a Criminal Prosecution: The defendant caused or continued a criminal proceeding against the plaintiff.
2. Lack of Probable Cause: The prosecution was initiated without probable cause.
3. Malice: The defendant acted with malice, intending to deprive the plaintiff of constitutional rights.
4. Favorable Termination: The criminal proceeding ended in the plaintiff's favor.
5. Constitutional Deprivation: The plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding.

- Initiation of a Criminal Prosecution: On April 14, 2023, City Prosecutor Schultze initiated a criminal prosecution for custodial interference against Plaintiff.

- Lack of Probable Cause: Schultz lacked jurisdiction over the civil matter as the holiday family dispute from seven months prior, in which the police report referenced an ex parte Order, had never been civilly litigated – the judge and father failing to schedule a hearing on the ex parte order or file civil contempt, and the family matter had resolved without current exigency.

- Malice: The Complaint filed within weeks of her protected speech alleging due process violations by Gallatin Judicial officials and in support of Dodd with an open civil case against Plaintiff, shows prosecution's intent was to unlawfully usurp her family law case to hinder her civil defense and retaliate, intending to deprive the plaintiff of constitutional parental and first amendment rights.

- Favorable Termination: The Complaint was dismissed in October 2023..

- Constitutional Deprivation: The plaintiff suffered a deprivation of liberty including her arrest, detention over-night, and resulted in the removal of children, and termination of parental rights.

- Under Color of Law: Prosecutors acting without probable cause violate federal rights.

- Case Law: *Thompson v. Clark*, 142 S. Ct. 1332 (2022) – A favorable termination of prosecution strengthens malicious prosecution claims.

COUNT 8 – MALICIOUS PROSECUTION – CUSTODIAL INTERFERENCE #2, RETALIATORY ARREST & DETENTION

Plaintiff meets the following Plausibility criteria for a § 1983 malicious prosecution claim in the Ninth Circuit:

- Initiation of a Criminal Prosecution: On June 20, 2023, City Police brought a charge of custodial interference.

- Arrest: Officers Shepard, Lutzka, Zieglar conducted a retaliatory arrest using the bench warrant and interview of minor daughter as pretext.

- Lack of Probable Cause: The facts demonstrate a clear lack of probable cause because Plaintiff's parenting plan explicitly allowed unlimited access to her minor child at any time, regardless of whose parenting time it was. Despite this, law enforcement wrongfully charged her with custodial interference for merely meeting her daughter, without any existing restraining order or legal restriction prohibiting contact. This charge was legally baseless and misapplied to a civil custody matter, showing it was brought without a reasonable factual or legal foundation.

- Malice: The malicious intent behind the custodial interference charge is evident, as it was used to "charge-stack" and hinder Plaintiff's defense in the primary charge at trial assessing parental fitness, while also benefiting

Attorney Dodd's concurrent civil case. By fabricating an additional charge, Defendants sought to paint Plaintiff as a repeat offender, and create undue prejudice to weaken her legal position in both criminal and civil proceedings.

- Favorable Termination: The criminal proceeding ended in the plaintiff's favor.

- Constitutional Deprivation: The charge led to the removal of her minor children without a lawful order, plaintiff was unable to prepare an adequate defense of her parental fitness in the trial conducted in violation of speedy trial. The charge used as pretext to permanently sever parental rights of Daughter 1.

- Under Color of Law: Prosecutors acting without probable cause violate federal rights.

- Case Law: Devenpeck v. Alford, 543 U.S. 146 (2004) – Probable cause cannot be manufactured by piling additional, unrelated charges without independent justification.

## Retaliatory Arrest & Detention

Plaintiff meets the plausibility standard for a **First Amendment retaliatory arrest and detention** under *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), as

Defendants' selective enforcement and pretextual justifications support an inference of retaliation.

1. **Protected Conduct** – Plaintiff engaged in protected First Amendment activity by advocating for judicial reform and successfully supporting HB 322, which was signed into law just four weeks before her arrest.

2. **Adverse Action** – The arrest and subsequent detention were direct adverse actions that would deter a person of ordinary firmness from continuing protected speech.

3. **Causal Connection** – The timing and selective enforcement indicate retaliatory motive:

   - Officers delayed executing the bench warrant for two months but chose to act **during a rare week when the children were with the father**, preventing their return to Plaintiff.

   - Before arresting Plaintiff, the officer questioned her regarding **statements made by the minor daughter** but initially did not believe there was cause.

   - Only after calling the office did the officer return and arrest Plaintiff, citing the bench warrant as pretext.

○ Officers then issued a **non-judicial no-contact order** barring Plaintiff from her minor children—an extraordinary measure without due process.

Given the deliberate timing of the arrest and enforcement of extraordinary restrictions without judicial authorization, Plaintiff has plausibly alleged retaliatory arrest and detention in violation of her First and Fourth Amendment rights. See *Ford v. City of Yakima*, 706 F.3d 1188 (9th Cir. 2013) (holding that pretextual arrests to suppress protected speech violate the First Amendment).

---

COUNT 9 – MALICIOUS PROSECUTION & UNAWFUL DETENTION – VIOLATION OF OP #1

Plaintiff meets the following Plausibility criteria for a § 1983 malicious prosecution claim in the Ninth Circuit:

- Violated Right: Fourth & Fourteenth Amendments (42 U.S.C. § 1983)

- Initiation of a Criminal Prosecution: County Sargeant Metcalff brought charges of Obstruction and Violation of Order of Protection.

- Lack of Probable Cause: The lack of probable cause is evident, as Plaintiff was charged with obstruction for remaining in her own home despite law

enforcement lacking a warrant, and for a canceled call to her own phone, which was still in minor Daughter 1's possession. The call itself did not constitute a violation of the OP, as Plaintiff retained ownership of the phone, no communication occurred, and Daughter 1 had the ability to return or block the number, making the charge legally baseless and pretextual.

- Malice: The prosecution was brought with malice, as the baseless charges were used to interfere with Plaintiff's parental rights, creating a pretext to justify her continued separation from her children while simultaneously providing Attorney Dodd's client with an unfair advantage in the ongoing civil custody case. Father and Attorneys used the charge to request excessive bail beyond her means in an attempt to keep her detained to hinder her parental rights.

- Favorable Termination: The prosecution was dismissed.

- Constitutional Deprivation: Plaintiff was arrested and detained for 2 nights. Plaintiff was issued excessive bail and a non-statutory gps monitor. She was subject to medical harm and a third arrest for malfunction, due to the gps issued.

- Under Color of Law: Officers, Attorneys, Justice of Peace and Father coordinated to interfere with her parental rights.

- Case Law: Officers must establish probable cause through reasonable investigation, not assumptions. (*Rodis v. City & County of San Francisco*, 499 F.3d 1094 (9th Cir. 2007)).

Plaintiff meets plausibility for **False Arrest**, **Unlawful Detention**, **Excessive Force**

Plaintiff plausibly alleges **excessive force** under the **Fourth Amendment**, as Sergeant Metcalf remained outside her home for three hours, pounding on the door and windows, repeatedly calling and texting (20+ calls, 20+ texts), contacting her workplace to humiliate her, and threatening her dogs, all despite lacking a **warrant or exigent circumstances**. Plaintiff was arrested detained for two nights, and charged with Obstruction for failing to exit her home despite no warrant. Courts have found that **prolonged coercion, intimidation, and unnecessary displays of force** can constitute excessive force, especially where no **immediate danger or flight risk exists** (*Mendoza v. Block, 27 F.3d 1357 (9th Cir. 1994)*). The **arrest, excessive bail, and GPS monitoring** further underscore the disproportionate force used, violating the **objective reasonableness standard** in *Graham v. Connor, 490 U.S. 386 (1989)*. Because the underlying charges were dismissed, Plaintiff was subjected to **unjustified force, prolonged restraint, and punitive conditions**, supporting an excessive force claim, false arrest, unlawful detention.

## COUNT 10 – UNLAWFUL SEARCH AND SEIZURE #1 & #2

- Violated Right: Fourth & Fourteenth Amendments (42 U.S.C. § 1983)

- Fact: On June 20, 2023, Officer Zieglar supervised Father's removal of Plaintiff's property and pets from inside her home without her knowledge, consent, or a warrant.

- Fact: On or about August 18, 2023, Officer Taylor and Father entered Plaintiff's home without a warrant, under Plaintiff's threat of arrest, searching her belongings and seizing her personal items.

- Under Color of Law: Officers cannot conduct warrantless searches without exigent circumstances. Private actors act under color when coordinating with an official to deprive rights.

- Case Law: *Arizona v. Gant*, 556 U.S. 332 (2009) (unlawful searches violate the Fourth Amendment).

## COUNT 11 – MALICIOUS PROSECUTION ARISING FROM UNLAWFUL SEARCH & SEIZURE

- Violated Right: Fourth & Fourteenth Amendments (42 U.S.C. § 1983)

- Initiation of a Criminal Prosecution: On or about September 20, 2023, city Prosecutor Schultze brought a distinct prosecution for "Violation of OP" based on an allegation from the warrantless search by Father and Officer Taylor.

- Lack of Probable Cause: Father and Attorneys alleged Plaintiff had removed minor children's skis after OP was put in place. Father and attorneys had no evidence of the claim.

- Malice: Prosecutor, Attorneys and Father brought the prosecution to aid their civil case against Plaintiff and hinder her parental rights.

- Favorable Termination: The judge dismissed the prosecution for a brady violation – failure to disclose exculpatory evidence of the required body cam during the unlawful search and seizure.

- Constitutional Deprivation: The fifth malicious prosecution compounded the severity of Plaintiff's legal plight by escalating the charges against her, creating a pretext to justify the unlawful severance of her parental rights. This violated her Fourteenth Amendment right to due process, as the fabricated charges weaponized the criminal justice system to deprive her of fundamental parental interests without fair proceedings or legitimate legal grounds, and was used as pretext to terminate parental rights of Daughter 2.

- Under Color of Law: Prosecutors acted under color of law to bring prosecution. Officer and Father acted under color of law to fabricate a charge.

- Case Law: Officers can be held liable for malicious prosecution if they fabricate charges against an individual. In *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015).

---

## COUNT 12 – EXCESSIVE BAIL & PRETRIAL CONDITIONS

- Violated Right: Fourth & Eighth Amendments (42 U.S.C. § 1983)

- Fact: On or about August 18, 2023, per the Father and Attorney's request, Judge Adams imposed a $20,000 bail beyond Plaintiff's means, and GPS monitoring with monthly fees beyond her means, for a non-violent misdemeanor charge – not authorized by Montana law. Adams ordered the conditions per the request of the private actors, Attorney Post and Father.

- GPS monitors per Montana law are allowable for felony charges. Plaintiff was not charged with a Felony.

- Male detainees at the same arraignment, facing repeat, violent offenses, were not ordered a gps monitor.

- No assessment of Plaintiff's financial circumstances, flight risk, or alleged offenses was conducted.

- Plaintiff could not afford release on August 18, 2023, with Daughter 2's 60-day OP expiring on September 11, 2023, on which date Plaintiff would have regained primary custody.

- Excessive conditions by Adams aided Dodd Law firms defense of concurrent civil case against Plaintiff.

- Under Color of Law: Justice of Peace and Private actors coordinated, imposing excessive bail without justification violates constitutional rights.

- Case Law: *Stack v. Boyle*, 342 U.S. 1 (1951). Bail must not be excessive under the Eighth Amendment.

---

## COUNT 13 – FAILURE TO ADDRESS MEDICAL NEEDS

- Violated Right: Fourth & Fourteenth Amendments (42 U.S.C. § 1983)

- Fact: On three occasions, Gallatin County Pretrial Officer Sharpe refused to provide Plaintiff medical relief after Plaintiff reported harm, including bruising on bone, open wounds, numbing from pretrial restraint of gps monitor.

- On or about September 20, 2023, Justice West, failed to provide medical relief when Plaintiff reported injury from prolonged pretrial restraint of gps monitor, upon request by Attorney Post and Father.

- West denied Plaintiff's request for removal due to medical harm and not being a flight risk, or meeting the statutory conditions, forcing plaintiff to continue to be medically harmed for 4 months, and accumulate fees.

- Under Color of Law: Denial of medical care to citizens under pretrial restraints violates constitutional protections.

- Case Law: *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference to medical needs violates the Constitution.

---

COUNT 14 – UNREASONABLE ARREST & DETENTION

- Violated Right: Fourth & Fourteenth Amendments (42 U.S.C. § 1983)

- Fact: On or about November 1, 2023, Plaintiff was arrested and detained for 24 hours after reporting a malfunction with her gps monitor, after receiving no after-hours service, and after informing PreTrial Officer Sharpe of her plan to obtain replacement charging cord immediately after work the following day, at her usual weekly check-in time, which she had been in compliance with for 8 weeks.

- Plaintiff notified law enforcement and public defender of the malfunction and that she was unable to receive a working cord.

- Instead Plaintiff was arrested and detained overnight.

- At arraignment, Prosecution used the malfunction to attempt to revoke her bond, arguing Plaintiff arguing Plaintiff was not at work ignoring her compliance – yet officers arrested her at work, showing prosecutor or pretrial officer fabricated the claim.

- Under Color of Law: PreTrial Officers and Bozeman Police act under color of law.

- Case Law: Case law indicates that probation violations, similar to pretrial condition violations, must be both **willful and substantial** to justify revocation or arrest. *Thorpe v. State*, 642 So. 2d 629 (Fla. 1st DCA 1994), and *Jacobsen v. State*, 536 So. 2d 373 (Fla. 2d DCA 1988).

- Plaintiff took proactive action to alleviate the malfunction, but was denied.

## COUNT 15 – RETALIATORY PROSECUTION – FALSE REPORT CHARGE

- Violated Right: Fourth & Fourteenth Amendments (42 U.S.C. § 1983)

- Fact: On June 20, 2023, Deputy Kiewatt filed a false report charge against Plaintiff based solely on the father's unverified statements on a family

parenting plan dispute not yet adjudicated in civil court. Kiewatt filed the charge after Plaintiff refused to exit her home upon his demands, while he failed to disclose the existence of a bench warrant.

- Prosecutor Westesen pursued the charge, despite exculpatory evidence that Plaintiff could not reach her minor children on her phones, and was not aware of the Father's "vacation-week" declaration.

- Under Color of Law: Prosecutors and Officers bring charges under color of law.

- Case Law: Prosecutors are ethically and constitutionally prohibited from pursuing charges without probable cause. *Hartman v. Moore*, 547 U.S. 250 (2006).

---

## COUNT 16 – DUE PROCESS VIOLATIONS BY STANDING MASTER & OFFICIALS

- Violated Right: Fourteenth Amendment Due Process (42 U.S.C. § 1983)

- Facts: On November 18, 2019, Bowen issued a Contempt Citation after proceeding with failed in Notice.

- On December 4, 2020, Bowen accepted a document turned into her office by Dodd Law Firm and later that day conducted a hearing to replace Plaintiff's final parenting plan with the unfiled document.

- On January 9, 2021, Bowen issued a Final Order Amending Parenting Plan, when Plaintiff was not noticed of the proposed plan, and when Bowen was not authorized by law to issue a Final order.

- On January 9, 2021, Bowen failed to filed written findings for a judicial review process and instead denied Objections, not allowing Objections to reach Judges, which deliberately obstructed judicial review – a due process violation.

- On November 4, 2021, Bowen abruptly recused mid-pleadings, after Plaintiff requested a hearing to address errors, failing to provide equal protection in the case transfer. The next Judge offered a hearing only to Attorney for Father.

- Under Color of Law: Standing masters must follow procedural due process.

- Case Law: *Mathews v. Eldridge*, 424 U.S. 319 (1976) (due process requires notice and an opportunity to be heard). Butz v. Economou, 438 U.S. 478 (1978) – The Supreme Court ruled that ALJs have qualified immunity in administrative functions**.** Rankin v. Howard, 633 F.2d 844 (9th Cir. 1980) – A judge lost absolute immunity for acting in clear absence of jurisdiction

and conspiring with private attorneys**.** ALJ's or Judges are not immune for administrative actions.

- Bowen took deliberate administrative actions to obstruct due process – filing Final Orders after obstructing judicial review.

- Plaintiff's claims are timely under the **continuing violations doctrine**, **equitable tolling**, and **fraudulent concealment.** The Ninth Circuit has held that a series of related constitutional violations extending over time may toll the statute of limitations **(**Flynt v. Shimazu, 940 F.3d 457, 462 (9th Cir. 2019)**;** Bird v. Dep't of Human Servs., 935 F.3d 738, 746 (9th Cir. 2019)**)).** Here, Plaintiff suffered a **continuous pattern of due process violations,** beginning with Defendant Bowen's unauthorized Contempt order on November 18, 2019, and final Order to Amend on January 9, 2021**,** followed by her recusal mid-pleadings on November 4, 2021. This was followed by judges denying hearings to review her orders**,** ex parte orders enforcing her Orders - benefiting the father, and culminating in retaliatory criminal charges regarding allegations of violating her Order, after Plaintiff's protected speech**. Equitable tolling applies** because Defendants obstructed Plaintiff's ability to challenge these actions by denying judicial review, bringing criminal allegations, and then delaying criminal proceedings by denying speedy trial, denying counsel, and using excessive appeal delays to

run out the statute of limitations**,** a tactic the Ninth Circuit has found

supports tolling **(**Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)**).**

Further, **fraudulent concealment** applies where state officials deliberately

prevented judicial resolution of Plaintiff's claims**,** ensuring that critical

appeals were obstructed and claims were not adjudicated (Hazel-Atlas Glass

Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944)**).** Because

Defendants' conduct was designed to prevent judicial review, and timely

criminal and appellate litigation**,** the statute of limitations must be tolled**,** and

Plaintiff's claims against Bowen remain actionable.

---

COUNT 17 – DUE PROCESS VIOLATION, FRAUD, ABUSE OF PROCESS

- Violated Right: Fourteenth Amendment Due Process (42 U.S.C. § 1983)

- Fact: On September 1, 2022 and November 18, 20222, Judge Breuner signed

  ex parte Order's barring Plaintiff from holiday parenting time, without

  notice or hearings, based on misrepresentations by Attorney Dodd.

- The ex parte Order September 1 was taken by Father and Dodd to law

  enforcement to attempt to gain Plaintiff's arrest, despite their knowledge of

  the due process violation and that they were ordered to share holidays.

- Under Color of Law: Judicial officers must act within due process constraints.

- Case Law: *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (procedural due process violated when courts act with bias or improper influence).

---

## COUNT 18 – DUE PROCESS AND EQUAL PROTECTION VIOLATIONS

Additional support for this claim is found earlier in this memorandum – in a stand-alone section, and is incorporated herein.

- Violated Right: Fourteenth Amendment Equal Protection (42 U.S.C. § 1983)

- Facts: Bowen, Ohman, Breuner granted favorable Orders exclusively to Father.

- Bowen, Ohman, Breuner granted hearings only for Father.

- Bowen, Ohman, Breuner failed to manage dockets in the equitable transfer of cases between judges.

- County and City Officers brought charges for custodial interference against Mother, but not father despite police having to remove father from attempting to take the children.

- Officers conducted unlawful arrests, and conducted unlawful search and seizures benefiting Father.

- County and City Prosecutors brought retaliatory prosecutions benefiting the Dodd law Firms concurrent civil family case. Prosecuting her for "confiscating the phone she owned," yet not prosecuting father for confiscating the phone mother owned.

- City Judge conducted a criminal trial assessing parental fitness after parental rights had already been terminated, assisting in Dodd's case. Gave the Father unlimited time to speak at a hearing, while Plaintiff was procedurally barred from testifying in her defense.

- Under Color of Law: Judicial officials and private actors act under color of law when coordinating to deprive rights. Courts cannot apply rules discriminatorily.

- Case Law: *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (equal protection requires similar treatment for similarly situated individuals).

---

COUNTS 19, 20 – MONELL CLAIMS (Gallatin County & City of Bozeman)

Plaintiff has demonstrated widespread, systemic deprivation of rights.

- Violated Right: Fourth, Sixth, Eighth, Fourteenth Amendments (42 U.S.C. § 1983)

- Fact: Facts stated in the Complaint and this Memorandum show multiple violations, by both the County and City, of the 4th (unlawful search and seizure), 6th (speedy, fair trials), 8th (excessive bail, punitive orders), and 14th (due process, equal protection, parental rights) amendments, meeting the plausibility of "systemic" violations for both the County and City.

- Under Color of Law: Counties and Cities can be liable when unconstitutional practices are widespread.

- Case Law: *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

---

## COUNT 21 – FAILURE TO TRAIN, SUPERVISE AND INTERVENE – SUPERVISORY PROSECUTORS & LAW ENFORCEMENT & PUBLIC DEFENDER OFFICE

Plaintiff meets the plausibility for these 1983 claims by meeting the criteria of deliberate indifference and causal connection.

- Violated Rights: 1st, 4th, 6th, 8th – Retaliation, Unlawful Search and Seizure, Malicious Prosecutions, Speedy Trial Violations, Due Process – criminal and civil, Denial of Counsel.

- Violated Right: 14th Amendment – Denial of right to familial integrity and due process prior to the serving of parental rights, and right to due process instead of the usurping civil family law matters with criminal prosecutions lacking probable cause or jurisdiction.

- Fact: Parental rights were terminated on July 14, 2023 and September 11, 2023, by a criminal mechanism misapplying criminal DV laws meant for adults to a civil family case with a minor, and was prosecuted for family matters not yet adjudicated in a civil family hearing – custodial interference, false report.

- Plaintiff experienced speedy trial violations, lack of counsel, misapplied criminal law, denial of civil proceedings regarding constitutionally protected parental rights.

- Plaintiff's parental rights were terminated with a zero-contact OP placed only on minor children, into adulthood.

- Plaintiff was not assigned counsel in the proceeding or appeal of the termination of her parental rights.

- Plaintiff's public defenders were unfamiliar with parental rights.

- Supervisors failed to train and supervise subordinate prosecutors, defenders, and officers, of constitutionally protected parental rights, and the right to

familial integrity, when considering criminally charging parents, or defending parental rights cases.

- Color of Law: Chief Prosecutor, District Attorney, Montana Office of State Public Defender, Police and Sheriff Supervisors, knew or should have known that the lack of training or supervision in parental rights was likely to result in constitutional violations.

- Case Law: *City of Canton v. Harris*, 489 U.S. 378 (1989). Inadequate training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom officials come into contact – mothers with final custody Orders who have protected parental rights.

## **Defendant Supervisors**:

## **DA Cromwell – Supervisory Liability for Retaliatory Prosecution**:

Legal Arguments:

- Supervisory Liability under § 1983 for Knowledge and Acquiescence
  - Cromwell was directly informed in March 2023 of parental rights violations and Plaintiff's protected speech against Breuner.

- o Shortly after, her subordinate Westesen initiated a retaliatory prosecution against Plaintiff, prosecuting a family matter prior to any civil adjudication.

- o Westesen denied a speedy trial, ignored exculpatory evidence, and gave improper jury instructions, implicating both procedural due process and First Amendment retaliation.

Relevant Case Law:

- Hartman v. Moore, 547 U.S. 250 (2006) – Establishes that retaliatory prosecution requires showing that the decision to prosecute was substantially motivated by the plaintiff's protected speech.

- Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) – Supervisors are liable if they know of and acquiesce to unconstitutional conduct by subordinates.

- Beck v. City of Upland, 527 F.3d 853 (9th Cir. 2008) – Prosecutors who pursue charges without probable cause as retaliation for protected speech violate the First Amendment.

- Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) – If Cromwell failed to train or supervise prosecutors to prevent misuse of criminal prosecution for civil matters, she may also be liable under Monell.

Legal Claims against Cromwell:

- Supervisory liability under § 1983 for retaliatory prosecution

- Failure to intervene and correct unconstitutional conduct

---

## Chief Prosecutor Mclean – Supervisory Liability for Malicious Prosecutions & Due Process

Legal Arguments:

- Deliberate Indifference to Unconstitutional Conduct
  - McLean's subordinate, Prosecutor Schultz, engaged in malicious and retaliatory prosecutions, including:
    - Bringing charges without probable cause
    - Violating Plaintiff's parental rights through criminal proceedings
    - Denying a speedy trial, suborning perjury, and committing a Brady violation
    - Plaintiff requested body cam evidence in approximately September 2023, but was denied, and Schultz continued to prosecute by denying exculpatory evidence.

o McLean had direct authority over Schultz and failed to correct or
discipline these known constitutional violations.

Relevant Case Law:

- Trevino v. Gates, 99 F.3d 911 (9th Cir. 1996) – Supervisors may be liable
  when they create, enforce, or knowingly allow unconstitutional practices.

- Tennison v. City & County of San Francisco, 570 F.3d 1078 (9th Cir. 2009)
  – Prosecutors who fail to correct known Brady violations are liable under §
  1983.

- Gantt v. City of Los Angeles, 717 F.3d 702 (9th Cir. 2013) – Failure to
  intervene in prosecutorial misconduct can support supervisory liability.

- Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) – If the prosecutor's
  office had a practice of failing to dismiss unconstitutional cases, the office
  itself may be liable.

Legal Claims Against McLean:

- Supervisory liability for failure to train, discipline, or correct malicious
  prosecutions and due process violations.

- Monell liability if a custom or policy encouraged prosecutorial misconduct.

172

**Officer Shepard/Bozeman Police Department – Supervisory Liability for First and Fourteenth Amendment Violations**:

Plaintiff reserves the right to amend her complaint if other Supervisors in addition to Shepard, failed to train or supervise resulting in constitutional violations.

Legal Arguments against Shepard:

- Direct Participation & Encouraging Subordinate to Violate Constitutional Rights
  - Shepard supervised and encouraged Officer Lutzka to bring a custodial interference charge against Plaintiff without probable cause.
  - Trained a new officer in the violation of constitutionally protected parental rights, by issuing a non-judicial no-contact order barring Plaintiff from minor child without required evidence.
  - Trained a new officer in the violation of constitutionally protected parental rights, by bringing an "assault-creating fear in minor child" charge against a parent Plaintiff without evidence of harm, and bypassing civil family proceedings.
  - Shepard also ordered Officer Zieglar to conduct a retaliatory arrest of Plaintiff, reinforcing a pattern of unconstitutional conduct.

○ Shepard was aware of Zieglar facilitating Father conducting an unlawful search and seizure.

Relevant Case Law:

- Hyde v. City of Willcox, 23 F.4th 863 (9th Cir. 2022) – Supervisors are liable when they train subordinates to engage in unconstitutional conduct.
- Rosenbaum v. Washoe County, 663 F.3d 1071 (9th Cir. 2011) – Officers who order arrests without probable cause can be held personally liable.
- Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) – If Shepard's pattern of conduct suggests a municipal practice of misusing family law as criminal law, the police department may also be liable.

Legal Claim Against Shepard:

- Supervisory liability for training officers in unconstitutional actions, leading to parental rights deprivations.
- Direct liability for ordering retaliatory arrests without probable cause.

**Office of State Public Defender**:

Legal Arguments:

- Systemic Failure to Train and Supervise Defenders

- o OPD failed to train public defenders on:

    - Parental rights in criminal cases

    - Filing motions to dismiss for improper criminal charges affecting parental rights

    - Speedy trial rights

    - Processing appeals in a timely manner

- o No public defender was assigned for Plaintiff's termination of parental rights hearing or appeal, despite state law requiring representation.

Relevant Case Law:

- Miranda v. Clark County, 319 F.3d 465 (9th Cir. 2003) (en banc) – Public defender offices can be liable under Monell if they fail to provide adequate training, resources, or supervision.

- Van de Kamp v. Goldstein, 555 U.S. 335 (2009) – Supervisors at a public defender's office can be liable for administrative failures that systematically deprive clients of their rights.

- Tower v. Glover, 467 U.S. 914 (1984) – Public defenders can be sued under § 1983 if they conspire with prosecutors or judges to deprive constitutional rights.

- Brady v. Maryland, 373 U.S. 83 (1963) – Public defenders have an obligation to protect due process rights, including challenging Brady violations and suppression of exculpatory evidence.

Legal Claims Against Public Defender's Office:

- Monell liability for failing to train and supervise defenders, leading to systemic due process violations and wrongful deprivation of parental rights.
- Failure to provide legally required counsel in a parental termination appeal as a due process violation.

**Sheriff Department**

Plaintiff alleges that supervisory officials within the Gallatin County Sheriff's Office, through deliberate indifference, failed to supervise and train their subordinates, resulting in constitutional violations, including charges and arrests without probable cause, retaliation for protected activity, and excessive force. If discovery reveals specific supervisory officials' direct involvement or knowledge of these violations, Plaintiff reserves the right to amend her complaint to name them individually.

COUNT 22 –– FAILURE TO TRAIN, SUPERVISE AND INTERVENE – JUDICIAL OFFICIALS & COURT ADMINISTRATORS

Plaintiff meets the plausibility for these 1983 claims by meeting the criteria of deliberate indifference and causal connection.

- Violated Right: 14th Amendment – Right to due process when final orders are issued in family civil proceedings, right to notice and hearings regarding any official action in judicial or prosecutorial proceedings, right to familial integrity and due process prior to the serving of parental rights, and right to due process instead of the usurping of civil family law matters with criminal prosecutions lacking probable cause or jurisdiction over family matters.

- Fact: Parental rights were terminated on July 14, 2023 and September 11, 2023, by a criminal mechanism misapplying criminal DV laws meant for a adults to a civil family case with a minor, and was prosecuted for family matters not yet adjudicated in a civil family hearing – custodial interference, false report.

- Plaintiff experienced speedy trial violations, lack of counsel, misapplied law, denial of civil proceedings regarding constitutionally protected parental rights.

- Plaintiff was not assigned counsel in the proceeding or appeal of the termination of her parental rights.

177

- Plaintiff was not noticed of a criminal Complaint filed by City Prosecutor.

- Supervisors failed to train Prosecutors in constitutionally protected parental rights.

- Judicial officials and Administrators failed to train, supervise or intervene in conduct by Bowen and Breuner and Tierney.

- Administrators Office failed to train, supervise, and intervene in assigning counsel for termination proceedings, speedy trial rights, providing proper notice.

- Color of Law: Judicial Officials, Court Administrators knew or should have known that the lack of training or supervision in parental rights and due process was likely to result in constitutional violations by Bowen and Breuner.

- Case Law: *City of Canton v. Harris*, 489 U.S. 378 (1989). Inadequate training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom officials come into contact – mothers with final custody Orders who have protected parental rights.

**Defendants Breuner, McElyea, Ohman – Judicial Liability for Standing Master Bowen**

The Defendant judges can be held liable for the constitutional violations committed by Standing Master Bowen because they knowingly assigned her cases and were responsible for overseeing her compliance with judicial authority. Bowen was statutorily required to conduct hearings, file written findings of fact and conclusions of law, and administer her docket in accordance with Montana law. Instead, she unlawfully exercised judicial authority by issuing warrants, citations, final orders, and denying objections for judicial review—actions outside the permissible scope of a standing master's role.

Despite clear notice of Bowen's misconduct, the Defendant judges failed to intervene, correct the violations, or provide judicial oversight. Plaintiff repeatedly requested judicial review of Bowen's actions, yet the judges deliberately denied hearings, obstructed appeals, or retaliated by declaring Plaintiff "vexatious" to restrict her access to the courts. Additionally, judges, aware of Plaintiff's protected speech advocating for HB 322—a parent-led due process remedy—engaged in retaliatory conduct afterwards.

Under **Ashcroft v. Iqbal, 556 U.S. 662 (2009)**, judicial officers with supervisory authority can be held liable under § 1983 when they "knew of and disregarded an excessive risk to constitutional rights" by their subordinates. Likewise, under **Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991)**,

supervisors who fail to prevent constitutional violations, despite awareness of ongoing misconduct, can be held accountable. Here, the Defendant judges failed in their duty to oversee Bowen, and when Plaintiff exposed these violations, they retaliated instead of providing meaningful review, making them liable for Bowen's constitutional violations and their own retaliatory action

## Court Administrator's Office - Liability

The Montana Court Administrator's Office is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978) for failing to train, supervise, and intervene to ensure judicial officers, clerks, and prosecutors upheld constitutional protections in Plaintiff's proceedings. The Office had a duty to ensure that:

1. **Adequate Notice and Due Process:** Clerks and officials properly notified Plaintiff of hearings, deadlines, and proceedings, rather than obstructing access to court.

2. **Timely Criminal and Civil Proceedings:** Trials and hearings were scheduled in compliance with **speedy trial requirements**, preventing undue delay and deprivation of rights.

3. **Right to Counsel in Termination Proceedings:** Plaintiff was provided state-appointed counsel, as required for termination of parental rights proceedings and appeals.

4. **Judicial and Prosecutorial Compliance with Due Process:** Standing Master Bowen, judges, and prosecutors adhered to due process in parental rights and criminal proceedings, rather than issuing **unauthorized orders, ex parte rulings, or retaliatory prosecutions, and terminations via Orders of Protection without due process.**

5. **Oversight of Standing Masters:** The Office failed to prevent Bowen from issuing final orders, warrants, and citations outside her legal authority, which judges and clerks enforced despite clear violations.

The Court Administrator's failure to ensure training, supervision, and procedural safeguards resulted in systemic due process violations, obstruction of Plaintiff's parental rights, and prolonged retaliatory litigation, making the Office liable under Monell and City of Canton v. Harris, 489 U.S. 378 (1989) for deliberate indifference to constitutional violations.

COUNT 23 – FAILURE TO INTERVENE - Violation of 42 U.S.C. § 1986

Plaintiff meets the plausibility for these 42 U.S.C. § 1986 claims by meeting the criteria of possessing the power to prevent or aid in preventing the violation, and neglect or refuse to do so.

- Violated Right: 14th Amendment – right to familial integrity and due process prior to the serving of parental rights, and prior to usurping civil family law matters with criminal prosecutions lacking probable cause or jurisdiction.

- Plaintiff informed Chief Prosecutor (via a Disqualification of Prosecutor Schultz), DA (a meeting and an email), Public Defenders (letters to 2 defenders and letter to Director of Bozeman Office), of the unlawful termination of parental rights by Breuner and Schultz, and violation of parental rights, and all refused to intervene.

- Plaintiff informed Judicial Officials (Ohman, Breuner, McGrath, DA) of due process violations of Bowen (via properly filed Objections and Filed Request for Review, personal meeting), and all refused to intervene.

- McGrath was aware of unlawful termination by Breuner and failed to intervene, and instead condoned the violation and enabled further violations.

- Each named Defendant failed to exercise reasonable diligence to prevent the violations.

COUNT 24 – IIED & NIED

Plausibility for IIED and NIED Against All Defendants

Plaintiff's claims for Intentional Infliction of Emotional Distress (IIED) and Negligent Infliction of Emotional Distress (NIED) meet Montana's plausibility

standard because Defendants' conduct was deliberate, extreme, and caused severe, foreseeable emotional harm. Defendants permanently severed Plaintiff's parental rights through retaliatory legal abuse and fabricated prosecutions, directly resulting in her PTSD, which she did not have prior to their actions. Plaintiff was subjected to systemic prolonged violation of rights by Defendants directly resulting in loss of children, physical injury, reputation damage, humiliation, and mental anguish. Under Montana Law, these claims are actionable under *Sacco v. High Country Independent Press, Inc.*, 271 Mont. 209, 896 P.2d 411 (1995).

---

1. Intentional or Reckless Conduct (IIED) / Negligent Conduct (NIED)

Defendants deliberately or recklessly misused legal mechanisms to permanently sever Plaintiff's parental rights, and permanently sever contact and reputation with her community, foreseeable act that would cause severe emotional distress.

- Judge Breuner, Dodd, and judicial actors knowingly issued baseless orders, Orders not authorized by Montana law, and OP extensions designed to unlawfully sever parental rights, exceeding judicial authority.

- Prosecutors and law enforcement pursued fabricated, retaliatory criminal charges to justify prolonged separation and ensure Plaintiff could not regain custody.

- Officials failed to provide due process protections or intervene despite knowing the consequences of these actions.

Legal Standard:

- *Sacco v. High Country Independent Press*, 896 P.2d 411 (Mont. 1995) – IIED requires deliberate or reckless conduct causing severe distress.

- *Gregory v. State*, No. CV-20-51-GF-BMM – NIED is valid when foreseeable harm results from government negligence.

---

2. Extreme and Outrageous Behavior (IIED) / Foreseeability of Harm (NIED)

Defendants' conduct was beyond all possible bounds of decency and foreseeably caused severe emotional trauma.

- Permanently severing Plaintiff's parental rights without legal basis is one of the most extreme forms of emotional harm imaginable.

- Retaliatory criminal prosecutions and fabricated charges increased Plaintiff's suffering, preventing her from defending her parental rights.

- Officials either directly participated or failed to prevent the foreseeable consequence of total parental severance.

Legal Standard:

- *Jensen v. State*, 2013 MT 118 – Outrageous conduct exceeds all bounds of decency.

- *Fisch v. Mont. Rail Link, Inc.*, 2004 MT 312 – NIED applies when severe distress was foreseeable.

---

3. Causation

Plaintiff was diagnosed with PTSD as a direct result of Defendants' actions, which permanently severed her parental rights, subjected her to malicious prosecution, and caused prolonged legal abuse.

- She did not have PTSD before Defendants' actions.

- The complete destruction of her parent-child relationship was the direct and foreseeable result of Defendants' legal misconduct.

Legal Standard:

- *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 208 – Causation must directly link the distress to the defendant's conduct.

---

## 4. Severe and Enduring Emotional Distress

Plaintiff endures profound, ongoing PTSD due to Defendants' abuse of legal processes.

- Permanent parental severance has lifelong, devastating emotional consequences.
- Defendants knowingly created an inescapable legal ordeal, weaponizing the justice system to cause maximum suffering.

Legal Standard:

- *Fisch v. Mont. Rail Link, Inc.*, 2004 MT 312 – Severe distress must be significant, not trivial.

## 5.State Created Danger

State actors—including Judge Breuner, prosecutors, law enforcement, and pretrial officers—and actors acting under color of law including Attorneys and Father, actively placed Plaintiff in harm's way by:

- Severing her parental rights through fabricated legal proceedings, causing irreparable emotional and psychological harm, and a permanent disability.

- Orchestrating malicious prosecutions to prevent her from defending herself in family court.

- Issuing baseless restraining orders and criminal charges that isolated her, inflicted trauma, and led to the permanent loss of her children.

- Ignoring clear constitutional protections and using the legal system as a tool of oppression rather than justice.

Key Legal Standard:

- *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) – The state is liable when it affirmatively creates or increases danger to an individual.

- *Sacco v. High Country Independent Press*, 271 Mont. 209 (1995) – IIED applies when intentional conduct inflicts extreme emotional distress.

Conclusion:

- Defendants' actions satisfy the IIED and NIED standards under Montana law.

- The permanent severance of parental rights, retaliatory prosecutions, and fabricated charges were extreme, foreseeable, and directly caused Plaintiff's PTSD.

- This claim should proceed, as Defendants' conduct was either intentionally outrageous (IIED) or foreseeably negligent (NIED), creating an undeniable basis for relief.

- State Created Danger Doctrine applies as actions by state officials caused a permanent disability in Plaintiff.

COUNT 26 – RICO CLAIM (Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d)) (and COUNT 25 – FRAUD & FRAUD UPON THE COURT)

Plaintiff details additional legal argument for plausibility of Fraud and RICO claims in aseparate section, and it is incorporated fully herein.

- Violated Right: Federal RICO Violations, and meets Fraud Upon Court Sufficiency.

- Fact: Plaintiff's Complaint and facts in her Resonse in Opposition show repeated instances of Dodd, Post, Breuner, Father, and perhaps others,

deliberately manipulating legal proceedings and making misrepresentations officials relied upon, for gain in their civil case, and to commit financial harm to Plaintiff.

- Under Color of Law: RICO applies to schemes involving public officials and private actors working in coordination to deprive rights for financial gain.

- Case Law: *Reves v. Ernst & Young*, 507 U.S. 170 (1993) (RICO liability extends to those participating in racketeering enterprises).


## COUNT 27 – VIOLATION OF THE AMERICANS WITH DISABILITY ACT (ADA), TITLE II

Plaintiff's claim under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, meets the plausibility standard because Defendants denied her reasonable accommodation requests, excluding her from full participation in judicial proceedings, despite her known disability.

1. Plaintiff is a Qualified Individual with a Disability

- Plaintiff suffers from PTSD, a recognized disability under the ADA, which substantially limits one or more major life activities, including the ability to navigate legal proceedings without accommodations.

2. Defendants are Public Entities Subject to Title II

- Judicial officers, law enforcement, pretrial services, and prosecutors are all agents of public entities required to comply with ADA mandates.

- Courts and law enforcement must ensure equal access to justice and reasonable modifications for individuals with disabilities.

3. Plaintiff Requested Reasonable Accommodations

- Plaintiff made formal requests for accommodations due to PTSD, which were denied or ignored.

- Requested accommodations included modifications to court procedures, attorney access, or allowances related to legal deadlines due to her disability-related impairments.

4. Defendants Denied Accommodations and Excluded Plaintiff from Meaningful Participation

- Judicial officers and court officials failed to engage in an interactive process or provide reasonable modifications.

- Failure to provide accommodations including failure to afford additional time for closing statement, failure to afford standby counsel to interpret complex rules and procedures, failure to provide support, resulted in

Plaintiff's inability to adequately defend herself in court proceedings, impacting fundamental rights such as parental rights and criminal defense.

5.Government-created Impairment qualifies as ADA Disability

- Government officials' imposed GPS monitoring that directly caused pain from bruising, open wounds, numbness in extremities, and sleep deprivation.

- Officials denied speedy trial, causing prolonged impairment.

- Under Title II of the ADA, a disability is defined as:

  - A physical or mental impairment that substantially limits one or more major life activities.

  - A record of such an impairment.

  - Being regarded as having such an impairment. (42 U.S.C. § 12102(1)).

- Physical Impairment: Government-mandated GPS monitoring directly caused physical harm (wounds, pain, numbness, lack of sleep), which can constitute a physical impairment affecting major life activities such as walking, standing, sleeping, and normal physical function.

- Major Life Activities Affected: The resulting sleep deprivation, pain, and numbness substantially limited sleep, mobility, work, and daily functioning, which are protected under the ADA.

- Need for Accommodations: Plaintiff requested medical assistance, adjustments, or removal of GPS due to impairment, extra time in proceedings, standby counsel, but officials denied accommodations or medical attention, and counsel, which forms the basis for an ADA claim under Title II for failure to accommodate.

6. The Denial of Accommodations Directly Caused Harm

- Plaintiff's exclusion from legal proceedings resulted in the loss of parental rights, unjust criminal prosecution, wrongful convictions, and ongoing psychological distress.
- This denial violated Title II's requirement that public entities make reasonable modifications to prevent discrimination.

Legal Standard:

- *Tennessee v. Lane*, 541 U.S. 509 (2004) – Courts must provide reasonable accommodations to disabled litigants to ensure equal access to justice.
- *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) – Public entities violate Title II when they fail to provide reasonable accommodations and intentionally discriminate by refusing modifications.

- *Alexander v. Choate*, 469 U.S. 287 (1985) – A violation occurs when public entities create barriers that effectively exclude individuals with disabilities from benefits and services.

- Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998) – The Supreme Court held that Title II of the ADA applies to state prisons, meaning state-imposed conditions such as electronic monitoring could trigger ADA protections.

- Kiman v. New Hampshire Dep't of Corr., 451 F.3d 274 (1st Cir. 2006) – Recognized that a state's failure to accommodate a physical impairment caused by its own actions can be an ADA violation.

- McGary v. City of Portland, 386 F.3d 1259 (9th Cir. 2004) – Found that state-created impairments may require accommodations under the ADA.

Conclusion:

- Plaintiff meets the plausibility standard for a Title II ADA violation because state created impairment through non-statutory, prolonged gps monitoring which caused untreated medical harm and an additional arrest from malfunction.

- Plaintiff meets the plausibility standard for a Title II ADA violation because Defendants denied her reasonable accommodation requests, excluded her from full participation in judicial proceedings, and caused direct harm.

- This claim must proceed to discovery to determine the extent of Defendants' failure to comply with ADA obligations

## COUNT 28 – VIOLATION OF THE EQUAL PROTECTION CLAUSE Under the Fourteenth Amendment (42 U.S.C. § 1983) (And related COUNT 29 – VIOLATION OF MONTANA STATE GENDER DISCRIMINTATION LAW)

Plaintiff details additional facts and plausibility in a separate section, and it is fully incorporated herein.

Plaintiff meets the plausibility standard for an Equal Protection claim under the Fourteenth Amendment and 42 U.S.C. § 1983 because Defendants intentionally discriminated against her as a mother, applying legal mechanisms in a manner that treated her differently from similarly situated individuals, including fathers and non-pro se litigants.

1. Plaintiff was Treated Differently from Similarly Situated Individuals

- Father was not subjected to the same legal actions, despite engaging in similar or worse conduct.
- Defendants applied harsher legal standards to Plaintiff, including retaliatory prosecutions and excessive judicial actions, while excusing comparable actions by the father.

2. Defendants Acted with Discriminatory Intent or Purpose

- Judicial and law enforcement officials selectively enforced laws and procedures against Plaintiff in a manner that disproportionately harmed her parental rights.

- Retaliatory legal mechanisms, including baseless OP extensions and fabricated charges, were weaponized against Plaintiff in a way not applied to other litigants.

3. No Legitimate Government Interest Justifies the Disparate Treatment

- The adverse actions against Plaintiff were pretextual and lacked a lawful basis, demonstrating that the true motive was gender-based bias and retaliation for her speech.

- The adverse actions were contrary to settled law requiring continued parental contact as being in the best interest of minor children, and the constitutional right to familial integrity.

Legal Standard:

- *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) – Equal Protection applies when a plaintiff is singled out for different treatment without a rational basis.

- *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591 (2008) – Intentional, arbitrary discrimination violates Equal Protection even absent a protected class.

- *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) – Disparate impact can establish discrimination when policy is applied with discriminatory intent.

## Count 30 – VIOLATION OF FAMILIAL ASSOCIATION (MOTHER & CHILDREN)

1. Plaintiff and Minor Children have a Fundamental Right to Familial Association

- The Fourteenth Amendment protects a parent's right to maintain custody and a relationship with their children.

2. Defendants Engaged in State Action to Sever the Parent-Child Relationship

- Judge Breuner, Dodd, and judicial officials issued baseless orders terminating Plaintiff's parental rights via an OP without due process.

- Prosecutors and law enforcement facilitated fabricated charges to create pretext for separation, and used a criminal mechanism meant for adults to instead sever parental rights bypassing required civil proceedings.

3. Defendants' Actions Were Retaliatory and Lacked a Legitimate Basis

- Parental rights were permanently severed through misuse of criminal mechanisms, rather than lawful family court proceedings.

- There was no evidence of harm or fitness issues to justify termination.

✔️ 4. The Severance of Parental Rights Was Final and Irreparable

- Defendants extended the OP into adulthood, ensuring permanent loss of the mother-child relationship.

Legal Standard:

- *Troxel v. Granville*, 530 U.S. 57 (2000) – Parents have a fundamental right to control the upbringing of their children.

- *Santosky v. Kramer*, 455 U.S. 745 (1982) – Termination of parental rights requires due process and cannot be arbitrary.

- *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018) – Government action taken in retaliation for speech cannot be used to deprive constitutional rights.

**Conclusion**:

Plaintiff plausibly alleges a violation of familial association because Defendants misused legal mechanisms to unlawfully and permanently sever her parental rights without due process or justification.

## COUNT 31 – DEFAMATION, FALSE LIGHT, AND INVASION OF PRIVACY

1. Defendants Made False Statements About Plaintiff's Parental Fitness

- Judicial officials and other defendants falsely labeled Plaintiff as unfit in court orders and "emotional" in public statements to Legislature.

- These statements were knowingly false or made with reckless disregard for the truth.

2. Judicial Privilege Does Not Apply to Dissemination of Court Orders to the Community

- Defendants exceeded judicial protections by broadcasting these statements and disseminating court orders to the public unnecessarily outside legal proceedings, ensuring Plaintiff's public humiliation.

3. Defendants' Actions Placed Plaintiff in a False Light

- Statements falsely implied she was dangerous or unfit, harming her reputation and community standing.

4. Plaintiff's Privacy Was Violated by the Public Dissemination of False Information

- Defendants unlawfully publicized private family court matters and false allegations, violating her right to privacy.

- Disseminating court orders to public was unnecessary and unreasonable.

Legal Standard:

- *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) – Defamation applies when false statements harm reputation.

- *Cantrell v. Forest City Publishing Co.*, 419 U.S. 245 (1974) – False Light occurs when statements create a misleading and highly offensive public perception.

- *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) – Invasion of privacy applies when private facts are publicized without justification.

Conclusion:

- Plaintiff meets plausibility because Defendants spread false and defamatory statements, and court orders, beyond court proceedings, unnecessarily, portraying her in a false light and invading her privacy.

COUNT 32 – ABUSE OF PROCESS

1. Defendants Used Legal Process for an Ulterior Purpose

- Judicial officials, prosecutors, and law enforcement misused OPs, criminal charges, and fabricated prosecutions to sever Plaintiff's parental rights without civil proceedings or due process to harm Plaintiff, and retaliate against her speech.

- Attorney Dodd and others manipulated the criminal legal system to gain advantage in a concurrent civil custody matter.

2. Defendants Engaged in Willful and Improper Acts After Process Was Initiated

- Court orders and criminal charges were used not for justice, but to punish Plaintiff and ensure permanent separation from her children.

- Defendants extended OPs beyond legal limits, fabricated charges, issued orders in closed cases, and obstructed appeals to deprive Plaintiff of her rights.

3.Expert Legal Professionals were knowledgeable of Due Process

- Defendants were experts in criminal DV mechanism and civil termination proceedings.

- Defendants willfully applied criminal mechanism to a civil custody matter to deliberately bypass due process protections in civil family proceedings.
- Defendants had motive to retaliate.

Legal Standard:

- *Brault v. Smith*, 209 Mont. 21, 679 P.2d 236 (1984) – Abuse of process requires a willful misuse of legal procedures to achieve an improper purpose.
- *Spoja v. White*, 2017 MT 62 – Process is abused when it is used as a weapon rather than for legitimate legal purposes.

Conclusion:

- Plaintiff meets plausibility because Defendants misused legal processes to achieve retaliation and personal gain, not justice.

COUNT 33 – TRESPASS TO CHATTEL & CONVERSION,

1. Plaintiff Had Lawful Possession of Her Property

- Plaintiff owned and had rightful possession of personal property inside her post-divorce home, unlawfully taken by Defendants.

- Plaintiff owned and had rightful possession of her pets inside her post-divorce home, unlawfully taken by Defendants.

## 2. Defendants Intentionally Interfered with Plaintiff's Property & Pets

- Law enforcement, and the father entered Plaintiff's home without a valid warrant, and under threat of arrest, and removed or damaged her personal property and pets.
- An Order permitting "approval" of items was unlawfully used beyond it's intended scope to actually enter and physically select and remove.
- These two entries were conducted without her consent. Her pets were removed without her knowledge. Father and Officer Taylor later entered under her threat of arrest.

## 3. Defendants Exercised Unauthorized Control Over Plaintiff's Property

- Father and law enforcement took property not belonging to the minor children, depriving Plaintiff of rightful ownership.
- Seized property was either never returned or was destroyed.

Legal Standard:

- *Kitchen Krafters, Inc. v. Eastside Bank of Montana*, 242 Mont. 155, 789 P.2d 567 (1990) – Conversion occurs when one unlawfully exercises control over another's property, depriving them of possession.

- *Stokes v. Tutill*, 2006 MT 71 – Trespass to chattel applies when property is unlawfully interfered with, even if not permanently taken.

**Conclusion**:

- Plaintiff meets plausibility because Defendants intentionally took and exercised unlawful control over her property without legal justification.

OVERALL CONCLUSION – PLAUSIBLITY

Plaintiff has sufficiently met the plausibility criteria required for her claims. Defendant's Motions to Dismiss must be denied. Plaintiff's claims should proceed.

**XVIII.    Plaintiff's Claims are Timely Under Statute of Limitations**

Plaintiff's § 1983 and related constitutional claims are timely under the applicable statute of limitations, the continuing violations doctrine, and equitable tolling. Defendants' arguments for dismissal based on timeliness fail because:

1. Plaintiff Filed Within the Limitations Period for 14th Amendment Due Process/Equal Protection Violations:

- o   Plaintiff filed this action on November 5, 2024.

- o   The last independent violation of her Due Process/Equal Protection rights by Standing Master Bowen occurred on November 4, 2021.

- o   Because § 1983 claims in Montana are governed by a three-year limitations period (Mont. Code Ann. § 27-2-204(1)), Plaintiff's Equal Protection claim is timely.

2.  Defendants' Retaliatory Prosecutions Deliberately Prevented Plaintiff from Timely Asserting Her Claims Against Bowen's Due Process Violations:

- o   Even if the Court finds the last single due process violation by Bowen occurred on January 9, 2021 (Final Order to Amend), Plaintiff was barred from filing suit earlier under Heck v. Humphrey, 512 U.S. 477 (1994), because:

    - ▪   Defendants brought criminal prosecutions against Plaintiff, alleging she was criminally violating Bowen's order.

    - ▪   Plaintiff was denied a speedy trial, and the City prosecution did not conclude until February 2, 2024—over three years after Bowen's order.

    - ▪   Defendants then obstructed Plaintiff's appeals with excessive and intentional delays, giving the appearance of running out the statute of limitations.

- Defendants were aware of Bowen's due process violations by Plaintiff's protected testimony and a lawsuit by another parent – showing possible deliberate obstruction of statute of limitations.

3. Heck Tolling Prevents Defendants From Using Criminal Prosecution to Bar Plaintiff's Due Process Claims:

- Under Heck, a plaintiff cannot pursue § 1983 claims that would necessarily invalidate a criminal conviction while the conviction stands.

- Plaintiff could not bring a claim challenging Bowen's actions while Defendants pursued criminal charges tied to her Bowen's order.

- Because Defendants strategically delayed trial and appeals, they artificially extended the time bar and cannot now use their misconduct to claim Plaintiff's claims are untimely.

4. Equitable Tolling Applies Due to Defendants' Procedural Manipulation and Deliberate Delays:

- Courts recognize equitable tolling when a plaintiff is prevented from asserting their rights due to government obstruction. See Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008) (allowing tolling where state actors created procedural delays).

o Here, Defendants deliberately delayed Plaintiff's ability to challenge Bowen's misconduct by:

- Filing retaliatory criminal charges based on Bowen's order.

- Denying a speedy trial, ensuring Plaintiff remained under criminal prosecution for over three years before resolution on February 2, 2024.

- Deliberately delaying appeals in an attempt to run out the limitations period on Plaintiff's civil claims.

## **Conclusion**

- Plaintiff's claims are timely, and Defendants' statute of limitations arguments fail.

- Her Due Process/Equal Protection claim against Bowen falls within the three-year period.

- Bowen initiated repeat due process violations, that were unresolved and led to further ongoing violations, making the continuation doctrine apply.

- Her Due Process claim against Bowen was tolled under Heck v. Humphrey because she could not bring suit while being prosecuted for allegedly violating Bowen's order.

- Plaintiff continued to exhaust state remedy, while Defendants' procedural manipulation and excessive delays in her criminal proceedings justify equitable tolling.

- Retaliation is ongoing, with obstructed appeals – due process, making violations still occurring.

- Accordingly, the Court must deny Defendants' motions to dismiss on statute of limitations grounds.

**Equitable Tolling:**

Plaintiff was barred from filing against a primary due process violation of Standing Master Bowen, her unauthorized Final Order Amending the Parenting Plan on January 9, 2021, due to facing a criminal charge of "custodial interference" of Stnading Master Bowen's Order, where the state deliberately violated speedy trial to conduct the trial after the statute of limitations – trial held on February 2, 2024, and appeal was assigned to Bowen's Supervisor who engaged in obstruction by excessive delays – she finally recused after being served this lawsuit.

Officials were aware of the legitimacy of Plaintiff's claims due to the passage of HB 322 – arising from Bowen's due process violations. Officials were aware of another lawsuit by another parent filed December 2022. Bowen retired shortly after the passage of HB 322.

Plaintiff's case meets the criteria under *Menominee Tribe of Wis. v. United States*, where the Supreme Court emphasized that equitable tolling is warranted when two elements are satisfied - when a plaintiff, despite diligent efforts, is unable to timely file due to extraordinary circumstances. In this case, Defendants are deliberately obstructing the statue of limitations themselves by violating speedy trial and her right to swift appeals.

**<u>Continuing Violation</u>**:

Plaintiff alleges repeated due process violations began under Standing Master Bowen on November 8, 2019 and continued until her recusal November 4, 2021. Since then, Plaintiff experienced a series of discriminatory and retaliatory acts over time, relying on Standing Master's Orders, that were left unresolved and due process violations even expanded. Further, the retaliation is ongoing with obstructed appeals. The Supreme Court, in *National Railroad Passenger Corp. v. Morgan*, recognized that such claims inherently involve repeated conduct and, therefore, the statute of limitations may encompass the entire duration of the hostile environment, provided a component act falls within the filing period. Plaintiff's case meets this criteria.

Plaintiff's claims should be deemed timely and proceed.

**XIX.  Leave to Amend**

In the event that this Court finds any aspect of Plaintiff's claims or responses insufficiently pled, Plaintiff respectfully requests leave to amend under **Federal Rule of Civil Procedure 15(a)** to cure any deficiencies identified by the Court. Courts in the Ninth Circuit routinely grant leave to amend unless amendment would be futile. *Foman v. Davis, 371 U.S. 178 (1962).* Plaintiff can provide additional factual detail, clarify allegations, provide more defense, and further support the plausibility of her claims if necessary.

## CONCLUSION & REQUEST FOR RELIEF

Plaintiff has sufficiently pled plausible constitutional violations that survive dismissal, as her claims are not precluded, not barred by immunity, and meet federal pleading standards under Rule 8 and Rule 12(b)(6). Defendants' procedural challenges—arguing excessive length, lack of specificity, or failure to state a claim—misapply the law and attempt to obstruct adjudication of serious constitutional deprivations.

This case presents extraordinary constitutional violations and due process violations, independent from state proceedings or Orders, including the misuse of a criminal mechanism meant for adults to terminate parental rights to retaliate for protected speech, an act that circumvented civil constitutional safeguards,

fragmented appeals across multiple cases, and deprived Plaintiff of counsel and impartial tribunal. Defendants engaged in First Amendment retaliation, malicious prosecutions, conspiracy, unlawful searches and seizures, and excessive pretrial conditions, all claims of independent constitutional injuries.

Plaintiff also alleges two prosecutions were retaliatory, selective, biased, and lacked jurisdiction over civil family matters, and the OP appeal was structurally flawed – an appeal of termination of rights without counsel, and silent on constitutional violations, and biased, warranting federal review under well-established exceptions to Younger, Rooker-Feldman, Heck, and res judicata, and other preclusions.

Further, Defendants' immunity defenses are either barred or premature, as factual development is required to determine whether their conduct exceeded the scope of judicial, prosecutorial, or qualified immunity. Absolute immunity does not protect non-judicial acts, retaliatory misconduct, acts absent all jurisdiction, or conspiracy with private actors, and qualified immunity is unavailable when Defendants violated clearly established law. Plaintiff's allegations demonstrate deliberate constitutional violations, conspiracy, and fraud, not mere procedural errors, and therefore, this Court must deny all motions to dismiss and allow this case to proceed to discovery.

Plaintiff's case aligns with the precedent set in *Gonzalez v. Trevino*, as the arrests, criminal charges, termination of parental rights, and excessive bond conditions were not routine legal actions but rather **unprecedented and disparate** measures taken **in retaliation for her protected speech** reporting due process violations in Gallatin County. Just as *Gonzalez* established that **probable cause does not bar a First Amendment retaliation claim**, Plaintiff's case demonstrates that Defendants weaponized legal mechanisms to punish her for her legislative testimony and advocacy. Further, *Beville v. City of Quitman* recognized individual and Monell liability when retaliation is the moving force behind deprivation of rights by officials and private actors conspiring while acting under color of law. The **timing, severity, and procedural irregularities** of these actions against Plaintiff provide strong evidence of retaliatory motive, warranting denial of Defendants' motions to dismiss.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. Deny all five Defendants' motions to dismiss in their entirety;

2. Hold that Plaintiff's claims are legally sufficient under Rule 12(b)(6) and are not precluded;

3. Reject Defendants' arguments based on procedural challenges, including length and specificity;

4. Find that Defendants' immunity defenses are denied in full, or cannot be resolved at this stage and must await discovery; and

5. Allow Plaintiff's claims to proceed so that the constitutional violations alleged may be fully litigated.

Plaintiff requests such other relief as the Court deems just and proper.

Respectfully submitted on **February 21, 2025**.

/s/ Jennifer A. Brick
Jennifer A. Brick
P.O. Box 522
Wildwood, FL 34785
jenniferabrick@gmail.com
Pro Se Plaintiff

<u>CERTIFICATE OF SERVICE</u>

**Certificate of Service:** I hereby certify that on February 21, 2025 I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Jennifer A. Brick
Jennifer A. Brick, pro se