IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JENNIFER BRICK, | Cause No. CV 2:24-00174-BMM |
| Plaintiff, | |
| vs. | **ORDER** |
| GALLATIN COUNTY, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Jennifer Brick ("Brick"), proceeding without counsel, filed a Fourth Amended Complaint alleging violations of her constitutional rights, RICO claims, state law claims, and other federal law claims against the City of Bozeman, Gallatin County, government entities of the State of Montana, the ankle monitor company responsible for her pretrial monitoring, and numerous individual defendants, including Montana state court judges, law enforcement officers, attorneys, and her former spouse (collectively "Defendants"). (Doc. 142.) Defendants moved to dismiss Brick's claims. (Doc. 147; Doc. 168; Doc. 170; Doc. 172; Doc. 175; Doc. 177; Doc. 179.) The Court will grant Defendants' motions to dismiss.

1

## I.  STATEMENT OF THE CASE

### A. Parties and Procedural Background

Brick filed a Complaint (Doc. 1), an Amended Complaint (Doc. 12), a Second Amended Complaint (Doc. 47), and a Third Amended Complaint. (Doc. 48.) Defendants moved to dismiss Brick's Third Amended Complaint. (Doc. 32, Doc. 36, Doc. 38, Doc. 42, Doc. 54.) The Court granted Defendants' Motions to Dismiss Brick's Third Amended Complaint. (Doc. 137.) The Court allowed Brick to file a Fourth Amended Complaint ("FAC"). (*Id*. at 27.) The Court instructed Brick that her future pleadings must follow Fed. R. Civ. P. 8. (*Id*.) The Court further instructed that Brick cannot "cite to non-existent cases to support Brick's legal contentions." (*Id*.) The Court warned that continued failure to comply with the Local Rules and Federal Rules of Civil Procedure by Brick would result in dismissal. (*Id*.)

Brick filed her FAC on July 31, 2025. (Doc. 142.) Brick moved the Court to allow her leave to file a Fifth Amended Complaint. (Doc. 146.) The Court denied Brick's motion for leave to amend to file a Fifth Amended Complaint. (Doc. 161.) Brick filed a motion for the Court to reconsider the Court's order denying leave to amend. (Doc. 162.) Defendants opposed reconsideration of Court's order denying Brick leave to amend. (Doc. 163; Doc. 164; Doc. 166; Doc. 167.) Defendants filed motions to dismiss Brick's FAC. (Doc. 147; Doc. 168; Doc. 170; Doc. 172; Doc. 175; Doc. 177; Doc. 179.)

Defendant SCRAM Systems, Inc. (Doc. 147); Defendant Richard DuCharme ("DuCharme") (Doc. 177); Defendants City of Bozeman, Officer Lindsay Shepherd, Officer Marek Ziegler, Officer Anthony Taylor, and Officer Bryton Lutzka (Doc. 170); and Defendants Bekki McClean, Mollie Schultz, and the Honorable Karolina Tierney (Doc. 168) (collectively, "City Defendants"); Defendants Montana Court Administrator's Office, Montana Office of the State Public Defender, the Honorable Andrew Breuner, the Honorable Rienne McElyea, the Honorable Peter Ohman, the Honorable Mike McGrath, the Honorable Brenda Gilbert, Standing Master Magdalena Bowen, Michael Sinks, Henry Westesen, and Audrey Cromwell (collectively "State Defendants") (Doc. 172); Defendants Dodd Law Firm, Matt Dodd, and Dillon Post ("DLF Defendants") (Doc. 175); and Defendants Gallatin County, Colter Metcalf, Bryan Adams, Madison Sharpe, Rick West, and Collin Kiewatt (collectively "County Defendants") (Doc. 179) filed motions to dismiss Brick's claims contained in the FAC.

### B. Factual Background

Brick's claims arise from proceedings related to civil disputes over the divorce and parenting plan with her former spouse, criminal proceedings against her in the Bozeman Municipal Court and the Eighteenth Judicial District Court, Gallatin County, Montana, and decisions by the Montana Supreme Court related to those proceedings. (Doc. 142 at 3–7.) Brick alleges that Defendants conspired to violate

her civil and parental rights and initiate criminal proceedings against her in retaliation for testifying at the Montana State Legislature in favor of HB 322. (Doc. 142, ¶ 1-3.) Brick claims assert a conspiracy among Defendants to suppress Brick's speech and to retaliate against her in the various court proceedings. (*Id*.)

Brick alleged to incorporate by reference her Third Amended Complaint to the FAC "to preserve the completeness of the factual record." (Doc. 142 at 2, Exhibit D.) Brick's Third Amended Complaint outlined the extensive factual background of Brick's claims. Brick acknowledges that "the allegations in this Fourth Amended Complaint arise from the same nucleus of facts" as the Third Amended Complaint. (Doc. 142 at 2.)  The Court previously described, in depth, the facts of this case in its order on Defendants' motions to dismiss Brick's claims. (*See* Doc. 137 at 4-17.) The Court declines to reiterate the extensive factual background in this order.

## II.    LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint violates Rule 8 and must be dismissed when it is "needlessly long . . . highly repetitive, or confused, or consist[s] of incomprehensible rambling." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (internal quotations and citations omitted).  A complaint must be plausible under Rule 8(a)(2) to survive a motion to dismiss under Rule 12(b)(6). *Navarro v. Block*,

250 F.3d 729, 732 (9th Cir. 2001).

A court accepts all facts alleged in the complaint as true when considering a motion to dismiss under Rule 12(b)(6) and draws inferences in the light most favorable to the non-moving party. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). The court need not accept as true, however, a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quotations omitted).

A court must dismiss a complaint under Rule 12(b)(6) if the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A court must construe liberally the pleadings when a plaintiff represents themself. *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016). A plaintiff must assert allegations that are "more than labels and conclusions" at the pleading stage. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678.

A court may take judicial notice of court filings and other matters of public

record when considering a motion to dismiss. *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir.1998). A court's notice does not extend to disputed factual matters contained within those filings. *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1072 (S.D. Cal. 2021).

## III.    DISCUSSION

Brick alleges that Defendants collectively coordinated a "campaign of suppression, retaliatory oppression, and punishment because the subject of her protected legislative speech[.]" (Doc. 142 ¶ 1.) Brick's FAC fails to provide sufficient factual support, however, to support a cause of action. Brick attempts to relitigate matters already adjudicated to final resolution in Montana state courts.

### A.    Failure to State a Claim

Brick's FAC fails to state a claim for relief under Federal Rules of Civil Procedure 8 and 12. As an initial matter, the Court previously instructed Brick that future complaints must meet the basic requirements of Rule 8. (*See* Doc. 137.) The Court directed Brick to use the complaint form provided by the Clerk of Court's office to comply with Rule 8. (*Id.*) Rule 8 requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint under Rule 8 if the complaint is so conclusory or confusing that a defendant cannot reasonably frame a responsive pleading. *Hearns v. San Bernadino Police Dep't*, 530 F.3d 1124, 1130–32 (9th Cir.

6

2008). Although "the proper length and level of clarity for a pleading cannot be defined with any great precision," a court may consider that an extraordinarily lengthy and confusing complaint prevents defendants from discerning which allegations give rise to particular causes of action. *Id.*

Brick's FAC exceeds 159 pages, spans 56 causes of action, and 800 paragraphs of allegations. Brick attempted to follow the Court's direction with use of the complaint form provided by the Clerk of Court's office. Brick concisely stated her claims against Defendants on the form. (Doc. 142 at 12-17.) Brick then included an additional 141 pages of allegations outside the provided complaint form. (*Id.* at 18-159.) Brick made adjustments to clarify and organize which specific claims relate to which specific Defendant. The substance of Brick's FAC remains similar to Brick's Third Amended Complaint. Brick's FAC does not clearly state the factual basis for the allegations against each Defendant. Brick refers to "ex parte" orders and motions, policies, warrants, conspiracies, suppressive conduct, discriminatory actions, and general allegations of deprivation of rights. (Doc. 142.) Brick argues that she made efforts to comply with both the federal pleading standard of plausibility and Rule 8's short and plain statement requirement. (Doc. 142 at 6.) Brick previously argued that the complexity of her allegations justifies the length of her complaints (Doc. 70 at 27–28). Brick mistakes lengthy descriptions of legal conclusions for detailed factual support.

7

Defendants cannot respond adequately to the lengthy FAC as the specific allegations remain confusing. Brick alleges, for example, that she has properly named the Gallatin County Court Administrator's Office in place of the Montana Court Administrator's Office in the FAC as a defendant at one point in the FAC. (Doc. 142 ¶ 713.) Brick continues to name the Montana Court Administrator's Office as a defendant, and not Gallatin County District Court Administrator's Office, adding to the confusion of what claims Brick asserts against what Defendants. (*See Id*. ¶ 28.) Brick also indicated the addition of a new defendant, the Honorable Brenda Gilbert, for conduct arising in June 2025 for obstructing Brick's access to appellate review. (*Id*. ¶ 13.) There is no indication that Brick followed the procedural requirement to serve summons of the FAC on the Honorable Brenda Gilbert. Fed. R. Civ. P. 4.

Brick also continues to misrepresent citations and court findings to the Court. Brick cites, for example, to *Beville v. City of Quitman*, Texas, 21 F. 4th 917 (5th Cir. 2021), to support her contention that a "judge's pretrial declaration of guilt supported a § 1983 retaliation claim and loss of [judicial] immunity." (Doc. 142 at 4.) The cite provided by Brick does not exist and directs the Court to *Long v. Piercy*, 21 F. 4th 909 (6th Cir. 2021). (Doc. 148 at 7.) The case to which Brick appears to be referring, *Bevill v. Fletcher*, 26 F. 4th 270 (6th Cir. 2022), considers a suit against city officials for conspiratorial retaliation under a § 1983 claim. The court in *Bevill v. Fletcher*

did not conclude that a judge's pretrial determination of guilt provides support for a § 1983 claim or to remove judicial immunity. (*Id.*) This is not the only misrepresentation Brick makes to the Court. Numerous other cases cited by Brick throughout the FAC either do not support the proposition indicated by Brick, are non-existent cases, or do not remain good law. (*See e.g.*, Doc. 142 ¶¶ 34, 35, 66, 69, 545.) Brick's FAC fails to comply with Rule 8 and the Court's previous order. (Doc. 137).

Even if Brick's FAC met the requirements of Rule 8, none of the facts Brick alleges state a plausible claim for relief under Rule 12. Brick's Complaint describes the foundation of her allegations as "a coordinated campaign of suppression, retaliatory oppression, and punishment" occurring "because the subject of [Brick's] protected legislative speech sought due process safeguards that would reform Gallatin County family court[.]" (Doc. 142, ¶ 1.) Brick also alleges that "Plaintiff's protected legislative activity was the moving force behind [her criminal] prosecution." (Doc. 142 ¶ 39.) Brick's factual allegations do not support this conclusion.

Brick's FAC continues to suffer from the same failures the Court identified in Brick's Third Amended Complaint. Brick first offers no causal connection between any of allegations related to proceedings that occurred before her advocacy for HB 322 in 2023, and the alleged conspiracy to suppress her right to free speech in

"retaliation" for her legislative testimony. (Doc. 142, ¶ 1.) Brick alleges that her claims occurred between December 2020 and present. (Doc. 142 at 15.) Brick alleges, on the other hand, that the retaliation began after her appearance at the Montana Legislature in February 2023. (*Id.* ¶ 1.)

Standing Master Bowen's involvement in Brick's parenting plan proceedings, for example, ended in November 2021 when Bowen recused herself. (*Id.* ¶ 289.) DuCharme's litigation of the parenting plan with the aid of DLF Defendants began in 2019. (*Id.* ¶ 557.) Brick contends that the prior actions by Standing Master Bowen and other Defendants formed the basis for her testimony for HB 322. (*Id.* ¶ 564.) Brick's allegations still do not provide a connection between the actions of Defendants occurring before her HB 322 testimony and the alleged conspiracy beginning years later. These prior allegations before Brick's legislative testimony in 2023 prove insufficient. Those Defendants could not have retaliated against Brick for her 2023 legislative testimony or conspired with others to do so during proceedings conducted before that testimony, or before any other form of Brick's public advocacy, had taken place.

Brick also fails to allege any facts connecting her testimony at the Montana State Legislature to subsequent events surrounding her family law proceedings, arrest and criminal prosecutions, protective orders, or any other allegations contained in the FAC. Brick asserts that her "detailed, chronological sequence of

10

adverse government actions" establish causation. (Doc. 182 at 7.) Brick contends that Judge Breuner appeared at legislative hearings, advocated against HB 322, and spoke negatively about the bill's proponents. Brick relies on the timing of her testimony in support of HB 322 and her arrest: "Within weeks of her protected speech, Plaintiff was charged and arrested." (Doc. 142 ¶ 3, 5, 33.) Brick alleges that after Judge Breuner entered an order in Brick's family law matter following her legislative testimony that "officials from the City of Bozeman, Gallatin Couty, and private actors, including the father and his attorney. . . continued the unconstitutional conduct." (*Id.*) Brick alleges that the unconstitutional conduct by Defendants after her testimony included the following activity: executing warrantless arrests, performing unlawful searches and seizures, initiating malicious prosecutions, and requiring Brick to wear an injurious GPS monitor. (Doc. 142 ¶ 5.) Brick's arrest occurred in June of 2023, nearly three months following her testimony at the Montana State Legislature.

The temporal proximity must be "very close" to establish a connection between a defendant's actions and retaliatory conduct based solely on timing. *Pringle v. Wheeler*, 478 F. Supp. 3d 899, 916 (N.D. Cal. 2020). A court may consider the timing in light of the factual circumstances when analyzing retaliation claims. *Cozalter v. City of Salem*, 320 F. 3d 968 (9th Cir. 2003). Brick does not allege that any Defendant apart from Judge Breuner and Judge McElyea knew about her

advocacy for HB 322. Brick fails to offer any facts suggesting that Defendants took "adverse actions" against Brick because of her legislative testimony. The timing of Brick's legislative advocacy in February and March of 2023 also offers a less convincing temporal connection to Brick's arrest on June 20, 2023, than her daughter's immediate report to police. Brick's arrest immediately followed the cellphone interaction at the Bozeman Swim Center with Brick's daughter that same day. (*Id.*, ¶ 30.) Brick's FAC fails to allege that Brick's arrest following the cellphone interaction with her daughter constitutes a plausible a retaliation for the legislative testimony she offered months earlier.

Brick also continues to attempt to join Defendants in a conspiracy by alleging that one might benefit from the actions of another. (*See* Doc. 182 at 16.) For example, Brick concludes that "initiating a criminal charge and arrest against [Brick]. . ., would undermine her position in family court." (Doc. 142 ¶ 51.) Brick also alleges that "Defendant Dodd benefitted from this harm, using the criminal charge to support his client's past efforts to restrict [Brick's] custody and avoid financial obligations." (*Id.* ¶ 52.; *See also*, ¶ 509.)

DuCharme and DLF Defendants did not investigate or arrest Brick, impose pretrial conditions, or even report the assault allegations to police. (Doc. 48-1 ¶ 236.) DLF Defendants' advocacy for their client in the parenting plan litigation does not create the reasonable inference that DLF Defendants and Ducharme were a part of a

conspiracy to retaliate against Brick or were conspiring with other Defendants to violate Brick's constitutional rights. *Sanders*, 504 F.3d at 910. Brick admits that her daughter went directly from the "phone interaction" at the Bozeman Swim Center to the police. (Doc. 142-1 ¶ 235, 240.) The Court acknowledges that Brick's arrest for assaulting her daughter likely gave DuCharme an advantage in the parenting plan litigation. The facts alleged by Brick, however, do not constitute a conspiracy between DLF, DuCharme and other Defendants to deprive Brick of her civil rights or establish that DuCharme acted "under color of law."

Brick's allegations pertaining to the various Defendants prove conclusory in nature. *Twombly*, 550 U.S. 544, 555. "Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). Brick's FAC includes the following conclusory allegations: "all Defendants acted under color of state law at all times relevant hereto," Defendants failed to train and supervise, and Defendants engaged in retaliatory actions such as initiating malicious prosecutions or filing protective orders. (Doc. 14 ¶ 31, 43, 645, 681, 687, 715.) Brick's blanket allegations cover all individual Defendants for their roles in the alleged conspiracy without providing the factual support for such claims. (*Id*. ¶ 729-35.) Brick alleges conclusively that Defendants had knowledge of the conspiracy and acted with deliberate indifference. (*Id*. ¶ 736-43.) Brick's FAC does not adequately allege facts to support these claims.

13

The Court determines that the series of events before and following Brick's legislative testimony do not plausibly create a reasonable inference that Defendants conspired to retaliate against Brick for her testimony given in support of HB 322.

The Court accepts all factual allegations as true when considering Defendants' motions to dismiss, but it need not accept Brick's bare conclusions that Defendants acted in concert to deprive her of due process, discredit her, "terminate" her parental rights, and isolate her from her community. Brick's FAC fails to state a claim for relief.

### B.    Abstention under *Rooker-Feldman*

Defendants assert various other arguments in their motions to dismiss Brick's claims, including collateral estoppel, res judicata, prosecutorial and judicial immunity, lack of a state actor, and Brick's failure to state a cognizable wrong. All Defendants argue that the Court lacks jurisdiction to hear Brick's claims under the *Rooker-Feldman* doctrine. The Court agrees.

The entire basis of Brick's FAC continues to involve the results of Brick's parenting plan proceeding, order of protection proceeding, criminal proceedings, and Montana Supreme Court filings, appeals, and decisions. Brick acknowledges that "the allegations in the Fourth Amended Complaint arise from the same nucleus of facts" as set forth in the previously dismissed Third Amended Complaint. (Doc. 142 ¶ 2.) The Court previously determined that the *Rooker-Feldman* doctrine barred the

14

Court's jurisdiction to adjudicate the facts contained in the Third Amended Complaint. The Court concludes the same regarding Brick's FAC, containing substantially the same facts as the Third Amended Complaint. The Court must abstain from adjudicating issues already litigated in Montana state courts. Brick has not substantially changed the factual allegations contained in the FAC. Brick's FAC continues to present identical facts and issues to those already adjudicated in Brick's various Montana court proceedings.

The *Rooker-Feldman* doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments." *Carmona v. Carmona*, 544 F.3d 988, 995 (9th Cir. 2008). Federal district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). A district court applies the following test to determine if *Rooker-Feldman* divests its jurisdiction:

> If claims raised in the federal court action are "inextricably intertwined" with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction.

*Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). Unlike res judicata, which

looks to the preclusive effect of state court judgments, *Rooker-Feldman* examines "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Bianchi*, 334 F.3d at 900.

Brick repeatedly summarizes the basis of her claims as a conspiracy among Defendants to deprive Brick of her constitutional rights, "terminate" her parental rights, suppress her conduct and speech, execute unlawful arrests and pre-trial procedures, disallow appellate review, discriminate, and discredit her in retaliation for testifying in favor of HB 322. (*See, e.g.*, Doc. 142, ¶¶ 1-8, 43-57, 109-15, 263-278, 326, 346-56, 431, 535-40, 569-71, 609-13, 774, 798-99; Doc. 70 at 2.) The same claims, arguments, and facts appear in Brick's numerous Montana state filings. (*See, e.g.*, Doc. 34-1; Doc. 34-2; Doc. 34-25; Doc. 34-26.) The FAC states outright that Brick attempted to exhaust state remedies for these issues before bringing the same claims to federal court. (Doc. 142 ¶¶ 267, 318, 330, 333, 334.) Brick acknowledges that she has plead these claims repeatedly "through every available channel—objections, requests for judicial review, [j]udicial [s]tandards and Bar complaints, motions to disqualify." (Doc. 182 at 3.) The Court cannot act as an appeals court for Brick's state court judgments.

Brick continues to refer to the same "ex parte" court orders and motions, "incorrect" court decisions, improper warrants, malicious prosecutions, injurious pretrial monitoring, conspiracies, and general allegations of deprivation of rights that

were the subject of Brick's state court decisions. Brick's claims prove inextricably intertwined with the Montana state court judgments and orders. The Court lacks jurisdiction to adjudicate Brick's claims that arose from state court judgments.

The *Rooker-Feldman* doctrine "does not require [a court] to determine whether or not the state court fully and fairly adjudicated [a] constitutional claim." *Bianchi*, 334 F.3d at 900. The *Rooker-Feldman* doctrine prevents a plaintiff from attempting to "undo" a state court judgment. The relief sought by the plaintiff guides the court's ultimate decision. *Bianchi*, 334 F.3d at 900.

Brick seeks declaratory relief related to her family law and criminal disputes litigated in state court, the child custody and protective orders litigated in state court, and Judge Bruener's conduct related to testifying at the Montana Legislature. (Doc. 142 at 23-25.) Brick already adjudicated and appealed these specific three issues. The Montana Supreme Court ruled against Brick on all three claims. *See DuCharme v. Brick*, 2024 MT 288N, ¶ 6 (Mont. 2024) (addressing the "three main categories: issues related to the Order of Protection, issues related to Brick's criminal proceedings, and issues related to judicial bias.") The various state court judgments caused Brick's alleged complained injuries. *See Crow Allottees Ass'n v. McElya*, No. CV 14-62-BLG-SPW, 2015 U.S. Dist. LEXIS 97653, at *9 (D. Mont. July 27, 2015).

Brick did not adjust her FAC to comport with the limitations the Court

17

indicated in its previous order on Defendants' motion to dismiss relating to the *Rooker-Feldman* doctrine. Brick conclusively states that "[p]laintiffs constitutional claims are independent and not "inextricably intertwined" with any state judgement; Heck exceptions apply." (Doc. 182 at 5.) Brick alleges that her claims in federal court are independent of the state court proceedings because she alleges jurisdictional issues of using criminal process to terminate parental rights and child-protection procedure, retaliatory motives and gender bias, and warrantless seizures and searches. (Doc. 182 at 24.) Contrary to Brick's assertions, each of these issues was reviewed in state court. *See e.g. In re Parenting Of: S.D. & B.D.,* 521 P.3d 780 (Mont. 2022) (Montana Supreme Court affirming District Court, Standing Master's Parenting Plan); *Brick v. Eighteenth Jud. Dist. Ct.,* No. OP 24-0173, Order, 550 P.3d 777 (Mont. 2024) (Montana Supreme Court addressing Brick's retaliation claims for her public testimony in 2023 and disqualification of Judge Bruener); *Brick v. Tierney*, No. OP 24-0161, Order, 550 P.3d 777 (Mont. 2024) (Montana Supreme Court addressing Brick's alleged violation of her constitutional rights, issues with her criminal conviction, prosecutorial misconduct, and retaliatory claims); *Brick v. Adams*, 545 P.3d 1065, 2024 Mont. LEXIS 89, Order (Mont. 2024) (Montana Supreme Court addressing Brick's claims of "excessive Pretrial Restraint Condition of a GPS Monitor").

Brick further does not address how she modified her FAC to avoid application

18

of the *Rooker-Feldman* doctrine since the Court's last order. (*See* Doc. 137.) Brick continues to ask the Court to do what *Rooker-Feldman* prohibits: review the civil and criminal proceedings adjudicated in state court and determine that the Montana state courts failed to follow procedural rules or correctly apply statutes. The Court determines that "the adjudication of [Brick's] federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008).

### III.  CONCLUSION

The Court has determined that the Court lacks jurisdiction to adjudicate Brick's claims, that Brick's FAC fails to state a plausible claim for relief under Rule 12 of the Federal Rules of Civil Procedure, that Brick's FAC fails to meet the requirements of Rule 8, and that Brick's FAC fails to comply with the Court's previous order (Doc. 137).

Because the Court will grant Defendants' motions to dismiss, the Court need not consider Brick's remaining motion for reconsideration.

Accordingly, it is **HEREBY ORDERED**:

1.  Defendants' motions to dismiss (Doc. 147; Doc. 168; Doc. 170; Doc. 172; Doc. 175; Doc. 177; Doc. 179) are **GRANTED**.

2.  Brick's claims are **DISMISSED**.

3. Brick's remaining Motion for Reconsideration (Doc. 162) is **DENIED** as

moot.

**DATED** this 1st day of December, 2025.


_____
Brian Morris, Chief District Judge
United States District Court